**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| STEPHEN CROCKER, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-01525-RP |
| Plaintiff, | **CLASS ACTION** |
| v. | **DANNY HILL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR** |
| CASSAVA SCIENCES, INC., RICHARD JON BARRY, and JAMES W. KUPIEC, | **APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF** |
| Defendants. | **LEAD COUNSEL** |

## I.    INTRODUCTION

Danny Hill, by his counsel, respectfully submits this memorandum of law in support of his Motion to (i) appoint Mr. Hill as lead plaintiff pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as amended by the PSLRA, 15 U.S.C. § 78u-4, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; (ii) approve his selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel and Beatty Navarre Strama P.C. as Liaison Counsel for the putative Class; and (iii) granting such other appropriate relief as the Court may deem just and proper. *See Bremer v. Solarwinds Corp.*, 2021 U.S. Dist. LEXIS 124780, at *3-6 (W.D. Tex. 2021) (Pitman, J.); *Logan v. Propetro Holding Corp.*, 2019 U.S. Dist. LEXIS 253980, at *8-14 (W.D. Tex. 2019).

As set forth in the Certification and Loss Chart attached to the Declaration of Michael L. Navarre in Support of Mr. Hill's Motion to Appoint Lead Plaintiff and Approve Selection of Lead Counsel ("Navarre Decl.") (Exhibits A & B), Mr. Hill suffered losses of $175,877.80 from his purchases of Cassava Sciences, Inc. ("Cassava" or the "Company") securities between February 7, 2024 and November 24, 2024, inclusive (the "Class Period").

To the best of his knowledge, Mr. Hill's loss represents the largest financial interest of any investor seeking to be appointed lead plaintiff. In addition, Mr. Hill's Certification and Declaration demonstrate his awareness of the fiduciary duties associated with serving as a lead plaintiff. *See* Navarre Decl., Ex's. A & C. Mr. Hill therefore also satisfies the applicable typicality and adequacy requirements of Rule 23. Accordingly, Mr. Hill seeks an order: (i) appointing him as Lead Plaintiff; and (ii) approving his selection of KSF as Lead Counsel and Beatty Navarre Strama P.C. as Liaison Counsel.

## II.    PROCEDURAL BACKGROUND

The above-captioned action was filed on December 12, 2024, and alleges violations of

§§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder (the "Action").[1] The Complaint brings claims on behalf of investors who purchased or otherwise acquired Cassava securities between February 7, 2024 and November 24, 2024, inclusive (the "Class Period"). In addition to Cassava Sciences, Inc. ("Cassava" or the "Company"), the Action names as defendants Richard Jon Barry (a director of Cassava at all relevant times who became its Executive Chairman on July 17, 2024, and its CEO on September 9, 2024) and James W. Kupiec (Cassava's Chief Medical Officer at all relevant times). Compl., ¶¶ 13-14. Notice of the Action was published in *Globe Newswire* on December 12, 2024 informing investors who wished to serve as lead plaintiff that they must move the Court within sixty days of publication. Navarre Decl. Ex. D.

### III.   STATEMENT OF FACTS

Cassava is an Austin-based clinical stage biotechnology company with a focus on developing drugs for neurodegenerative diseases. Compl., ¶¶ 12, 19. Cassava's leading therapeutic candidate is simufilam, a proposed treatment for mild to moderate Alzheimer's Disease. *Id.* at ¶ 20.

The Class Period begins on February 7, 2024, when Defendants issued a press release announcing topline results for a Phase II study designed to investigate the safety of simufilam as a treatment for Alzheimer's Disease. Compl., ¶ 21. The Company claimed, in relevant part, that "[p]atients with mild Alzheimer's disease who received simufilam treatment continuously for two years . . . had no decline in ADAS-Cog scores . . . as a group." *Id.* at ¶ 22. Then-President and CEO Remi Barbier further stated, Cassava is "fighting Alzheimer's disease by testing simufilam, a new type of drug that has a completely different mechanism of action from monoclonal antibody drug treatments . . . Stable ADAS-Cog scores over 2 years is clearly a desirable clinical outcome

---

[1]  All emphasis added and internal citations are omitted unless otherwise indicated. Capitalized terms have the same meaning as in the Complaint (ECF No. 1), unless otherwise stated.

in Alzheimer's." *Id.* at ¶ 23.

