UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STEPHEN CROCKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CASSAVA SCIENCES, INC., RICHARD JON BARRY, and JAMES W. KUPIEC,<br><br>Defendants. | Case No. 1:24-cv-01525-RP |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF THE PÉREZ-COTAPOS FAMILY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 4

    I.    THE PÉREZ-COTAPOS FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF .................................................................................................................. 4

        A.    The Pérez-Cotapos Family Has the Largest Financial Interest ................... 5

        B.    The Pérez-Cotapos Family Satisfies the Applicable Requirements of Rule 23 .................................................................................................................... 5

            1.    The Pérez-Cotapos Family Has Made a *Prima Facie* Showing of Typicality and Adequacy Under Rule 23 ......................................... 5

            2.    IAML Is Not a "High-Frequency" Trader ...................................... 7

    II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ............................................................................................................... 11

    III.    THE COMPETING MOTIONS SHOULD BE DENIED ................................... 12

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)......................................................................................................8, 10

*Buettgen v. Harless*,
    263 F.R.D. 378 (N.D. Tex. 2009) ........................................................................................11

*Doyle v. Reata Pharms., Inc.*, No. 4:21-CV-00987,
    2022 WL 1206580 (E.D. Tex. Apr. 22, 2022).......................................................................2, 5

*Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP,
    2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ......................................................................10

*Giovagnoli v. GlobalSCAPE, Inc.*, No. SA-17-CV-753-XR,
    2017 WL 11220692 (W.D. Tex. Nov. 6, 2017)..............................................................1, 3, 5, 7

*Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 3:12-CV-3772-G,
    2012 WL 6625382 (N.D. Tex. Dec. 20, 2012) ......................................................................4, 6

*In re Opnext, Inc. Sec. Litig.*, No. CIV.A.08-920 (JAP),
    2008 WL 3285732 (D.N.J. Aug. 7, 2008) .............................................................................11

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ...........................................................................................8

*James v. City of Dallas, Tex.*,
    254 F.3d 551 (5th Cir. 2001) ..............................................................................................2, 6

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ..........................................................................................11

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
    566 F. Supp. 3d 712 (S.D. Tex. 2021)..............................................................................8, 10

*Ramzan v. GDS Holdings, Ltd.*, No. 4:18CV539-ALM-KPJ,
    2018 WL 10780485 (E.D. Tex. Oct. 26, 2018) ....................................................................3, 7

*Singh v. 21 Vianet Grp., Inc.*, No. 2:14-CV-894-JRG-RSP,
    2015 WL 5604385 (E.D. Tex. Sept. 21, 2015)................................................................2, 4, 6

*Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM,
    2008 WL 942273 (D. Ariz. Apr. 7, 2008) ..............................................................................10

*Xie v. Nano Nuclear Energy Inc.*, No. 24-CV-6057 (JMF),
    2024 WL 4610893 (S.D.N.Y. Oct. 28, 2024) ........................................................................4, 9

## Statutes

15 U.S.C. § 78u-4 ................................................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

## Rules

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

Movant the Pérez-Cotapos Family[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz and BG&G as Co-Lead Counsel and BLF as Liaison Counsel (Dkt. No. 25); and in opposition to the competing motions of: (i) Hoorieh Alaghemand ("Alaghemand") (Dkt. No. 12); (ii) Steve E. Pello and David Bohn (collectively, the "Pello-Bohn Group") (Dkt. No. 15); (iii) Jesse Vestal ("Vestal") (Dkt. No. 16); (iv) Steven DeSimone ("DeSimone") (Dkt. No. 22); and (v) Robert Smisek ("Smisek") (Dkt. No. 24).[2]

## PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Cassava securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant or group of movants with the greatest financial interest in the outcome of the Action; and that satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is the Pérez-Cotapos Family, which incurred a loss of approximately $2.58 million calculated on a FIFO basis, or $2.45 million calculated on a LIFO basis, in connection with its Class Period transactions in Cassava securities. *See* Dkt. No. 25-2. Although the PSLRA does not define "financial interest," courts in the Fifth Circuit, including in this District, recognize that the amount of monetary loss is the most significant factor to be considered. *See Giovagnoli v. GlobalSCAPE, Inc.*, No. SA-17-CV-753-XR, 2017 WL 11220692, at *3 (W.D. Tex.

---

[1] All capitalized terms herein are defined in the Pérez-Cotapos Family's motion and moving brief, unless otherwise indicated. *See* Dkt. No. 25.

[2] Initially, one other putative Class member, Danny Hill ("Hill"), filed a similar competing motion. *See* Dkt. No. 20. On February 14, 2025, Hill filed a notice of his non-opposition to the competing motions. *See* Dkt. No. 27.

