**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CARLOS PÉREZ-COTAPOS UGARTE, MARIA ISABEL URETA BAZÁN, CARLOS PÉREZ-COTAPOS SUBERCASEAUX, INVERSIONES ANE MIREN LIMITADA, SHERYL GROVE, and HOORIEH ALAGHEMAND, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-CV-1525-DAE |
| Plaintiffs, | |
| v. | |
| CASSAVA SCIENCES, INC., REMI BARBIER, RICHARD JON BARRY, LINDSAY BURNS, JAMES W. KUPIEC, and ERIC SCHOEN, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS REMI BARBIER'S AND LINDSAY BURNS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 1

ARGUMENTS ...................................................................................................................... 2

I.      THE AC ALLEGES ACTIONABLE MISSTATEMENTS. ................................................. 2

II.     THE AC SUPPORTS A COMPELLING INFERENCE OF SCIENTER. ........................ 4

    A.      Burns and Barbier Knew or Recklessly Disregarded Evidence Substantiating the
        Allegations of Research Misconduct. ........................................................................ 5

        1.      The Court Can Consider Allegations Derived from an SEC Complaint. ......... 5

        2.      Cassava's Audit of Dr. Wang's Laboratory Supports Scienter. ...................... 7

        3.      Burns and Barbier Ignored Significant Red Flags. ......................................... 8

    B.      The AC Alleges a Plausible Motive to Defraud. ....................................................... 9

    C.      The Core Operations Theory Bolsters the Inference of Scienter. ............................ 11

III.    THE AC ADEQUATELY ALLEGES LOSS CAUSATION. ........................................ 12

    A.      The AC Adequately Alleges Loss Causation Based on Corrective Disclosures. ....... 12

    B.      The AC Adequately Alleges A Materialization of the Risk Theory of Loss
        Causation. ............................................................................................................... 17

IV.     BURNS AND BARBIER ARE LIABLE AS CONTROL PERSONS ............................ 19

CONCLUSION ..................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Abrams v. Baker Hughes Inc.,*
    292 F.3d 424 (5th Cir. 2002) ..................................................10

*In re agilon health, inc. Sec. Litig.,*
    2025 WL 2388183 (W.D. Tex. Aug. 15, 2025) (Ezra, J.) ....................19

*Alaska Elec. Pension Fund v. Flowserve Corp.,*
    572 F.3d 221 (5th Cir. 2009) (Br. ) ..................................18

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP,*
    532 F. Supp. 3d 189 (E.D. Pa. 2021) ..................................14

*Anschutz Corp. v. Merrill Lynch & Co. Inc.,*
    785 F. Supp. 2d 799 (N.D. Cal. 2011) ..................................6

*In re Arthrocare Corp. Sec. Litig.,*
    726 F. Supp. 2d 696 (W.D. Tex. 2010)..................................9

*In re AT&T Inc. Sec. Litig.,*
    2025 WL 1685840 (N.D. Tex. June 16, 2025) ..................................4

*Aubrey v. Barlin,*
    2010 WL 3909332 (W.D. Tex. Sep. 29, 2010)..................................18

*BG Gulf Coast LNG, L.L.C. v. Sabine-Neches Navigation Dist.,*
    49 F.4th 420 (5th Cir. 2022) ..................................2

*In re BP p.l.c. Sec. Litig.,*
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ..................................8

*Budde v. Global Power Equip. Grp., Inc.,*
    2017 WL 6621540 (N.D. Tex. Dec. 27, 2017) ..................................15

*Callinan v. Lexicon Pharms., Inc.,*
    479 F. Supp. 3d 379 (S.D. Tex. 2020) ..................................10, 11, 12

*In re Cassava Scis. Inc. Sec. Litig.,*
    2023 WL 3442087 (W.D. Tex. May 11, 2023) .............................. *passim*

*In re Cassava Scis. Inc. Sec. Litig.,*
    2024 WL 4916373 (W.D. Tex. June 12, 2024) ..................................16, 17

ii

*Catogas v. Cyberonics, Inc.*,
   292 F. App'x 311 (5th Cir. 2008) ...........................................................18

*In re Ceridian Corp. Sec. Litig.*,
   542 F.3d 240 (8th Cir. 2008) ...................................................................6

*City of N. Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
   2021 WL 212337 (S.D.N.Y. Jan. 21, 2021),
   *aff'd sub nom. Town of Davie Police Officers Ret. Sys. v. City of N. Miami
   Beach Police Officers' & Firefighters' Ret. Plan*,
   2021 WL 5142702 (2d Cir. Nov. 5, 2021)................................................5

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*,
   2016 WL 6075540 (W.D. Tex. Sep. 16, 2016).......................................19

*Crutchfield v. Match Grp., Inc.*,
   529 F. Supp. 3d 570 (N.D. Tex. 2021) ...................................................12

*In re Cyclink Sec. Litig.*,
   178 F. Supp. 2d 1077 (N.D. Cal. 2001) ...................................................6

*Dawes v. Imperial Sugar Co.*,
   975 F. Supp. 2d 666 (S.D. Tex. 2013) ....................................................18

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
   579 F. Supp. 3d 933 (S.D. Tex. 2022) ......................................................8

*In re Dell Inc., Sec. Litig.*,
   591 F. Supp. 2d 877 (W.D. Tex. 2008).....................................................18

*In re DraftKings Inc. Sec. Litig.*,
   650 F. Supp. 3d 120 (S.D.N.Y. 2023).......................................................7

*Emps. Ret. Sys. of State of Haw. v. Whole Foods Mkt., Inc.*,
   905 F.3d 892 (5th Cir. 2018) .................................................................16

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
   2003 WL 23305555 (S.D. Tex. Dec. 11, 2003).........................................6

*Franchi v. SmileDirectClub, Inc.*,
   633 F. Supp. 3d 1046 (M.D. Tenn. 2022)................................................14

*Gambrill v. CS Disco, Inc.*,
   2025 WL 388828 (W.D. Tex. Jan. 30, 2025) ............................................9

