**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CARLOS PÉREZ-COTAPOS UGARTE, MARIA ISABEL URETA BAZÁN, CARLOS PÉREZ-COTAPOS SUBERCASEAUX, INVERSIONES ANE MIREN LIMITADA, SHERYL GROVE, and HOORIEH ALAGHEMAND, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, RICHARD JON BARRY, LINDSAY BURNS, JAMES W. KUPIEC, and ERIC SCHOEN,<br><br>    Defendants. | Case No.: 1:24-CV-1525-DAE |

**REPLY IN SUPPORT OF DEFENDANTS REMI BARBIER'S AND LINDSAY BURNS'S**
<u>**MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

           BAKER & HOSTETLER LLP
           45 Rockefeller Plaza
           New York, New York 10111
           Tel. 212-589-4200
           Fax. 212-589-4201

           *Attorneys for Defendants Remi Barbier and Lindsay Burns*

**TABLE OF CONTENTS**

**Page**

I.      Plaintiffs Fail to Plead Any False or Misleading Statement ................................................1

II.     Plaintiffs Also Fail to Plead a Strong Inference of Scienter ................................................5

          A.      The AC Fails to Plead Any Motive ..........................................................................5

          B.      The AC Fails to Plead Severe Recklessness as to Barbier or Burns ........................6

III.    Plaintiffs Fail to Plead Loss Causation as to Barbier's or Burns's Statements ...................9

IV.     Plaintiffs' Section 20(a) Claims Fail ...................................................................................10

CONCLUSION ..................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) ...................................................................................................5

*In re Amarin Corp. PLC Sec. Litig.*,
2022 WL 2128560 (3d Cir. June 14, 2022) .......................................................................3

*In re Arthrocare Corp. Sec. Litig.*,
726 F.Supp.2d 696 (W.D. Tex. 2010)................................................................................8

*In re BP p.l.c. Sec. Litig.*,
2014 WL 4923749 (S.D. Tex. Sept. 30, 2014) ................................................................10

*Carlton v. Cannon*,
184 F.Supp.3d 428 (S.D. Tex. 2016) ..............................................................................8, 9

*In re Cassava Scis. Inc. Sec. Litig.*,
2024 WL 4916373 (W.D. Tex. June 12, 2024) ..................................................................9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
632 F.3d 751 (1st Cir. 2011)..............................................................................................5

*Fernau v. Enchante Beauty Prods., Inc.*,
2020 WL 2569300 (S.D. Fla. May 21, 2020) ....................................................................7

*In re Franklin Bank Corp. Sec. Litig.*,
782 F.Supp.2d 364 (S.D. Tex. 2011) .................................................................................6

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) .............................................................................................7

*Heinze v. Tesco Corp.*,
971 F.3d 475 (5th Cir. 2020) .............................................................................................2

*In re Karyopharm Therapeutics Inc., Sec. Litig.*,
552 F.Supp.3d 77 (D. Mass. 2021) ....................................................................................3

*In re Key Energy Servs., Inc. Sec. Litig.*,
166 F.Supp.3d 822 (S.D. Tex. 2016) .................................................................................7

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013)...............................................................................................4

*Long Miao v. Fanhua, Inc.*,
442 F.Supp.3d 774 (S.D.N.Y. 2020)............................................................................8

*Mehedi v. View, Inc.*,
2024 WL 3236706 (N.D. Cal. June 28, 2024) ...........................................................7

*Nathenson v. Zonagen Inc.*,
267 F.3d 400 (5th Cir. 2001) .....................................................................................9

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)....................................................................................................2

*Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys,
Inc.*,
769 F.3d 313 (5th Cir. 2014) .....................................................................................9

*Pugh v. Trib. Co.*,
521 F.3d 686 (7th Cir. 2008) .....................................................................................5

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) .....................................................................................9

*Schiller v. Physicians Res. Grp., Inc.*,
2002 WL 318441 (N.D. Tex. Feb. 26, 2002), *aff'd*, 342 F.3d 563 (5th Cir.
2003) ...........................................................................................................................6

*Takata v. Riot Blockchain, Inc.*,
2023 WL 7133219 (D.N.J. Aug. 25, 2023) ...............................................................6