On May 10, 2024, Cassava published its Q1FY24 financial results and provided clinical updates on its ongoing Phase 3 trials of simufilam. Compl., ¶ 24. In relevant part, the Company explained that it was conducting two Phase 3 studies, the first of which, "called RETHINK-ALZ, is designed to evaluate the safety and efficacy of simufilam 100 mg tablets twice-daily versus matching placebo over 52 weeks[.]" *Id.* The Company's other Phase 3 study, "called REFOCUS-ALZ, is designed to evaluate the safety and efficacy of oral simufilam 100 mg and 50 mg tablets twice-daily versus matching placebo over 76 weeks[.]" *Id.* The Company further stated that "Over 435 patients have completed the 52-week RETHINK-ALZ study" and another 300 completed the REFOCUS study. *Id.* at ¶ 25. The Company also detailed an open-label extension study available to participants of the Phase 3 studies, claiming that "[a]pproximately 90% of patients who've completed treatment in a Phase 3 study have opted to enter the open label extension study. To date, over 655 patients have opted to enter the open-label extension study." *Id.*

On June 28, 2024, Cassava issued a statement on the indictment of former science advisor, Dr. Hoau-Yan Wang, for "allegedly defrauding the U.S. National Institutes of Health (NIH)." Compl., ¶ 26. The Company further stated:

> According to public court documents, Dr. Wang engaged in illegal behavior to defraud the government through grant applications made to the NIH, resulting in the award of approximately $16 million in grants approximately 2017 to 2021 on behalf of himself and the Company. Wang's work under these grants was related to the early development phases of the Company's drug candidate and diagnostic test and how these were intended to work.

*Id.* The Company further stated that "Dr. Wang and his former public university medical school have had no involvement in the Company's Phase 3 clinical trials of simufilam." *Id.*

On July 17, 2024, Cassava announced the immediate resignation of Remi Barbier as President and CEO and the appointment of Defendant Barry as Executive Chairman and principal

executive officer, while the Company searched for a new permanent CEO. Compl., ¶ 27. Regarding the appointment, Defendant Barry stated, "While our priority remains the development of a potentially effective treatment for Alzheimer's disease, the Board has a steadfast commitment to doing so with transparency, accountability, and highest ethical business practices." *Id.* at ¶ 28.

On July 30, 2024, Cassava announced the expansion of its open-label extension trials of Simufilam by "up to an additional 36 months[.]" Compl., ¶ 29. During the announcement, Cassava touted that "[a]pproximately 89% of patients in its ongoing Phase 3 program have elected to continue with open-label treatment with simufilam after completion of the blinded trials," suggesting that patients in the trials believed that the drug was benefiting them. *Id.* at ¶ 30.

On August 8, 2024, Cassava published its "Q2 2024 Financial Results and Operational Updates" and conducted a corresponding earnings call, during which Defendant Barry provided assurances about the likely success of simufilam's Phase 3 trials. Compl., ¶ 31. Barry informed investors that the Company would increase its "R&D spending during the second half of the year[]" and that "[s]ome of that increased spending will be devoted to preparation for the commercial launch of our drug." *Id.* Barry went on to state that "[w]e have to plan for Cassava's successful transition from a development stage company to a commercial enterprise. What we cannot accept is for us to fail the drug." *Id.* Barry also discussed Cassava's setting aside of $40 million for a possible settlement of an SEC investigation of the Company. *Id.*

Also during the earnings call, Defendant Kupiec touted simufilam's performance and projected success in Phase 3 studies, stating, in relevant part:

> I was excited when I joined Cassava, but I'm even more excited and optimistic now about simufilam and its chance of success in Phase III. Simufilam continues to be safe and well tolerated in a very large number of patients. Plus the data from the 24-month open-label Phase II safety study was remarkable in that patients with mild dementia apparently had no significant decline during that 2-year treatment period.