Nov. 6, 2017) ("Courts consistently consider . . . the approximate losses suffered . . . as most determinative[.]"); *Doyle v. Reata Pharms., Inc.*, No. 4:21-CV-00987, 2022 WL 1206580, at *6 (E.D. Tex. Apr. 22, 2022) (noting same). The table below sets forth the respective claimed losses of the competing movants:

| Movant | Loss[3] |
|---|---|
| Pérez-Cotapos Family | FIFO: $2.58 million<br>LIFO: $2.45 million |
| Alaghemand | $1.18 million |
| Pello-Bohn Group | LIFO: $1.12 million |
| Smisek | FIFO: $256,626<br>LIFO: $179,958 |
| DeSimone | FIFO: $87,312<br>LIFO: $87,312 |
| Vestal | $86,472 |

As the above table reflects, the Pérez-Cotapos Family has claimed the largest loss among all competing movants by a significant margin. The Pérez-Cotapos Family thus clearly possesses the largest financial interest in the outcome of this litigation within the meaning of the PSLRA.

In addition to its considerable financial interest, the Pérez-Cotapos Family also strongly satisfies Rule 23's typicality and adequacy requirements. The Pérez-Cotapos Family's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001); *Singh v. 21 Vianet Grp., Inc.*, No. 2:14-CV-894-JRG-RSP, 2015 WL 5604385, at *2 (E.D. Tex. Sept. 21, 2015). Additionally, the Pérez-Cotapos Family's significant loss gives it a sufficient stake in the outcome of this Action to ensure vigorous advocacy on behalf of the Class, it is aware

---

[3] While the majority of the competing movants specified that they calculated their claimed losses on a FIFO and/or LIFO basis, others—particularly Alaghemand and Vestal—did not specify the methodology they used in calculating their claimed losses.

of no conflict between its interests and those of the Class, and it has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Co-Lead Counsel and Liaison Counsel for the Class. *See Giovagnoli*, 2017 WL 11220692, at *4; *Ramzan v. GDS Holdings, Ltd.*, No. 4:18CV539-ALM-KPJ, 2018 WL 10780485, at *3 (E.D. Tex. Oct. 26, 2018). Further demonstrating its adequacy, the Pérez-Cotapos Family has submitted a detailed Joint Declaration providing the Court with biographical information about its members—Carlos Pérez-Cotapos Ugarte, his wife Maria Isable Ureta Bazán, his father Carlos Pérez-Cotapos Subercaseaux, and Carlos Pérez-Cotapos Subercaseaux's personal investment company, Inversiones Ane Miren Limitada ("IAML")—and attesting to, *inter alia*, their understanding of the significance of their motion, their understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and their readiness to shoulder these responsibilities jointly on behalf of the Class. *See* Dkt. No. 25-5 ¶¶ 1-9, 11-15.

A competing movant, Alaghemand, contends that "the Pérez-Cotapos Family is atypical and should not be appointed lead plaintiff" because IAML is purportedly an "atypical high-frequency trader" by virtue of its having purchased and sold the same number of shares on the same day on two separate occasions. *See* Dkt. No. 28 at 1-4. Alaghemand is wrong. A high-frequency trader relies on algorithms to execute a large number of orders at very high speeds, often within a bare fraction of a second.[4] Here, IAML simply purchased and sold the same number of shares on the same day on two separate dates during the 291-day-long Class Period. IAML's trading activity thus plainly does not fit the definition of high-frequency trading, nor does it

---

[4] James Chen, *High-Frequency Trading (HFT): What It Is, How It Works, and Example*, Investopedia (May 10, 2024), https://www.investopedia.com/terms/h/high-frequency-trading.asp; *High-Frequency Trading (HFT)*, Corporate Finance Institute, https://corporatefinanceinstitute.com/resources/equities/high-frequency-trading-hft/ (last visited on Feb. 24, 2025).

3

otherwise render IAML atypical under Rule 23. Rather, as discussed further in Section I.B.2., *infra*, IAML's Class Period investment activity consisted, in the main, of purchasing and holding Cassava stock through the corrective disclosure (*i.e.*, revelation of Defendants' alleged fraud) at the end of the Class Period, at which point its shares sharply declined in value, causing the investment losses that IAML now seeks to recover. IAML's Class Period transactions in Cassava securities are therefore clearly typical of those of other Class members. *See Xie v. Nano Nuclear Energy Inc.*, No. 24-CV-6057 (JMF), 2024 WL 4610893, at *2 (S.D.N.Y. Oct. 28, 2024) (finding movant that "purchased *and* sold [company's] securities on only four days of the seventy-one-day-long Class Period" and "purchased . . . and held . . . shares continuously through the corrective disclosures at the end of the Class Period" was typical and adequate (emphasis in original)).