*Genessee Cnty. Emps.' Ret. Sys. v. FirstCash Holdings Inc.*,
   667 F. Supp. 3d 295 (N.D. Tex. 2023) ....................................................14

*Halman Aldubi Providen & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
  2022 WL 889158 (E.D. Pa. Mar. 25, 2022)...................................................................14

*Ho v. Flotek Indus., Inc.*,
  248 F. Supp. 3d 847 (S.D. Tex. 2017) ........................................................................10

*Hull v. Global Digit. Sols., Inc.*,
  2017 WL 6493148 (D.N.J Dec. 1, 2017) .....................................................................14

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp. Inc.*,
  537 F.3d 527 (5th Cir. 2008) ......................................................................................12

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
  237 F. Supp. 3d 492 (S.D. Tex. 2017) ........................................................................10

*Jacobowitz v. Range Res. Corp.*,
  596 F. Supp. 3d 659 (N.D. Tex. 2022) ..........................................................................8

*Kaltman v. Key Energy Servs., Inc.*,
  447 F. Supp. 2d 648 (W.D. Tex. 2006).........................................................................19

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
  2015 WL 3794769 (W.D. Tex. June 16, 2015) .............................................................18

*In re Key Energy Servs., Inc. Sec. Litig.*,
  166 F. Supp. 3d 822 (S.D. Tex. 2016) .........................................................................18

*Linenweber v. Sw. Airlines Co.*,
  693 F. Supp. 3d 661 (N.D. Tex. 2023) ..........................................................................2

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ........................................................................................4

*Magruder v. Halliburton Co.*,
  359 F. Supp. 3d 452 (N.D Tex. 2018) .........................................................................17

*Neiman v. Bulmahn*,
  854 F.3d 741 (5th Cir. 2017) ......................................................................................10

*Nykredit Portefølje Admin. A/S v. Propetro Holding Corp.*,
  2021 WL 9037758 (W.D. Tex. Sep. 13, 2021)..............................................................20

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) ...........................................................................2, 3, 4, 10

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)....................................................................................................2, 3

iv

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ...........................................................................4, 10

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
    245 F. Supp. 3d 870 (S.D. Tex. 2017) .................................................................7

*Rangel v. Adtalem Glob. Educ., Inc.*,
    2019 WL 6828298 (W.D. Tex. Dec. 13, 2019) ....................................................5

*In re Repros Therapeutics, Inc. Sec. Litig.*,
    2010 WL 11583428 (S.D. Tex. Nov. 17, 2010) ..................................................12

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015) ....................................................................3

*In re SolarWinds Corp. Sec. Litig.*,
    595 F. Supp. 3d. 573 (W.D. Tex. 2022) ..............................................................19

*Stephens v. Uranium Energy Inc.*,
    2016 WL 3855860 (S.D. Tex. July 15, 2025) .....................................................12

*In re Sunterra Corp. Sec. Litig.*,
    199 F. Supp. 2d 1308 (M.D. Fla. 2002) ..............................................................11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ..............................................................................................4

*In re UBS Auction Rate Sec. Litig.*,
    2010 WL 2541166 (S.D.N.Y. June 10, 2010) ......................................................6

*Utesch v. Lannett Co.*,
    385 F. Supp. 3d 408 (E.D. Pa. 2019) .................................................................15

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007) ...................................................................7

*Yang v. Nobilis Health Corp.*,
    2021 WL 3619863 (5th Cir. Aug. 13, 2021) .........................................................8

*Zishka v. Am. Pad & Paper Co.*,
    2001 WL 1748741 (N.D. Tex. Sep. 28, 2001) .....................................................20

## INTRODUCTION

Plaintiffs[1] submit this memorandum of law in opposition to the Motion to Dismiss filed by Defendants Burns and Barbier (collectively referred to herein together with Cassava, Barry, Kupiec, and Schoen as "Defendants"). Plaintiffs incorporate by reference the Statement of Facts set forth in their opposition to the Company Defendants' motion to dismiss.[2]

Defendants perpetrated a years-long fraud on investors causing them significant damages. In challenging the sufficiency of the AC's well-pled allegations, Barbier and Burns rely on extraneous evidence that is neither properly considered at this stage, nor supportive of the propositions for which they cite it. They erroneously contend Dr. Wang was exonerated—when that was not the case—and that Plaintiffs' securities fraud claims therefore must fail.

Burns' and Barbier's legal arguments also fail to pass muster. Barbier and Burns recycle the same legal arguments that this Court previously rejected under similar circumstances in the pending securities class action, *In re Cassava Sciences, Inc. Sec. Litigation*, No. 1:21-cv-000751 (W.D. Tex.). The AC adequately alleges Burns' and Barbier's statements were misleading and made with scienter, and a causal connection between their misstatements and resulting stock price drops that injured investors. Thus, for the reasons set forth herein, and in Plaintiffs' Opp. (incorporated herein by reference), their motions should be denied.

## LEGAL STANDARD

To state a 10(b) claim, the AC must allege: "(1) a material misrepresentation or omission; (2) scienter (a wrongful state of mind); (3) a connection with the purchase or sale of a security; (4)

---

[1] Unless otherwise defined herein, capitalized terms bear the same meaning as in the Amended Complaint (ECF No. 49) (the "AC") (cited as "¶__").
[2] Barbier's and Burns' brief (ECF No. 69) is cited to herein as "Br." Plaintiffs' Opposition to the Company Defendants' Motion to Dismiss is cited to herein as "Opp." Unless otherwise indicated, emphasis is added and internal quotation marks and citations are omitted.

reliance; (5) economic loss; and (6) a causal connection between the material misrepresentation and the loss." *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 206 (5th Cir. 2023) ("*Six Flags*"). When analyzing the sufficiency of the claims, the Court must "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff." *BG Gulf Coast LNG, L.L.C. v. Sabine-Neches Navigation Dist.*, 49 F.4th 420, 425 (5th Cir. 2022).