**Statutes**

Private Securities Litigation Reform Act.............................................................................1, 6, 7

Plaintiffs' Oppositions (ECF 73-74) only further demonstrate the weakness of their allegations against Barbier and Burns. Plaintiffs concede that Barbier's statements describing the leaked CUNY draft report and the status of various investigations were literally true, and fail to point to any contemporaneous facts that rendered those (or any other) challenged statements false or misleading. Similarly, Plaintiffs offer only vague, generalized allegations of scienter, devoid of the particularized facts they must plead under the Reform Act. Nor can they show how any of the alleged corrective disclosures—which concerned different subjects or subsequent events, or repeated already-public accusations—"corrected" any challenged statement or caused Plaintiffs' losses. And these deficiencies make sense: Barbier and Burns did not lie, and Plaintiffs' allegations are largely recycled from a securities suit brought over four years ago and juxtaposed onto later statements to extend the class period. Indeed, subsequent developments undermine any theory of fraud—DOJ has now voluntarily dismissed its charges against Wang, and CUNY's final report concluded that "research misconduct did not occur." MTD 1. For the reasons discussed in the MTD and here (and Cassava's motion to dismiss and reply, incorporated here), Plaintiffs' claims against Barbier and Burns must be dismissed with prejudice.

## ARGUMENT

### I.    Plaintiffs Fail to Plead Any False or Misleading Statement.

Plaintiffs concede that Barbier and Burns may only be liable as to statements they made, which include: (1) Barbier's statements about government, internal, and third-party investigations, and what they found or conveyed to Defendants at the time, and (2) Barbier's and Burns's statements interpreting clinical data and conveying results from the Phase 2b and Phase 2 open-label studies. Opp. 2; MTD 3. None of these statements was false or misleading.

***Statements About the CUNY Draft Report and Investigations***. Plaintiffs do not dispute that Barbier's statements about the leaked CUNY draft report and the government and Orrick

1

investigations, were literally true. Opp. 5. Instead, they argue the statements were "misleading" because they would have led a reasonable investor to conclude there was "no evidence of research misconduct," while Barbier "knew, or recklessly disregarded" that (1) the Audit Report had found Wang's lab "lack[ed] standard operating procedures, proper good documentation practices, and laboratory practices" and was "temporarily not qualified" for future Cassava work; and (2) Burns purportedly emailed Wang "sufficient information to unblind himself and removed a large portion of patients in reported cognition data" after she was unblinded. ECF 73-1, at 6-7.

Neither of these allegedly omitted contemporaneous "facts" contradicted Barbier's statements. MTD 3-6. The Audit Report did not find evidence of "research misconduct" by Wang, Burns, or any other Cassava employee; it merely identified recordkeeping issues in Wang's lab that needed to be addressed before it could qualify for future Cassava work. *Id*. This was consistent with Barbier's descriptions of the leaked CUNY draft report and the ongoing investigations. Moreover, as Plaintiffs concede, "context is instrumental in determining whether a statement is misleading." ECF 73-1, at 8; *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186-191, 194 (2015) (statement only misleading if it would have misled "reasonable investor" reading it "fairly and in context"); *Heinze v. Tesco Corp.*, 971 F.3d 475, 482 (5th Cir. 2020) (similar). The leaked CUNY draft report, which included similar observations regarding Wang's recordkeeping, was already public at the time of the challenged statements, and "omission" of publicly known facts cannot render a statement misleading. ECF 73-1, at 6 (Audit Report "made similar findings"). And while Plaintiffs allege that the CUNY draft report found "Burns bore some responsibility for some of the alleged misconduct," they offer no specifics as to what that means and the final CUNY report determined that "research misconduct did not occur." ECF 69-2, at 2. In sum, Plaintiffs fail to show how the Audit Report rendered any challenged

2

statement misleading to a reasonable investor viewing it fairly in context.