> If this is true and replicated in Phase III, it would represent an exceptional achievement in a significant event in the field.

*Id.* at ¶ 32. Defendants provided similar assurances in response to analyst questions, and Defendant Kupiec explained away the approximately 20% patient dropout rate from the Phase 2 studies as resulting from "study fatigue, patient fatigue." *Id.* at ¶ 33.

On September 9, 2024, Cassava appointed Defendant Barry as the permanent CEO. Compl., ¶ 34. Then on September 24, 2024, Defendant Barry presented at the H.C. Wainwright Conference, stating, in relevant part:

> [I]n the phase 2, you know, we started with 216 patients and it was, you know, there were certainly weaknesses in the trial: it was open label, everybody knew they were getting the drug, but after 12 months there were 216 patients. After 12 months, patients were given the option of remaining on the drug or terminating the trial, or if they wanted to remain on the drug the way to do it was 50% of those would be assigned to a placebo group for 6 months and 50% would stay on the drug. And then after that additional 6 months, everybody would be back on the drug. And what was persuasive about that trial, at least to me, was that the uh — at the end of 2 years the mild patients in the trial showed virtually no cognition decline. I mean that is unheard of. And, you know, again, there are weaknesses: phase 2 trial, open label, but uh — nobody has seen results like that before.

*Id.* at ¶ 35.

On October 8, 2024, Cassava published an open letter from Defendant Barry detailing the Company's progress over the last few months. Compl., ¶ 36. Barry addressed the Company's $40 million settlement with the SEC, stating that "we have been able to put the SEC's three-year investigation of Cassava behind us by agreeing to settle a charge of negligently making inaccurate disclosures related to our 2020 Phase 2b clinical study and paying a $40 million monetary penalty." *Id.* Barry also continued to tout the results of Phase 2 studies of simufilam while admitting that certain results did not reach statistical significance. *Id.* Barry also hedged on the results of the larger Phase 3 trials, stating: "None of this is meant to imply that our Phase 3 trials will generate

results similar to the openlabel Phase 2 study. We won't know the outcome until later this year when we release top-line results of the first of our large, randomized, well- controlled studies." *Id.*

On November 7, 2024, Cassava published their third quarter fiscal year 2024 results. Compl., ¶ 37. During the earnings call held that same day, Defendant Barry provided reassurances that simufilam would be successful, stating:

> We expect to announce the top line results of the trial before the end of this year. This is an exciting time for us. We remain optimistic that we will see promising data that could ultimately lead to a best-in-class treatment for Alzheimer's, but we will all see whether our optimism is warranted or misplaced before too long.

*Id.*

The truth emerged on November 25, 2024, when Defendants published topline results for the ReThink-ALZ Phase 3 study in which simufilam failed to reach any of the study's endpoints. Compl., ¶ 39. Specifically, simufilam did not perform better than placebo at slowing cognitive decline over a 52-week period. *Id.* Following the announcement of these results, Defendant Barry stated that the Company would be discontinuing its other simufilam studies. *Id.* at ¶ 40. Following this news, the price of Cassava's common stock declined from $26.48 at market close on November 22, 2024 to $4.30 per share on November 25, 2024, a decline of about 83.76%. *Id.* at ¶ 43.

## IV.    ARGUMENT

### A.    Mr. Hill Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure to appoint a lead plaintiff in a securities fraud class action. 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). First, the plaintiff who files the initial action must publish a notice within 20 days of filing the action advising the class of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, notice of the Action was published in *Globe Newswire* on December 12, 2024. *See* Navarre Decl., Ex. D.