For the reasons set forth herein, the Pérez-Cotapos Family respectfully submits that the Court should grant its motion in its entirety and deny the competing motions.

## ARGUMENT

### I. THE PÉREZ-COTAPOS FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA provides a rebuttable presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. *Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 3:12-CV-3772-G, 2012 WL 6625382, at *2 (N.D. Tex. Dec. 20, 2012); *Singh*, 2015 WL 5604385, at *1. Once this presumption is triggered, it may be rebutted only upon "***proof***" that the presumptive lead plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). Here, the most adequate class representative is the Pérez-Cotapos Family.

4

### A.    The Pérez-Cotapos Family Has the Largest Financial Interest

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." *Id.* § 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Fifth Circuit, including in this District specifically, recognize that the amount of monetary loss is the most significant factor to be considered. *See Giovagnoli*, 2017 WL 11220692, at *3 (collecting cases and finding "[c]ourts consistently consider . . . the approximate losses suffered . . . as most determinative" for purposes of determining financial interest under the PSLRA); *Doyle*, 2022 WL 1206580, at *6 (noting courts find the losses suffered the most determinative factor in the financial-interest analysis under the PSLRA).

Under the foregoing analysis, no competing movant seeking appointment as Lead Plaintiff has a larger financial interest than the Pérez-Cotapos Family in this Action. As the chart at p. 2 reflects, the Pérez-Cotapos Family's approximate $2.58 million loss calculated on a FIFO basis, or $2.45 million loss calculated on a LIFO basis, is significantly larger than that claimed by any other competing movant. Indeed, the Pérez-Cotapos Family's loss is more than a ***million dollars*** larger than that suffered by any other competing movant, whether calculated on a FIFO or LIFO basis. Thus, among the competing Lead Plaintiff movants, the Pérez-Cotapos Family clearly possesses the largest financial interest in this Action.

### B.    The Pérez-Cotapos Family Satisfies the Applicable Requirements of Rule 23

#### 1.    The Pérez-Cotapos Family Has Made a *Prima Facie* Showing of Typicality and Adequacy Under Rule 23

In addition to possessing the largest financial interest in the outcome of this Action of any movant seeking appointment as Lead Plaintiff, and thus being the statutorily presumed "most

5

adequate plaintiff" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)), the Pérez-Cotapos Family has plainly made the requisite *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23. *See Hohenstein*, 2012 WL 6625382, at *2 ("[A] *prima facie* showing that [a lead plaintiff] movant satisfies the requirements of Rule 23 is sufficient."); *Singh*, 2015 WL 5604385, at *1 ("The Court must determine whether [movant] has *prima facie* evidence that meets the typicality and adequacy requirements of Rule 23.").

*First*, the Pérez-Cotapos Family's claims in this litigation satisfy the typicality requirement of Rule 23(a)(3) because its claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See James*, 254 F.3d at 571; *Singh*, 2015 WL 5604385, at *2. The Pérez-Cotapos Family alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Cassava, or by omitting to state material facts necessary to make the statements they did make not misleading. Moreover, the Pérez-Cotapos Family, like other Class members, purchased Cassava securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Cassava's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23. *See James*, 254 F.3d at 571; *Singh*, 2015 WL 5604385, at *2.

*Second*, the Pérez-Cotapos Family satisfies the adequacy requirement of Rule 23(a)(4) because its significant loss gives it a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, it is aware of no conflict between its interests and those of the Class, and, as discussed in detail in its moving brief, the Pérez-Cotapos Family has selected

6

and retained counsel that are highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Co-Lead Counsel and Liaison Counsel for the Class (*see* Dkt. No. 25 at 10-12).  *See Giovagnoli*, 2017 WL 11220692, at *4; *Ramzan*, 2018 WL 10780485, at *3.  The Pérez-Cotapos Family has further demonstrated its adequacy by submitting with its motion papers a Joint Declaration that provides detailed information about its members— Carlos Pérez-Cotapos Ugarte, his wife Maria Isable Ureta Bazán, his father Carlos Pérez-Cotapos Subercaseaux, and Carlos Pérez-Cotapos Subercaseaux's personal investment company, IAML— including, *inter alia*, their city and country of residence, ages, investment experience, and professional and educational backgrounds, and that attests to, among other things, their understanding of the significance of their motion and the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, as well as their readiness to shoulder these responsibilities jointly on behalf of the Class.  *See* Dkt. No. 25-5 ¶¶ 1-9, 11-15.