## ARGUMENTS

### I.    THE AC ALLEGES ACTIONABLE MISSTATEMENTS.

As discussed in the Opp. §§I.A & B, incorporated herein by reference, Barbier's statements concerning the tainted Phase 2b Study and related investigations (¶¶123, 125, 127, 129-30, 132, 135) and Barbier's and Burns' statements regarding the Phase 2 Study (¶¶160, 162-64, 166) were false or misleading and are actionable.[3] In addition, Burns continuing to tout the Phase 2b Study (¶134) was misleading, given her involvement in the research misconduct (*i.e.*, emailing Dr. Wang sufficient information to unblind himself and removing a large portion of patients in reported cognition data, which showed no meaningful improvement in cognition) and her awareness that Cassava's audit of Dr. Wang's laboratory had revealed significant deficiencies (¶¶136, 204).

Barbier and Burns argue the statements touting the Phase 2b Study and Phase 2 Study (¶¶134-35, 160, 162-64, 166) are opinions. Br. at 5. However, a statement of opinion does not "express[] certainty about a thing," whereas a statement of fact does. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund.*, 575 U.S. 175, 183 (2015). Each of the misstatements at issue are objectively verifiable facts, including whether the Phase 2b Study showed improvements in CSF biomarkers (¶¶134-35) and whether the Phase 2 Study results showed the

---

[3] Defendants' authority (Br. at 4), *Linenweber v. Sw. Airlines Co.*, 693 F. Supp. 3d 661, 680 (N.D. Tex. 2023), fails to support otherwise because unlike in *Linenweber*, the statements at issue here are misleading in context for the reasons discussed in the Opp. §§I.A & B.

reported ADAS-Cog results (¶160, 162-64, 166). Their out-of-circuit authority, *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015), is distinguishable because the defendants there "subjectively assessed the clinical trial results" and "reported their personal reactions to the data."

Even if the portion of Burns' statement that the Phase 2b Study showed "encouraging effects on cognition" (¶134) is an opinion, it is still actionable because Burns omitted material facts and "did not hold the belief she professed." *Omnicare*, 575 U.S. at 185-86, 194. Burns could not have reasonably held that belief because as noted, she had personally manipulated the reported cognition data. ¶136. She also omitted the material fact that she knew the results were unreliable because of the evidence substantiating the alleged research misconduct during the study. *¶136.*

Barbier and Burns also appear to suggest that their statements could not have been misleading unless Dr. Wang was, in fact, unblinded. Br. at 5-6. Not so. Downplaying the accusations of research misconduct and continuing to tout the Phase 2b Study results, despite knowing these adverse material facts undermining their statements, rendered them misleading. *See Six Flags,* 58 F.4th at 217 (duty to "speak the full truth" and "to disclose a mix of information that is not misleading" when speaking on a topic).

Further, Burns and Barbier improperly inject their own self-serving interpretation of the Audit Report and ask the Court to conclude that the Audit Report and Burns' email to Dr. Wang with sufficient information to unblind himself do not support that Defendants' statements were misleading. Br. at 5. However, whether the Audit Report undermined the Phase 2b Study results is a question of fact that is not properly considered on a motion to dismiss. In any event, it found Dr. Wang's laboratory unfit for future studies based on practices during the Phase 2b Study, including, *inter alia*, failing to calibrate essential equipment *in several years* and validate/qualify an instrument and freezer prior to sample analysis and storage. ECF No. 68-3 at 6. This, together

with Burns' tampering with reported cognition data and emailing Dr. Wang sufficient information to unblind himself, is evidence of manipulation, which any reasonable investor would consider significant when evaluating the misleading statements about the Phase 2b Study.

## II.    THE AC SUPPORTS A COMPELLING INFERENCE OF SCIENTER.

A complaint adequately pleads scienter by alleging facts that support the defendant acted with "an intent to deceive, manipulate, or defraud or severe recklessness." *Six Flags*, 58 F.4th at 214. "The inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009). "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). "[A] tie favors the plaintiff on a motion to dismiss." *Six Flags*, 58 F.4th at 214.

Burns' and Barbier's group pleading argument (Br. at 6-7) ignores the Defendant-specific allegations supporting their scienter. ¶¶194-200, 204, 208-11, 213-17, 219-234. Their authority (Br. at 6-7) is also inapposite. *See In re AT&T Inc. Sec. Litig.*, 2025 WL 1685840, at *5 (N.D. Tex. June 16, 2025) (statements all attributed to the company and knowledge attributed to group).[4] Even if there are a few "group-pleaded allegations interspersed with defendant-specific allegations," the Court is "able to separate the wheat from the chaff," such that "dismissal is unwarranted." *Owens v. Jastrow*, 789 F.3d 529, 538 (5th Cir. 2015).

As detailed in the Opp. §II, incorporated by reference, and discussed further below, the AC sufficiently alleges: (1) Defendants knew or recklessly disregarded non-public evidence substantiating the allegations of research misconduct and widely publicized red flags, which

---

[4] The AC identifies the makers of each statement. ¶¶123, 125, 127, 129-30, 132, 134-35, 145, 147, 160, 162-64, 166, 168, 171, 173, 175.

rendered their statements regarding the Phase 2b Study and related investigations misleading, (2) Defendants' motive to raise much-needed capital for the continued development of simufilam supports their scienter, and (3) the core operations theory bolsters the inference of scienter.

### A. Burns and Barbier Knew or Recklessly Disregarded Evidence Substantiating the Allegations of Research Misconduct.

First, Burns and Barbier knew or should have known that their statements downplaying the accusations of research misconduct and investigations related thereto, and touting the tainted Phase 2b Study, were false or misleading because they knew or recklessly disregarded significant adverse facts undercutting their public statements, such as Cassava's 2022 audit of Dr. Wang's laboratory and Burns' involvement in the alleged research misconduct. *See* Opp. §II.[5] For the reasons discussed below, each of Burns' and Barbier's arguments in support of dismissal falls flat.