The same is true of Burns's May 2020 email, which Plaintiffs claim could potentially have unblinded Wang as to a subset of patients in the Phase 2b Study. No facts suggest Wang was in fact unblinded, that anyone at Cassava knew or believed Wang was unblinded (indeed, that email was not even discovered until summer 2024), or that the Phase 2b results were manipulated or incorrect. MTD 5. Nor do Plaintiffs allege any facts supporting the bare assertion that Orrick must have either viewed the email (and Burns's exclusion of certain patients from cognition results) as indicative of misconduct or that Orrick was "actively misled." ECF 73-1, at 8-9. Absent specific facts showing that the email and/or exclusions amounted to "research misconduct," the email and exclusions themselves do not undercut the truth of any of Barbier's statements, including that Orrick had found "no evidence to substantiate allegations that the Company or its employees engaged in or were aware of research misconduct." ¶¶129-130.

*Statements About Clinical Results*. Plaintiffs argue that Barbier's and Burns's statements interpreting data from the Phase 2b and Phase 2 open-label studies are not statements of opinion because they are "objectively verifiable facts." Opp. 2. But Plaintiffs cite no support for this proposition, and the overwhelming weight of authority establishes that statements reporting and interpreting clinical data are opinions under the securities laws. MTD 5; *In re Amarin Corp. PLC Sec. Litig.*, 2022 WL 2128560, at *3 (3d Cir. June 14, 2022) (data in clinical trial topline results were opinions); *In re Karyopharm Therapeutics Inc., Sec. Litig.*, 552 F.Supp.3d 77, 89 (D. Mass. 2021) ("[C]ourts have repeatedly held publicly stated interpretations of the results of various clinical studies to be opinions because reasonable persons may disagree over how to analyze data and interpret results and neither lends itself to objective conclusions."). Accordingly, under *Omnicare*, statements interpreting data are only false if the speaker did not believe them, and only

3

misleading if some contemporaneous omitted fact rendered them misleading in context.

Neither condition is satisfied here. Plaintiffs fail to plead any facts showing that Barbier or Burns did not believe the clinical results they reported, nor do Plaintiffs identify any omitted facts that rendered those statements misleading in context. MTD 5-6. Instead, Plaintiffs simply speculate that Burns could not have believed (1) the Phase 2b results, because she must have known that Wang was unblinded and manipulated the results; or (2) the Phase 2 cognition results, because she personally excluded certain patients from the reported analysis set after unblinding. Opp. 7; ¶197. No facts support either assertion. The allegation that Burns sent an email years earlier that *could* have unblinded Wang cannot establish *how* it could have unblinded him, that it did in fact unblind him, that Wang manipulated the Phase 2b results, that Burns (or Barbier) knew of any unblinding or manipulation when they reported those results, or that they disbelieved the results. MTD 5-6, 10-11. And Plaintiffs' mere disagreement with Burns's scientific decision to exclude from the open-label study cognition patients who dropped out or failed to complete cognition assessment[1] cannot ground their claims, particularly since Cassava disclosed the structure and methodology of the study, the number of patients included in the cognition results, and the fact that the open-label analysis set might differ from past studies. *See id.*; *Kleinman v. Elan Corp.*, 706 F.3d 145, 154 (2d Cir. 2013) ("[Plaintiff] may take issue with Defendants' [] scientists, but where a defendant's competing analysis or interpretation of data is itself reasonable, there is no false statement."). This is not, as Plaintiffs argue, a "truth-on-the-market" defense; it is a fundamental facet of falsity analysis under *Omnicare*: the falsity of a statement can only be evaluated in light of all the pertinent information publicly available at the time. *Supra* at 2; MTD 3-4.

Finally, "whether the Audit Report undermined the Phase 2b Study results" is *not* a

---

[1] It was not even possible to include such patients; they lacked the cognition data being reported.

question of fact "not properly considered on a motion to dismiss." Opp. 3. Plaintiffs are required to plead particularized facts demonstrating falsity under the Reform Act's heightened pleading standards, yet the AC fails to allege how the Audit Report is inconsistent with the Phase 2b Results or rendered them misleading in context. MTD 5-6. This is insufficient as a matter of law.

## II.     Plaintiffs Also Fail to Plead a Strong Inference of Scienter.

Plaintiffs concede that the vast majority of the AC's scienter allegations constitute improper group pleading. Opp. 4; MTD 6. Plaintiffs point to just seven allegations concerning Barbier and/or Burns that they claim are particularized—purportedly allowing the Court to "separate the wheat from the chaff." Opp. 4; ¶¶194, 197, 200, 204, 216, 217, 222. Plaintiffs' sparse, unsupported, and generic allegations fail to establish a strong inference of scienter.