6

Next, within 60 days of publication, members of the proposed class are entitled to seek appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)-(B). The Court then appoints as lead plaintiff the member of the class that is determined to be "most capable" of adequately representing the interest of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> > (aa)    has either filed the complaint or made a motion in response to a notice . . .;
> >
> > (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). Once the presumption attaches, it can only be overcome upon a showing of proof that the presumptive lead plaintiff will not fairly and adequately represent the class or is subject to unique defenses that will render the presumptive lead plaintiff incapable of doing so. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 1.    Notice is Sufficient and Mr. Hill's Motion is Timely

The first-filed plaintiff published notice pursuant to the PSLRA on December 12, 2024 over *Globe Newswire*. *See* Navarre Decl., Ex. D. *Globe Newswire* is a widely circulated national business-oriented wire service which courts in this Circuit have found to satisfy the PSLRA's statutory notice requirements. *See Kakkar v. Bellicum Pharms., Inc.*, 2019 U.S. Dist. LEXIS 50704, at *4 (S.D. Tex. 2019) (accepting adequacy of notice published in *Globe Newswire*); *Case v. CenturyLink Inc.*, 2017 U.S. Dist. LEXIS 174514, at *5 (W.D. La. 2017) (same); *Firefighter's Pension & Relief Fund of New Orleans v. Bulmahn*, 2013 U.S. Dist. LEXIS 115538, at *11 (E.D. La. 2013) (same). Here, Mr. Hill's motion has been filed within 60 days of the notice and is

7

therefore timely.

### 2. Mr. Hill Possesses the Largest Financial Interest in the Relief Sought by the Class

Using criteria courts have developed to assess financial interest, Mr. Hill believes he has the largest financial interest in the relief sought by the putative class—a loss of approximately $175,877.80 in connection with the 12,988 shares of Cassava common stock he retained through the end of the Class Period. *See* Navarre Decl. Ex. B; *Bremer*, 2021 U.S. Dist. LEXIS 124780, at *5; *Giovagnoli v. Globalscape, Inc.*, 2017 U.S. Dist. LEXIS 232558, at *7-8 (W.D. Tex. 2017) ("Courts consistently consider the fourth factor—the approximate losses suffered—as most determinative to identify the plaintiff with the largest financial loss.").

### 3. Mr. Hill Meets the Requirements of Rule 23

In addition to possessing the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of lead plaintiffs, Rule 23(a) generally requires that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *See* FED. R. CIV. P. 23. As detailed below, Mr. Hill satisfies these requirements.

The typicality requirement of Rule 23(a)(3) is satisfied if the representative plaintiff's claims "arise from the same course of events, and their legal arguments to prove Defendants' liability are virtually identical." *See Bremer*, 2021 U.S. Dist. LEXIS 124780, at *5. Mr. Hill's claims are typical of those of other putative class members. *Id.* at *5-6. Like other putative class members, Mr. Hill: (i) purchased or otherwise acquired Cassava securities during the class period; (ii) did so in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (iii) suffered damages from purchasing artificially inflated securities and then

suffered harm when the truth was revealed. *See* Navarre Decl. Ex's. A & B. Furthermore, Mr. Hill has submitted a declaration attesting to his background and adequacy. *See* Navarre Decl. Ex. C, at ¶¶ 3-4; *Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 570-71 (E.D. Tex. 2021) (favorably noting that individual investor provided information demonstrating his investment experience and appointing him as lead plaintiff over institutional investor with smaller loss).

A representative party must also "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Logan*, 2019 U.S. Dist. LEXIS 253980, at *8. Here, Mr. Hill's interests are clearly aligned with the members of the class and there is no antagonism between his interests and those of other class members. Accordingly, Mr. Hill is adequate to serve as lead plaintiff.

**B.      This Court Should Approve Mr. Hill's Choice of Lead and Liaison Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Bremer*, 2021 U.S. Dist. LEXIS 124780, at *6. Here, Mr. Hill has selected KSF as Lead Counsel for the class following his own independent assessment of the firm's qualifications. *See* Navarre Decl., Ex. C at ¶¶ 6-7.

KSF is a national law firm with offices in Louisiana, California, New Jersey, Illinois and New York—courts have repeatedly found KSF well-qualified to serve as Lead Counsel in securities class actions such as this. *See* Navarre Decl. Ex. E; *Bangzheng Chen v. CytRx Corp.*, 2014 U.S. Dist. LEXIS 194696, at *9 (C.D. Cal. 2014) ("Based on the firm's résumé and experience with class action securities litigation, the Court is satisfied that Kahn, Swick & Foti, LLC is qualified to serve as lead counsel in this case.").