### 2.     IAML Is Not a "High-Frequency" Trader

In her response brief, Alaghemand argues that "the Pérez-Cotapos Family is atypical and should not be appointed lead plaintiff" because IAML is a purported "atypical high-frequency trader."  *See* Dkt. No. 28 at 1-4.  Alaghemand is wrong.

A high-frequency trader relies on complex algorithms to execute a large number of orders in a fraction of a second.[5]  While a typical investor—and indeed, a typical Class member in this

---

[5] James Chen, *High-Frequency Trading (HFT): What It Is, How It Works, and Example*, Investopedia (May 10, 2024), https://www.investopedia.com/terms/h/high-frequency-trading.asp ("High-frequency trading (HFT) is a trading method that uses powerful computer programs to transact a large number of orders in fractions of a second. HFT uses complex algorithms to analyze multiple markets and execute orders based on market conditions."); *High-Frequency Trading (HFT)*, Corporate Finance Institute, https://corporatefinanceinstitute.com/resources/equities/high-frequency-trading-hft/ (last visited on Feb. 24, 2025) ("High-frequency trading (HFT) is algorithmic trading characterized by high-speed trade execution, an extremely large number of transactions, and a very short-term investment horizon. HFT leverages special computers to

litigation—makes investment decisions based on, *inter alia*, the public statements by a company and its officers regarding its business prospects and financial and operational results, a high-frequency trader employs a technology-driven approach that simply aims to identify and capitalize on short-term fluctuations in a company's stock price, irrespective of any public statements by or about the company at issue.

Accordingly, a primary concern with appointing a high-frequency trader as a lead plaintiff is that such an investor is "susceptib[le] to the defense that [it] was trading in response to information other than the alleged misstatements and omissions of the Defendants." *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 719 (S.D. Tex. 2021) (internal quotation marks omitted). Under the presumption of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b–5 action." *Id.* at 247. However, the *Basic* presumption is rebuttable if a defendant "can make '[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price[.]'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 292 (S.D.N.Y. 2003) (first alteration in original) (quoting *Basic*, 485 U.S. at 248). Accordingly, showing that a lead plaintiff's trading was purely algorithm-driven and did not rely on the defendants' alleged misrepresentations will deprive the lead plaintiff of the *Basic* presumption, to the obvious detriment of the class.

---

achieve the highest speed of trade execution possible. It is very complex and, therefore, primarily a tool employed by large institutional investors such as investment banks and hedge funds.").

There is nothing to support Alaghemand's claim that IAML is "an atypical high-frequency trader." Dkt. No. 28 at 2. Alaghemand merely notes that "on August 8, 2024, [IAML] purchased 6,751 shares at prices ranging from $24.07 to $24.125" per share and sold the same number of shares at $25.00 per share the same day; and that "on September 27, 2024, [IAML] purchased 18,000 shares at prices ranging from $27.26 to $27.49" per share and sold the same number of shares at $28.50 per share the same day. Dkt. No. 28 at 2. In other words, Alaghemand merely points to the fact that, on two separate occasions, IAML purchased and sold the same number of shares on the same day, and does not even attempt to explain why this innocuous trading activity would render IAML "an atypical high-frequency trader." *See* Dkt. No. 28 at 1-4.

Rather, IAML's Class Period transactions in Cassava securities are clearly typical of those of other Class members. IAML both purchased *and* sold Cassava stock on the same day on only *two* days during the 291-day-long Class Period and never completely liquidated its Cassava stock holdings during the Class Period. *See* Dkt. No. 25-2 at *2-3; Dkt. No. 25-4 at *14-16. More significantly, IAML purchased 120,751 shares of Cassava common stock throughout the Class Period, sold Cassava stock on only *four* days of the 291-day-long Class Period, and ultimately held 91,000 shares of Cassava stock through the corrective disclosure at the end of the Class Period, at which point its shares sharply declined in value, causing the investment losses that IAML now seeks to recover. Accordingly, IAML's Class Period investment activity consisted, in the main, of purchasing and holding Cassava stock and plainly does *not* evince an effort to capitalize on intraday market price action via high-frequency trading. *See Xie*, 2024 WL 4610893, at *2 (finding movant that "purchased *and* sold [company's] securities on only four days of the seventy-one-day-long Class Period" and "purchased 25,555 shares of [company's] stock . . . and held those shares continuously through the corrective disclosures at the end of the Class Period" was typical

9

and adequate and appointing said movant lead plaintiff under the PSLRA (emphasis in original)). Given its wholly typical trading activity, there is nothing to suggest that IAML "was trading in response to information other than the alleged misstatements and omissions of the Defendants", *Apache*, 566 F. Supp. 3d at 719 (internal quotation marks omitted), and thus no concern that IAML's appointment to a leadership role in this Action risks depriving the Class of the *Basic* presumption.