### 1. The Court Can Consider Allegations Derived from an SEC Complaint.

Burns and Barbier challenge the allegations about Burns' involvement in the alleged research misconduct as "untested allegations" in the SEC Complaint (Br. at 10). However, these allegations were derived from the SEC's investigation with Cassava's "cooperat[ion]" (¶140), including its review of Cassava's internal documents, and Courts routinely consider such allegations relevant, *see Rangel v. Adtalem Glob. Educ., Inc.*, 2019 WL 6828298, at *1, *6 (W.D. Tex. Dec. 13, 2019) (rejecting argument that the plaintiffs could not rely on "untested allegations" for their fraud, negligent misrepresentation, and Texas Deceptive Trade Practices Act claims and finding allegations based on "numerous complaints and investigations brought by governmental entities" were adequate), *R. & R. adopted*, 2020 WL 10056149 (W.D. Tex. Mar. 12, 2020); *City*

---

[5] Burns and Barbier's argument that the statements downplaying the accusations of research misconduct and related investigations were literally true (Br. at 13) fails for the same reasons discussed in the Opp. §I.A. Likewise, their argument that the statements regarding the Phase 2b Study results and Phase 2 Study results were true and not misleading opinions (Br. at 13) fails for the reasons discussed herein, *supra* Section I.

*of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *5 (S.D.N.Y. Jan. 21, 2021) ("[O]utside complaints [are] fair game for Plaintiffs to use in fashioning their complaint" and "Defendants are incorrect to assert that Plaintiffs may not rely on facts pleaded in outside litigation"), *aff'd sub nom. Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, 2021 WL 5142702 (2d Cir. Nov. 5, 2021); *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 821 (N.D. Cal. 2011) ("[T]he regulatory investigations . . . may be relevant to issues in this case."); *In re Cyclink Sec. Litig.*, 178 F. Supp. 2d 1077, 1080 (N.D. Cal. 2001) ("[T]he court may . . . consider the allegations contained [in the SEC complaint] when evaluating the sufficiency of plaintiffs' allegations . . . .").

Their authority (Br. at 10-11) fails to support otherwise. *See In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *18, *19 n.11 (S.D.N.Y. June 10, 2010) (SEC's allegations unsupportive because the alleged manipulative activity at issue had been "previously disclosed" publicly); *In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 2003 WL 23305555, at *11 (S.D. Tex. Dec. 11, 2003) (settlement with various regulatory agencies "relating to its challenged research bias and conflicts of interest in its securities analyses and recommendations" did not support knowledge "that Enron's financial statements were false and misleading").

Burns and Barbier also attempt to undercut these allegations because the SEC "uncovered no evidence of fraud" (Br. at 11), but that contention is unsupported. Simply because the SEC made the strategic decision to charge Cassava, Burns, and Barbier with negligence does not compel the conclusion that the SEC found no evidence of fraud. Their out-of-circuit authority is inapposite. In *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248-49 (8th Cir. 2008), the court concluded the inference that the SEC uncovered no evidence of fraud was more compelling because, unlike here,

there were no other "facts giving rise to a strong inference of fraud."

Burns and Barbier also adopt the Company Defendants' argument that Plaintiffs were required to allege more specifics about how Burns' email enabled Dr. Wang to unblind himself or how she manipulated the cognition data. Br. at 11. Not so. Burns understood what she sent to Dr. Wang and knew of her own manipulation of the reported cognition data. Thus, even if Dr. Wang was not actually unblinded, Burns knew Dr. Wang *could have* been unblinded before conducting the final analysis, and that possibility, together with her own manipulation of the cognition results, rendered the Phase 2b Study results unreliable. Opp. §II.A.2. Barbier likewise knew, or recklessly disregarded, Burns' involvement in the alleged research misconduct based on his swift denial of the CUNY Report. Opp. §II.A.1. Contrary to Burns' and Barbier's suggestion (Br. at 14), their marriage is relevant to the scienter analysis. *See In re Cassava Scis. Inc. Sec. Litig.*, 2023 WL 3442087, at *10 (W.D. Tex. May 11, 2023) ("*Cassava Scis. I*") (considering their marriage when assessing whether the misrepresented information would have been readily apparent to them).

Barbier's and Burns' authority on that point (Br. at 14) is distinguishable. *See In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 177-78 (S.D.N.Y. 2023) (scienter allegations based on relationship with purported "trusted confidant" and his brother were "conclusory and conjectural"); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 951-52 (D. Ariz. 2007) (allegations that a defendant had significant control over stock option granting practices simply because of his marriage to the Senior Vice President of Human Resources did not support he knew or was reckless in not knowing that the company "improperly accounted for its stock option grants"); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 921-27 (S.D. Tex. 2017) (plaintiffs did not allege scienter based on a personal relationship).

**2.    Cassava's Audit of Dr. Wang's Laboratory Supports Scienter.**

Burns and Barbier also dispute the Audit Report supports scienter, mischaracterizing it as "not concern[ing] or otherwise address[ing] the Phase 2b Study results." Br. at 11. The Court should reject their attempt to use the Audit Report to improperly inject their own version of the facts, but even if it does consider the Audit Report, their proffered interpretation is incorrect, as the Audit Report is explicitly connected to the Phase 2b Study and makes unsuitability findings based on *prior* deficiencies during the Phase 2b Study. *See* Opp. §II.A.1; *supra* Section I.

Further, the AC's allegation that Burns and Barbier were "generally aware" of the Audit Report (¶204) was derived from the SEC Complaint (ECF No. 68-6 ¶86), and, for the reasons discussed above, the Court may consider it. Burns' and Barbier's authority (Br. at 11-12) is distinguishable. In *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 687 (N.D. Tex. 2022) and *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 817 (S.D. Tex. 2012), the complaint was devoid of details regarding the reports, including whether the defendants actually reviewed them, whereas here, the Court has all the details, as the actual report has been provided (ECF No. 68-3), and there are allegations supporting Barbier's and Burns' awareness of it (¶204; ECF No. 68-6 ¶86).[6] Similarly, in *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 579 F. Supp. 3d 933, 954 (S.D. Tex. 2022), the plaintiffs alleged that the defendants received and reviewed the reports based solely on their positions with the company, and in *Yang v. Nobilis Health Corp.*, 2021 WL 3619863, at *2 (5th Cir. Aug. 13, 2021), the "most particularized allegation" of scienter was the defendants' proximity to the information, which "does not automatically translate to knowledge."