### A.     The AC Fails to Plead Any Motive.

Plaintiffs concede that the motivation to "raise capital" or "make [a] product look beneficial" cannot, on its own, support an inference of scienter. Opp. 10. Nonetheless, they argue that it must be considered here because the Court stated in *Cassava I* that the desire to raise capital for the future development of simufilam "*can* be probative of scienter." ECF 73-1, at 21. But the Court's previous consideration of that alleged motive was based primarily on the temporal proximity of different challenged statements to Cassava's 2021 adoption of a cash bonus plan— facts not at play here. Indeed, the lack of any specific motive allegations, coupled with the fact that Barbier and Burns did not sell any stock (and Barbier acquired more)[2] during the class period, undermines any notion that they had motive to defraud. MTD 7. Accordingly, the AC's sole,

---

[2] Plaintiffs do not allege any financial motive for Burns (Opp. 10), and the fact that Barbier "could have sold [stock] through the exercise of options," but did not, negates an inference of scienter. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 760 (1st Cir. 2011); *Pugh v. Trib. Co.*, 521 F.3d 686 (7th Cir. 2008) (similar); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47 (2d Cir. 1995) (including options in stock analysis).

generic motive allegation "do[es] nothing" to establish a strong inference of scienter here. *In re Franklin Bank Corp. Sec. Litig.*, 782 F.Supp.2d 364, 377 (S.D. Tex. 2011).

**B.    The AC Fails to Plead Severe Recklessness as to Barbier or Burns**.

Nor is there any strong circumstantial evidence of scienter. MTD 9 (absent motive, "the strength of" circumstantial evidence "must be correspondingly greater"). Plaintiffs concede that scienter cannot be pleaded based on Barbier's and Burns's "positions" at Cassava (Opp. 8), and they fail to plead any particularized facts that might satisfy the Reform Act's strict standard.

***The SEC Allegations Cannot Establish a Strong Inference of Scienter***. Plaintiffs argue that the Court should credit their copy-and-paste allegations from the SEC complaint because they were derived from the SEC's "review of Cassava's internal documents, and courts routinely consider such allegations relevant." Opp. 5. But Plaintiffs' argument misses the point. The question is whether the AC—relying on the SEC's untested *negligence* allegations—has adequately pleaded a strong inference of scienter under the heightened pleading standards of the Reform Act. MTD 10-11; *Takata v. Riot Blockchain, Inc.*, 2023 WL 7133219, \*7 n.9 (D.N.J. Aug. 25, 2023) ("[T]he utility of allegations found in SEC or other government pleadings . . . is considerably diminished . . . in light of the heightened pleading standards of the [Reform Act].").

It has not: Plaintiffs' SEC-derived allegations cannot plead a strong inference that Barbier or Burns acted with intent to defraud investors, or with a recklessness so severe it "approximate[d] actual intent." *Schiller v. Physicians Res. Grp., Inc.*, 2002 WL 318441, \*10 (N.D. Tex. Feb. 26, 2002), *aff'd*, 342 F.3d 563 (5th Cir. 2003); Opp. 5-8. Merely alleging that Barbier and Burns were "generally aware" of the Audit Report, without alleging if or when it was presented to or reviewed by them, cannot establish scienter. MTD 11-14. The conclusory allegation that Burns's May 2020 email could have *somehow* (and therefore must have) unblinded Wang, and that Burns *must have known* that at the time, is mere speculation, unsupported by any particularized facts. *Id.* Nor do

6

Plaintiffs offer any support for their bare assertion that excluding patients who failed to finish the trial or complete certain assessments from cognition analysis was improper, or show how that exclusion demonstrates Burns (much less Barbier)[3] made any statement with culpable knowledge or intent. *Id.* As for Plaintiffs' conjecture that the SEC may (or may not) have found evidence of fraud but made a "strategic decision" to only assert negligence charges, that is pure speculation entitled to no weight. Opp. 6. These generalized allegations—based largely on the SEC's untested *negligence* allegations—are insufficient to plead a strong inference of scienter. *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) (DOJ and SEC allegations "not sufficient to meet the pleading requirements of the [Reform Act]"); *Mehedi v. View, Inc.*, 2024 WL 3236706, *11 (N.D. Cal. June 28, 2024) ("[The] allegations from the SEC Complaint, although sufficient . . . to allege negligence, are not sufficient . . . to allege a strong inference of scienter[.]"); *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F.Supp.3d 822, 863 (S.D. Tex. 2016) (similar); Opp. 5.[4]