KSF prevailed on behalf of the court-appointed lead plaintiff in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom.* 139 S. Ct. 2615 (2019), which significantly altered the federal securities pleading requirements and civil pleading practice generally in the Ninth Circuit. *See* Navarre Decl. Ex. E. KSF also served as counsel to the lead

plaintiff in the *Halliburton* securities litigation matter, where lead plaintiff twice prevailed before the United States Supreme Court and ultimately obtained a $100 million recovery for the class. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011).

More recently, KSF obtained a $165 million recovery for Blackberry investors, following nearly nine years of determined litigation including a successful appeal of an initial dismissal, large scale discovery, and substantially defeating defendants' motion for summary judgment. *See Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *26-27 (S.D.N.Y. 2022). And last year, KSF, along with its co-counsel, obtained a $189 million settlement of a securities class action on behalf of investors in TuSimple Holdings, Inc., a record-breaking settlement in the Southern District of California. *See Dicker v. TuSimple Holdings, Inc. et al.*, No. 3:22-cv-01300, ECF No. 246 (S.D. Cal. Dec. 19, 2024). Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber legal representation available from KSF. *See* Navarre Decl. Ex. E. The Court should also approve Mr. Hill's selection of Beatty Navarre Strama P.C. as Liaison Counsel, given the firm's experience and expertise in federal litigation, including but not limited to business law and complex multidistrict litigation.

V.    **CONCLUSION**

For the foregoing reasons, Mr. Hill respectfully requests that the Court: (i) appoint him as Lead Plaintiff; and (ii) approve his selection of KSF as Lead Counsel and Beatty Navarre Strama P.C. as Liaison Counsel for the Class.

Respectfully submitted,

Dated: February 10, 2025

By:    */s/ Michael L. Navarre*
Michael L. Navarre
**BEATTY NAVARRE STRAMA P.C.**

10

901 S. MoPac Expressway
Burton Oaks Plaza
Building 1, Suite 200
Austin, Texas 78746
Telephone: (512) 879-5054
Facsimile: (512) 879-5040
mnavarre@bnsfirm.com

*Proposed Liaison Counsel*

-and-

Ramzi Abadou (SBN 222567)
(*pro hac vice to be submitted*)
**KAHN SWICK & FOTI, LLP**
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(*pro hac vice to be submitted*)
Alexandra Pratt
(*pro hac vice to be submitted*)
James T. Fetter
(*pro hac vice to be submitted*)
**KAHN SWICK & FOTI, LLC**
1100 Poydras Street, Suite 960
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexandra.pratt@ksfcounsel.com
james.fetter@ksfcounsel.com

*Counsel for Movant*

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| **Adam M. Apton** <br> Levi & Korsinsky, LLP <br> 33 Whitehall Street, 17th Floor <br> New York, NY 10004 <br> (212) 363-7500 <br> aapton@zlk.com | **Gregg Jeffrey Costa** <br> Gibson Dunn & Crutcher, LLP <br> 811 Main Street, Suite 3000 <br> Houston, TX 77002 <br> (346) 718-6600 <br> gcosta@gibsondunn.com |
| **Thane Tyler Sponsel, III** <br> Sponsel Miller Greenberg PLLC <br> 50 Briar Hollow Lane, Suite 370 West <br> Houston, TX 77027 <br> (713) 892-5400 <br> (713) 892-5401 (fax) <br> sponsel@smglawgroup.com | **John Thomas Cox, III** <br> Gibson Dunn & Crutcher, LLP <br> 2001 Ross Avenue, Suite 2100 <br> Dallas, TX 75201 <br> 214-698-3256 <br> 214-571-2923 (fax) <br> Tcox@gibsondunn.com |
| *Counsel for Plaintiff, Stephen Crocker* | *Counsel for Defendants Cassava Sciences, Inc., Jon Barry, and James W. Kupiec* |

*/s/ Michael L. Navarre*

Michael L. Navarre

12