The cases on which Alaghemand relies are easily distinguished. Alaghemand cites four cases in which courts denied motions because either: (a) a movant's trading activity—by virtue of its timing, its frequency, or other unorthodox transactions—strongly called into question the movant's reliance on the defendants' class period statements; or (b) a movant's unusual trading activity in combination with other issues that bore on the movant's adequacy rendered the movant an unfit class representative. In *Apache*, the movant at issue "repeatedly bought *and* sold large portions of Apache stock (usually in the range of 55,000+ shares) on the same day or within a matter of days" "[d]uring the first three months of the class period," and "purchased and *completely liquidated* his Apache stock holdings a *dozen times* during this period[.]" 566 F. Supp. 3d at 719 (emphases added). In *Tsirekidze v. Syntax-Brillian Corp.*, a member of a movant group "ma[de] as many as *80 separate transactions . . . in a single day*" and filed a separate, competing motion with another group. No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (emphasis added). Accordingly, the court in *Tsirekidze* found that the "[movant]'s unique trading pattern *combined* with questions about adequacy establish that his group should not represent the class." *Id.* (emphasis added). In *Eichenholtz v. Verifone Holdings, Inc.*, a member of a movant group "made *over 5,000 trades in Verifone's shares during a nine-month period*" and "an average of *over eight trades a day* for a significant portion of the class period." No. C07-

10

06140MHP, 2008 WL 3925289, at *10 (N.D. Cal. Aug. 22, 2008) (emphases added). Finally, *In re Opnext, Inc. Sec. Litig.*, a movant group's "losses [we]re mostly attributable to [one member]'s day trading of Opnext stock, buying and selling those shares within a short period of time" and "as of . . . the closing date of the putative class period, the . . . Group held only 6,600 shares." No. CIV.A.08-920 (JAP), 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008).

\* \* \* \*

Because the Pérez-Cotapos Family has the largest financial interest in the relief sought by the Class of any movant seeking appointment as Lead Plaintiff and otherwise satisfies the applicable requirements of Rule 23, it is the presumptive "most adequate" plaintiff of the Class within the meaning of the PSLRA. To overcome the strong presumption entitling the Pérez-Cotapos Family to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the Pérez-Cotapos Family is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain counsel for the Class, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Buettgen v. Harless*, 263 F.R.D. 378, 383 (N.D. Tex. 2009) (approving lead plaintiff's selection of lead and liaison counsel to represent the class pursuant to the PSLRA). The Court should interfere with a lead plaintiff's selection only if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, the Pérez-Cotapos Family has selected Pomerantz and BG&G as Co-Lead Counsel

11

and BLF as Liaison Counsel for the Class. As their respective resumes reflect, these firms' attorneys are highly experienced in the areas of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. Nos. 25-6, 25-7, 25-8. Thus, the Court may be assured that by approving the Pérez-Cotapos Family's selection of counsel, the members of the Class will receive the best legal representation available.

### III.   THE COMPETING MOTIONS SHOULD BE DENIED

As discussed further in Section I.A., *supra*, no competing movant seeking appointment as Lead Plaintiff claims a larger financial interest in this Action than the Pérez-Cotapos Family. This fact alone mandates denial of the competing motions.

### CONCLUSION

For the foregoing reasons, the Pérez-Cotapos Family respectfully requests that the Court issue an Order: (1) appointing the Pérez-Cotapos Family as Lead Plaintiff for the Class; and (2) approving Pomerantz and BG&G as Co-Lead Counsel and BLF as Liaison Counsel for the Class.

Dated: February 24, 2025                     Respectfully submitted,

*/s/ Willie C. Briscoe*
WILLIE C. BRISCOE
State Bar Number 24001788
**THE BRISCOE LAW FIRM, PLLC**
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: (972) 521-6868
Facsimile: (281) 254-7789
wbriscoe@thebriscoelawfirm.com

*Counsel for the Pérez-Cotapos Family and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application pending)
J. Alexander Hood II

(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for the Pérez-Cotapos Family and Proposed Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

This is to certify that on February 24, 2025, I have caused to be filed the above and foregoing on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and exact copies of this filing.

*/s/ Willie C. Briscoe*
WILLIE C. BRISCOE