### 3. Burns and Barbier Ignored Significant Red Flags.

In addition, Burns and Barbier challenge the AC's reliance on other public information—

---

[6] Barbier also knew or recklessly disregarded the Audit Report because, as discussed *supra* Section II.A.1, he caused the Company to issue a swift response to the CUNY Report and any reasonable investigation into its allegations would have uncovered Cassava's audit of Dr. Wang's laboratory.

*i.e.*, the Citizen Petition, the FDA inspection report, the CUNY Report (¶¶201, 206)—to support their scienter. Br. at 12. However, the fact that the detailed accusations of research misconduct had been widely publicized for years when Defendants continued to deny or otherwise downplay the allegations of research misconduct and tout the Phase 2b Study "strong[ly]" supports their scienter because the significant "red flags in the media should have led them to investigate discrepancies between the media reports and their own knowledge," which would have revealed this evidence substantiating the accusations of research misconduct discussed above. *In re Arthrocare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 712, 718 (W.D. Tex. 2010).

Burns' and Barbier's attempts to undercut the public allegations (Br. at 12) fall flat, as this Court has already recognized that "courts have found it permissible for plaintiffs to rely on short-seller reports to allege falsity at the motion to dismiss stage" because "the reliability of short-seller reports—here, the Citizen Petitions—is a question of fact that the Court cannot resolve at this time." *Cassava Scis. I*, 2023 WL 3442087, at *8. Their authority, *Gambrill v. CS Disco, Inc.*, 2025 WL 388828, at *12 (W.D. Tex. Jan. 30, 2025), is distinguishable because the allegations were based on "a single news article," unlike the plethora of material here, which include an FDA report and CUNY's own investigation of Dr. Wang and his laboratory.

In sum, the AC adequately alleges Burns and Barbier knew, or were severely reckless in disregarding, information rendering their statements false or misleading.

### B.    The AC Alleges a Plausible Motive to Defraud.

As explained in the Opp. §II.C, this Court has already credited similar motive allegations to those alleged in the AC—that Defendants were motivated to mislead investors about the Phase 2b Study controversy and the Phase 2 Study results to make simufilam's prospects appear better so that they could raise additional capital through warrant distributions that would support the

continued development of simufilam, Cassava's sole therapeutic drug candidate on which its financial success and future vitality was entirely dependent (¶¶14, 116, 220-27)—as probative of scienter. *Cassava Scis. I*, 2023 WL 3442087, at \*10. Defendants' authority (Br. at 8-9) fails to support any departure from the Court's sound reasoning. *See Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017) (allegation that defendants were motivated by a "routine need to raise capital," *without more*); *Owens*, 789 F.3d at 539 (similar); *Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 859 (S.D. Tex. 2017) (motive to make the product look beneficial, *alone*, insufficient); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434-35 (5th Cir. 2002) (motive to raise capital, obtain enhanced incentive compensation, and sell stock at inflated prices, without allegations of suspicious stock sales and profiting from inflated stock); *Callinan v. Lexicon Pharms., Inc.*, 479 F. Supp. 3d 379, 428-37 (S.D. Tex. 2020) ("[S]cienter . . . may not be based *solely* on motives universal to all corporate executives . . . .").

Moreover, the "absence of a pecuniary motive is not dispositive." *Six Flags*, 58 F.4th at 218. The Court should disregard Burns' and Barbier's arguments regarding their purported stock transactions (Br. at 7-8) because they are unsupported and Burns and Barbier use the Form 4s to inject their own mischaracterization of the facts. As an initial matter, Burns and Barbier allege Burns did not sell any stock but fail to support that she ever even owned any. In addition, their argument that Barbier "repeatedly acquired" Cassava shares before the Class Period and never sold them is inaccurate. The Form 4s they rely on indicate that Barbier exercised stock options and disposed of stock twice before the Class Period, and was awarded stock options shortly before the Class Period began. *See* ECF No. 69-3 at 1-5. The sole transaction during the Class Period was another stock option award. *Id.* at 6.  Because the transactions were awards, not purchases, Burn's and Barbier's authority is inapposite and fails to undercut scienter. *See Izadjoo v. Helix Energy*

*Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 518 (S.D. Tex. 2017) (defendants "purchas[ed] large volumes of Helix stock during [the relevant] period"); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1328 (M.D. Fla. 2002) (defendant *purchased* stock shortly before the Class Period).

### C.    The Core Operations Theory Bolsters the Inference of Scienter.

As explained in the Opp. §II.D, the core operations theory contributes to Burns' and Barbier's scienter and this Court has already concluded as much based on similar allegations. *Cassava Scis. I*, 2023 WL 3442087, at *10. This Court has also already rejected their argument that simufilam was not critical to Cassava's continued vitality (Br. at 15), reasoning that "[s]imufilam is Cassava's primary drug candidate, and the Company has no other revenue." *Cassava Scis. I*, 2023 WL 3442087, at *10. Because those circumstances are unchanged (¶¶230-31),[7] there is no reason to rule otherwise here.

Burns and Barbier, nevertheless, attempt to undercut simufilam's critical importance by reframing the issue as whether simufilam *for the treatment of Alzheimer's* is critical for Cassava's continued vitality, and they argue it is not because Cassava continues to develop it for the treatment of epilepsy.[8] Br. at 15. However, the disease or condition being treated is inconsequential. Simufilam is still the Company's sole drug candidate, and Cassava's financial success is entirely dependent on the successful development of simufilam for commercial sale. ¶116. The fact that Cassava continued to try to develop and make simufilam profitable after it failed for one treatment supports how critical the drug's success was, and is, to the Company's continued vitality.