*The Audit Report Does Not Establish Scienter.* Even assuming Barbier and Burns were "generally aware" of the Audit Report when they made their challenged statements, the Report does not support scienter. The Audit Report did not concern the Phase 2b Results, nor did it make any findings that would establish Barbier's or Burns's culpable knowledge or intent. MTD 11. All Plaintiffs point to is the fact that "Phase 2b" is mentioned on the cover page of the 23-page Report, and the SEC alleged that the audit "related to [Wang's] work on the Phase 2b trial" and involved "review" of "documents related to the Phase 2b trial." Opp. 8; ECF 73-1, at 17 n.15. However, neither the Audit Report nor the AC contains any findings or allegations that the Phase 2b *results*— reported more than *two years* earlier (September 2020)—were false or misleading.

---

[3] Any knowledge Burns had cannot be imputed to Barbier by virtue of their marriage. MTD 14; *Fernau v. Enchante Beauty Prods., Inc.*, 2020 WL 2569300, *3 (S.D. Fla. May 21, 2020).
[4] None of Plaintiffs' cases holds that DOJ/SEC complaints necessarily satisfy the Reform Act.

***None of the Alleged "Red Flags" Establish Scienter***. None of the other public allegations or the Company's responses to them (Opp. 9), establish a strong inference of scienter, particularly when weighed against stronger and more compelling inferences of good faith. Barbier and Burns had strong, good-faith reasons not to credit the Citizen's Petition: it was authored by anonymous short-sellers with a direct financial interest in broadcasting negative information to profit from a drop in Cassava's stock price.[5] Likewise, Barbier and Burns had good reason to question the initial findings in the CUNY draft report (which, in any case, did not concern the Phase 2b results), given that CUNY stated it was illegally leaked before the investigation concluded and CUNY had not involved Cassava. And Barbier and Burns had no reason to question the reliability of the Phase 2b results or assume research misconduct had occurred merely because the FDA identified document-retention issues at Wang's lab. In short, Barbier and Burns were under no obligation to simply accept these public accusations or view them in the most sinister light. Rather, Defendants did exactly what any responsible corporate steward would do—retained outside counsel (Orrick) to investigate the allegations. *Contra* Opp. 9 (citing *In re Arthrocare Corp. Sec. Litig.*, 726 F.Supp.2d 696 (W.D. Tex. 2010) (scienter where company *did not* "investigate")). All this is evidence of Barbier's and Burns's good faith.

***The AC Fails to Plead Scienter Based on the Core Operations Exception***. "The Fifth Circuit [has] been reluctant to apply the limited [core operations] exception" (*Carlton v. Cannon*, 184 F.Supp.3d 428, 478 (S.D. Tex. 2016)), and that reticence is especially appropriate here, where Plaintiffs fail to satisfy three of the four core operations factors (MTD 15-16). First, while simufilam is at the core of Cassava's business, Cassava has long been investigating simufilam as

---

[5] *See, e.g., Long Miao v. Fanhua, Inc.*, 442 F.Supp.3d 774, 801 (S.D.N.Y. 2020) (short sellers "have an obvious motive to exaggerate the infirmities of the securities in which they speculate").

a potential treatment for multiple diseases: even after the Alzheimer's studies were discontinued, it continued to develop simufilam as a potential epilepsy treatment, and Cassava remains viable to this day. *Id*. These subsequent developments justify a departure from *Cassava I*, because Cassava is not "a one product company" in the usual sense—simufilam has numerous potential medical applications, which Cassava has continued to pursue. *Cf. Nathenson v. Zonagen Inc.*, 267 F.3d 400, 425 (5th Cir. 2001). Second, Plaintiffs fail to plead any "omitted information readily apparent to the speaker." MTD 15; *supra* at 2-4. And, Plaintiffs concede that there were no internally inconsistent statements. Opp. 11. Regardless, core operations allegations alone cannot establish a strong inference of scienter where, as here, none of Plaintiffs' other allegations is sufficient to raise a strong inference of scienter. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003) ("failure of [company's] core business" raised only "weak" inference of scienter); *Cannon*, 184 F.Supp.3d at 478 n.7 ("without some additional facts such as exposure to content-identified internal corporate documents," core operations is "inadequate to plead scienter").