The absence of alleged internal inconsistent statements does not foreclose application of

---

[7] Defendants' authority (Br. at 15) is distinguishable on these grounds. *See Callinan*, 479 F. Supp. 3d at 435 ("Lexicon was not a single product company, and [the drug] was not the only Lexicon product capable of earning a profit.").
[8] Their claim of "promising results" in the epilepsy trials (Br. at 15) is both unsupported and irrelevant, and the Court should disregard it.

the core operations theory where, like here, the other factors support it. *See Cassava Scis. I*, 2023 WL 3442087, at *10-11 (core operations theory supported Burns' and Barbier's scienter even without internally inconsistent statements). Barbier's and Burns' authority (Br. at 16) does not support otherwise. *See Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 604 (N.D. Tex. 2021) (concluding none of the factors supported application of the core operations theory); *Callinan*, 479 F. Supp. 3d at 435 (circumstances supporting application of the core operations theory "*may* include," *inter alia*, "statements by the corporate officer that are internally inconsistent").

Burns' and Barbier's other authority (Br. at 10) is also distinguishable because here, the core operations theory is supplemental to the AC's substantial other scienter allegations. *See Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp. Inc.*, 537 F.3d 527, 535 (5th Cir. 2008) (alleging the defendants "must have known" because of their executive positions, a defendant's "hands-on management style," and the magnitude and extent of violations); *In re Repros Therapeutics, Inc. Sec. Litig.*, 2010 WL 11583428, at * 10 (S.D. Tex. Nov. 17, 2010) ("[T]he court cannot find that the individual Defendants acted with the requisite scienter merely because of their positions as Repros corporate officers.").

## III.    THE AC ADEQUATELY ALLEGES LOSS CAUSATION.

### A.    The AC Adequately Alleges Loss Causation Based on Corrective Disclosures.

As detailed in the Opp. §III, incorporated herein by reference, the AC adequately alleges that the truth about the alleged research misconduct and the government investigations related thereto, the tainted Phase 2b Study, and the reason for Barbier's and Burns' departures trickled out over time, causing Cassava's stock to decline and injuring investors.[9]

---

[9] Defendants' authority (Br. at 17) does not support otherwise. In *Stephens v. Uranium Energy Inc.*, 2016 WL 3855860, at *19-20 (S.D. Tex. July 15, 2025), the purportedly corrective information had already been revealed to the market, whereas here, Defendants continued to

Burns and Barbier challenge the corrective disclosures on three grounds. ***First***, they argue the disclosures was not corrective of their statements. However, the disclosure that the DOJ had indicted Dr. Wang on June 28, 2024 for allegedly "engag[ing] in a scheme to fabricate and falsify scientific data" in grant applications he submitted on behalf of Cassava partially corrected Defendants' earlier misstatements downplaying and denying the accusations regarding Dr. Wang and the related government investigations, and continuing to tout the tainted Phase 2b Study, for which Dr. Wang had conducted the final analysis. ¶¶137-38. The truth about the alleged research misconduct and related government investigations, as well as the reliability of the tainted Phase 2b Study, continued to trickle out thereafter. First, a July 1, 2024 disclosure revealed that Cassava and two undisclosed senior employees were under investigation by the SEC and DOJ and that a senior employee had emailed Dr. Wang sufficient information to unblind himself before conducting the Phase 2b Study final analysis. ¶¶140-41. Second, an August 8, 2024 disclosure revealed that (1) Cassava had been cooperating with the DOJ and SEC since August 2021 as they investigated the Company's development of simufilam, (2) Cassava was in advanced settlement discussions with the SEC, and (3) investors should not place undue reliance on the Phase 2b Study results because there was "substantial uncertainty about the validity of" Dr. Wang's final analysis during the Phase 2b Study. ¶¶149, 151. The full truth did not emerge until September 26, 2024, when the SEC complaint and settlement revealed that Burns and Barbier were the senior employees who had been under investigation, Burns was the senior employee who had emailed Dr. Wang sufficient information to unblind himself, and Burns and Barbier had agreed to officer and director bars and were thus *prohibited* from continuing in their prior roles. ¶¶154-55.

---

downplay the controversy, tout the Phase 2b Study results, and misrepresent why Burns and Barbier left Cassava as the truth slowly trickled out.

"Viewed collectively, these partial disclosures gradually informed the market of the relevant truth regarding Cassava's" tainted Phase 2b Study results and the investigations into the alleged research misconduct, and Barbier's and Burns' reasons for departing the Company, "and, thus, collectively constitute a corrective disclosure that adequately pleads loss causation." *Cassava Scis. I*, 2023 WL 3442087, at \*12.

**Second,** Burns and Barbier also suggest an indictment and announcement of government investigations cannot be corrective disclosures (Br. at 17-18), but that "would mean that loss causation could only be proven through a criminal conviction [and] that is not the law." *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 242 (E.D. Pa. 2021). *See also Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 324-25 (5th Cir. 2014) ("To require . . . a conclusive government finding of fraud merely to plead loss causation would effectively reward defendants who are able to successfully conceal their fraudulent activities by shielding them from civil suit."); *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1080 (M.D. Tenn. 2022) ("allegations of unproven misconduct" was a corrective disclosure); *Halman Aldubi Providen & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, 2022 WL 889158, at \*19 (E.D. Pa. Mar. 25, 2022) ("A complaint that reveals a publicly traded company may have engaged in some wrongdoing can constitute a corrective disclosure if the company previously made false statements regarding the purported wrongdoing."); *Hull v. Global Digit. Sols., Inc.*, 2017 WL 6493148, at \*15 (D.N.J Dec. 1, 2017) ("Plaintiff has adequately alleged loss causation based on the SEC complaint as a corrective disclosure.").[10]

Their authority (Br. at 17-18) does not support otherwise. In *Genessee Cnty. Emps.' Ret.*

---

[10] Thus, the fact that Burns and Barbier settled the SEC's claims without admitting liability and the DOJ investigation has not yet culminated in charges against Cassava, Barbier, or Burns, does not disqualify these disclosures, as Barbier and Burns suggest (Br. at 18).

*Sys. v. FirstCash Holdings Inc.*, 667 F. Supp. 3d 295, 330-31 (N.D. Tex. 2023), the complaint was the sole alleged corrective disclosure, whereas here there are other "verifiably true" corrective disclosures. *See Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 425 (E.D. Pa. 2019) (loss causation adequately pled based on announcement of investigation and subsequent corrective disclosures). *Budde v. Global Power Equip. Grp., Inc.* 2017 WL 6621540, at *4-5 (N.D. Tex. Dec. 27, 2017) is also distinguishable because the plaintiffs did not even rely on the announcement of a government investigation to support loss causation. Rather, the alleged corrective disclosure was a company press release with "vague statements" about an internal investigation, which was "not relevant to any prior misrepresentations." *Budde*, 2017 WL 6621540, at *1, *5.