### III.    Plaintiffs Fail to Plead Loss Causation as to Barbier's or Burns's Statements.

Plaintiffs also fail to plead loss causation, because none of the alleged corrective disclosures revealed any "pertinent truth" previously concealed by Barbier's or Burns's statements. *In re Cassava Scis. Inc. Sec. Litig.*, 2024 WL 4916373, *3 (W.D. Tex. June 12, 2024) ("pertinent truth" must reveal "falsity" and "be new; otherwise, nothing has been revealed").

The Wang indictment said nothing about the Phase 2b or open-label results, or what any earlier internal or government investigations had found or conveyed to Cassava at any time. MTD 17-18. The indictment's allegations also were not "new": they had been publicly leveled against Wang for years. Opp. 13, 16; *Cassava*, 2024 WL 4916373, *3; *contra* Opp. 14 (citing *Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313 (5th Cir. 2014) (loss causation where the market was "unaware of [the] alleged fraud"). In any event, the

indictment was ultimately dismissed, undermining any suggestion that it revealed fraud. MTD 17. Nor did the July 1, August 8, or September 26, 2024 disclosures reveal any truth previously concealed by Barbier's or Burns's statements. They simply repeated that the Company was under SEC and DOJ investigation—a fact first disclosed more than two years earlier. *Id.* 18-19. The July 1 announcement that Cassava had discovered that a May 2020 email "could have" unblinded Wang, and the August 8 disclosure that investors should not "place undue reliance" on the Phase 2b results, were too speculative to correct any earlier statement. And Plaintiffs cannot tie disclosures about the *Phase 3* Study to statements reporting the *Phase 2b* and *Phase 2 open-label* results. The Phase 3 Study tested different patients under a different protocol, and those test results could not reveal (or constitute materialization of) any risk previously concealed by statements about earlier clinical results.[6] *Id.* In any event, the materialization of the risk theory is likely not viable in the Fifth Circuit. *Id.*

## IV.    Plaintiffs' Section 20(a) Claims Fail.

Plaintiffs' failure to plead a primary §10(b) violation requires dismissal of any §20(a) claim as to Barbier and Burns. *Id.* 19. Further, Burns's marriage and responsibilities as a Cassava employee, are insufficient to plead she was a "control person." Opp. 19-20; *In re BP p.l.c. Sec. Litig.*, 2014 WL 4923749, *6 (S.D. Tex. Sept. 30, 2014) ("[T]he question is whether [defendant] possessed or exercised control over the persons or entities who made actionable misstatements, not whether the substance of the alleged falsehoods originated with him").

### CONCLUSION

For the reasons discussed herein, in the MTD, and in Cassava's Motion to Dismiss and Reply, the Court should dismiss all claims against Barbier and Burns with prejudice.

---

[6] And while the Phase 3 Study did not meet its primary endpoints, the results reflected significant slowing of cognitive declines in a significant number of patients over different time intervals.

Dated: January 21, 2026        BAKER & HOSTETLER LLP

C. SHAWN CLEVELAND (TX. Bar No. 24012433)
2850 North Harwood Street
Suite 1100
Dallas, TX  75201
Telephone:  214/210-1200
214/210-1200 (fax)
scleveland@bakerlaw.com

DOUGLAS W. GREENE (admitted *pro hac vice*)
ZACHARY R. TAYLOR (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, NY  75201
Telephone: 212/847-7090
dgreene@bakerlaw.com
ztaylor@bakerlaw.com

*Counsel for Defendants Remi Barbier and Lindsay Burns*

11

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on January 21, 2026, a true and correct copy of the foregoing was served upon each attorney of record via the Court's CM/ECF system, which will send notice of the filing to all registered users. Parties may access the filing through the Court's CM/ECF system.

Dated: January 21, 2026

*/s/ Zachary R. Taylor*