Burns and Barbier, nevertheless, point to the CUNY Letter and the dismissal of the indictment, which they incorrectly suggest exonerates Dr. Wang, as support for why the indictment cannot be a corrective disclosure. Br. at 1, 17-18. However, as discussed in the accompanying motion to strike, the Court must disregard the CUNY Letter (ECF No. 69-2) because it is extraneous to the AC and Barbier and Burns use it to improperly offer a counter-narrative. Regardless, even if the Court were to consider it, their suggestion that the CUNY Letter and dismissal of the indictment exonerated Dr. Wang is incorrect. Neither the CUNY letter, nor the dismissal, cleared Dr. Wang of research misconduct.

Specifically, the CUNY Letter's final conclusions were explicitly based on the CUNY Report (ECF No. 69-2 at 2), and the CUNY Report found "evidence highly suggestive of deliberate scientific misconduct by Dr. Wang," but ultimately concluded that they "were unable to objectively assess the merit of the allegations due to the failure of Dr. Wang to provide underlying, original data or research records and the low quality of the published images that had to be examined in their place." ¶¶79, 123. The CUNY Letter acknowledges that "[t]he Committee may

15

have misunderstood the relevant evidentiary standard," as they "seemed to believe that definitive evidentiary proof of fabrication or falsification was required for a finding of research misconduct," and that "may have surpassed what is required by a preponderance of the evidence standard." ECF No. 69-2 at 4. In other words, applying the correct, lesser standard, the Committee might have concluded that Dr. Wang engaged in research misconduct. However, the CUNY Letter indicates that "while the Committee may have applied a heightened standard of evidence, . . . the University does not believe that it should disturb or reevaluate [the committee's] findings now." *Id.* at 2. It is within this context that the statement by the University—not the Committee who investigated Dr. Wang—that "research misconduct did not occur" must be read. *Id.* at 4. With these qualifications, the University's statement cannot be read as abridging the CUNY Report's findings and exonerating Dr. Wang. The Court's dismissal of Dr. Wang's indictment likewise cannot be read as exonerating him because the indictment was dismissed not on the merits, but rather after the government filed an unopposed motion to dismiss it. ECF No. 68-5.

***Third*,** Burns and Barbier argue the indictment's allegations and the government investigations and allegations were already well-known to the market through, *inter alia*, the Citizen Petition and CUNY Report. Br. at 18. However, a corrective disclosure need only reveal "*some* information not already known to the market." *Emps. Ret. Sys. of State of Haw. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 904 (5th Cir. 2018). As this Court recognized when it rejected a similar argument in the 2021 action (*i.e.*, that the CUNY Report "did not reveal any new information to the market" beyond what the Citizen Petition had already revealed), Burns and Barbier "take too narrow of a view as to what was revealed." *In re Cassava Scis. Inc. Sec. Litig.*, 2024 WL 4916373, at *4 (W.D. Tex. June 12, 2024) ("*Cassava Scis. II*"). Each of these disclosures was highly relevant to the present lawsuit and provided the additional details discussed above that

16

had not yet been revealed to the public.[11]  ¶¶137-38, 140-41, 151, 154-55. These disclosures also resulted in significant stock price declines. ¶¶139, 142, 152, 157. "If [these disclosures] only parroted the same old information it is hard to understand the sharp drop in the price of Cassava's stock following the . . . disclosure[s]." *Cassava Scis. II*, 2024 WL 4916373, at *4.

Burns and Barbier appear to suggest the revelation that Dr. Wang received information sufficient to unblind himself is inadequate because it did not reveal that Dr. Wang was actually unblinded before conducting the final analysis. Br. at 18. As discussed *supra* Section II.A.1, whether Dr. Wang was unblinded is inconsequential. The fact that he *could* have been unblinded before conducting the final analysis for the Phase 2b Study from Burns' email partially corrected Defendants' prior misstatements downplaying the accusations of research misconduct (including their denial of the CUNY Report's assertion that Burns bore some responsibility for it) and continuing to tout the unreliable Phase 2b Study results.

Burns and Barbier also suggest that the August 8, 2024 disclosure not to place undue reliance on the Phase 2b Study results (¶151) was not corrective because a May 2024 presentation warned not to place "undue reliance" on earlier clinical trials because they "may not be indicative of . . . later stage or large-scale clinical trials." Br. at 18-19. However, the general warning in the May 2024 presentation did not adequately notify investors why they should not place undue reliance on the Phase 2b Study results, *i.e.*, because, as disclosed on August 8, 2024, Dr. Wang had sufficient information to unblind himself and had been indicted, which "create[d] substantial uncertainty about the validity of the" Phase 2b Study results. ¶151.

**B.    The AC Adequately Alleges A Materialization of the Risk Theory of Loss Causation.**

---

[11] Thus, Defendants' authority (Br. at 18) is distinguishable. *See Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 462 n.4 (N.D Tex. 2018) (exact information previously disclosed).

While Burns and Barbier argue a materialization of the risk theory may not be viable (Br. at 19), Courts within this district have applied it. *See KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2015 WL 3794769, at *13-14 (W.D. Tex. June 16, 2015) (denying summary judgment where plaintiff raised a genuine issue of fact concerning loss causation based on materialization of the risk); *Aubrey v. Barlin*, 2010 WL 3909332, at *12 (W.D. Tex. Sep. 29, 2010) (allegations about concealed risks materializing sufficient to support loss causation).[12] To support a materialization of the risk theory, the AC must show that "the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor." *Aubrey*, 2010 WL 3909332, at *12. Rule 8's notice pleading standard applies. *Id.*

Here, the AC satisfies that standard. While Defendants touted the Phase 2 Study results, propping up Cassava's share price, unbeknownst to investors, they had distorted the Phase 2 Study results by analyzing only 53% of the ITT population, and, in violation of ICH E9 principles, not including patients who dropped out of the study before completion (subjecting the results to potential bias). ¶¶102, 106-09, 245-47. Contrary to Burns' and Barbier's characterization of the risk as a risk that the drug would fail (Br. at 19), the concealed risk was that that the Phase 2 Study results were not as remarkable and supportive of simufilam's potential as Defendants led investors to believe due to these limitations.[13] That risk materialized on November 25, 2025, when Cassava reported that simufilam failed to meet the co-primary endpoints in the RETHINK-ALZ Phase 3

---

[12] Barbier and Burns rely on *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666 (S.D. Tex. 2013) and *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877 (W.D. Tex. 2008), to support that the theory may not be viable based on two decisions, *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311 (5th Cir. 2008) and *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 227 (5th Cir. 2009) (Br. at 19), but neither of those decisions specifically addressed the theory, let alone found it not viable.
[13] Thus, warning that the Phase 3 trials might not be successful did not address the concealed risks at issue here, and Burns' and Barbier's authority, *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 865 (S.D. Tex. 2016), lends no support.

Study and the Company would be discontinuing the REFOCUS-ALZ Phase 3 Study, causing an 83.76% stock decline. ¶248. H.C. Wainwright downgraded Cassava and expressed surprise about the Phase 3 trials because the Phase 2 Study had supposedly "supported high potential for a positive result with simufilam treatment vs. placebo." ¶249. The risk continued to materialize on March 25, 2025, when the Company confirmed that the REFOCUS-ALZ Phase 3 Study had also failed, causing Cassava's stock to fall 32.14%. ¶250. Plaintiffs and the Class were damaged when the previously undisclosed risks materialized. ¶¶235, 237. These allegations are sufficient.

## IV.    BURNS AND BARBIER ARE LIABLE AS CONTROL PERSONS

Because, for the reasons discussed herein and in the Opp., "Plaintiffs have sufficiently alleged a Section 10(b) claim, the[ir] Section 20(a) claim likewise survives." *City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2016 WL 6075540, at *4 (W.D. Tex. Sep. 16, 2016). Only Burns challenges her status as a control person (Br. at 19-20), but her arguments do not bear scrutiny. "Whether a person is a controlling person is normally a question of fact that cannot be determined at the pleading stage." *In re agilon health, inc. Sec. Litig.*, 2025 WL 2388183, at *31 (W.D. Tex. Aug. 15, 2025) (Ezra, J.). "Courts in the Fifth Circuit apply a relaxed and lenient pleading standard for evaluating . . . control person liability." *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d. 573, 593 (W.D. Tex. 2022). *See also Kaltman v. Key Energy Servs., Inc.*, 447 F. Supp. 2d 648, 665 (W.D. Tex. 2006) (Rule 8 governs Section 20(a)). The AC need only allege "some facts beyond a defendant's position or title that show that the defendant had actual power or control over the controlled person." *SolarWinds*, 595 F. Supp. 3d at 593.

Here, the AC's allegations about Burns easily meet this standard. Burns was the Senior Vice President of Neuroscience and played a critical role in the development of simufilam, including as co-inventor and collaborator on multiple scientific journal articles and grant applications. ¶197. She was also the primary point of contact for Dr. Wang, the Cassava consultant

heavily involved in the development of simufilam and the Phase 2b Study. ¶¶197, 204. Burns also represented the Company and presented on simufilam. ¶¶134, 166. At all relevant times, she was married to Barbier, who ran the Company, and shared information with him. ¶¶194, 197. In addition, Burns was personally involved in the alleged research misconduct that is pertinent to several alleged misstatements. ¶¶123, 125, 127, 129-30, 132, 134-35, 197. These allegations are more than sufficient to support her control. *See Nykredit Portefølje Admin. A/S v. Propetro Holding Corp.*, 2021 WL 9037758, at \*30 (W.D. Tex. Sep. 13, 2021) (allegations that "Defendants, the most senior officers at ProPetro, made and signed false statements and had the power to control and did control the activities alleged to be fraudulent" were sufficient).

Defendants' authority (Br. at 20), which alleged control based solely on stock ownership and placement of three affiliated persons on the board, falls short of the allegations here. *See Zishka v. Am. Pad & Paper Co.*, 2001 WL 1748741, at \*1 (N.D. Tex. Sep. 28, 2001).

## CONCLUSION

For the foregoing reasons, and for the reasons discussed and incorporated herein by reference in the Opp., the Court should deny Barbier's and Burns' motion in its entirety.

Dated: December 22, 2025

Respectfully submitted,

*/s/ Murielle J. Steven Walsh*
Murielle J. Steven Walsh (*pro hac vice*)
(State of New York Juris No. 2837631)
**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
(State of New York Juris No. 4161352)
Emily C. Finestone (*pro hac vice*)
(State of New York Juris No. 5394820)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
mjsteven@pomlaw.com

efinestone@pomlaw.com

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein (*pro hac vice*)
(State of New York Juris No. 2155067)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

Michael J. Boyle (*pro hac vice*)
(State of Ohio Juris No. 0091162)
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 578-5582
Email:  mboyle@bgandg.com

*Counsel for Plaintiffs and
Co-Lead Counsel for the Class*

**THE BRISCOE LAW FIRM, PLLC**
Willie C. Briscoe (Tx. Bar Number
24001788)
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: (972) 521-6868
Facsimile: (281) 254-7789
Email: wbriscoe@thebriscoelawfirm.com

*Counsel for Plaintiffs and
Liaison Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice* application
forthcoming)
(State of New York Juris No. 4145397)
275 Madison Avenue, 40th Floor
New York, NY 10116
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

*Additional Counsel for Plaintiffs*

21

## <u>CERTIFICATE OF SERVICE</u>

I, Murielle J. Steven Walsh, hereby certify that on December 22, 2025, the foregoing was served upon each attorney of record through the Court's CM/ECF system.

*/s/ Murielle J. Steven Walsh*
Murielle J. Steven Walsh (*pro hac vice*)
