**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CARLOS PÉREZ-COTAPOS UGARTE, MARIA ISABEL URETA BAZÁN, CARLOS PÉREZ-COTAPOS SUBERCASEAUX, INVERSIONES ANE MIREN LIMITADA, SHERYL GROVE, and HOORIEH ALAGHEMAND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> CASSAVA SCIENCES, INC., REMI BARBIER, RICHARD JON BARRY, LINDSAY BURNS, JAMES W. KUPIEC, and ERIC SCHOEN, <br><br> Defendants. | Case No.: 1:24-CV-1525-DAE |

**DEFENDANTS REMI BARBIER'S AND LINDSAY BURNS' OPPOSITION TO**
**PLAINTIFFS' MOTION TO STRIKE EXHIBITS**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants Remi Barbier and Lindsay Burns*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD..........................................................................................................3

ARGUMENT.......................................................................................................................4

I.      The Court Should Consider the Audit Report Because It is Incorporated by Reference into the AC...................................................................................................4

II.     The Dismissal Order is Judicially Noticeable and Provides Necessary Context for Plaintiffs' Claims. .......................................................................................................6

III.    The Final CUNY Report is Judicially Noticeable and Provides Necessary Context for Plaintiffs' Claims. ...............................................................................................8

IV.    Barbier's Forms 4 Filed with the SEC are Judicially Noticeable and Provide Necessary Context for the AC's Scienter Allegations. ......................................................10

CONCLUSION....................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Asar*,
768 F.App'x 175 (5th Cir. 2019) ..................................................................................11

*Associated Builders, Inc. v. Ala. Power Co.*,
505 F.2d 97 (5th Cir. 1974) ............................................................................................6

*In re Concho Res. Inc., Sec. Litig.*,
2023 WL 4146278 (S.D. Tex. June 23, 2023) ...............................................................3

*Denney v. Amphenol Corp.*,
2024 WL 3293590 (S.D. Ind. July 3, 2024)...................................................................9

*Edwards v. Cofield*,
2025 WL 511065 (M.D. Ala. Feb. 14, 2025) .................................................................8

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*,
2003 WL 23316646 (S.D. Tex. Mar. 27, 2003)...........................................................3, 4

*Genesee County Employees' Retirement System v. FirstCash Holdings Inc.*,
667 F.Supp.3d 295 (N.D. Tex. 2023) ............................................................................7

*Gresham v. Wells Fargo Bank, N.A.*,
642 F.App'x 355 (5th Cir. 2016) ...................................................................................6

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
237 F.Supp.3d 492 (S.D. Tex. 2017) ......................................................................10, 11

*United States ex rel. Jamison v. Career Opportunities, Inc.*,
2020 WL 520590 (N.D. Tex. Jan. 31, 2020) .................................................................6

*In re Katrina Canal Breaches Consol. Litig.*,
533 F.Supp.2d 615 (E.D. La. 2008).............................................................................4

*Kinnie Ma Individual Ret. Acct. v. Ascendant Cap., LLC*,
2023 WL 5417142 (W.D. Tex. Aug. 21, 2023).............................................................6

*Loyola v. Am. Homes for Rent Prop. II, LLC*,
2015 WL 11348310 (W.D. Tex. Aug. 12, 2015)..........................................................10

*Martinez v. Greater New Orleans Expressway Comm'n*,
2021 WL 1023054 (E.D. La. Mar. 17, 2021) ...............................................................5

*Martinez v. Wilmington Tr. Co.*,
   2013 WL 6818251 (W.D. Tex. July 23, 2013) ................................................................10

*Nazimuddin v. Wells Fargo Bank, N.A.*,
   2025 WL 33471 (5th Cir. Jan. 6, 2025) ........................................................................3, 4

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) ...........................................................................................6

*Omnicare Inc. v. Laborers District Council Construction Industry Pension Fund*,
   575 U.S. 175 (2015)........................................................................................................2, 3

*Pinder v. Skero*,
   2017 WL 11612501 (S.D. Tex. Sept. 6, 2017) .................................................................8

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
   307 F. Supp. 3d 583 (S.D. Tex. 2018) .........................................................................2, 3

*Saucedo v. Deutsche Bank Nat. Tr. Co.*,
   No. SA-12-CV-00868-DAE, 2013 WL 656240 (W.D. Tex. Feb. 20, 2013)...................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................... *passim*

*Thornton v. Micrografx, Inc.*,
   878 F.Supp.931 (N.D. Tex. 1995) ..................................................................................10

*U.S. v. Wang*,
   No. 8:24-cr-00211 (D. Md., Oct. 14, 2025), ECF 118-2 .................................................9

*Veal v. LendingClub Corp.*,
   2021 WL 4281301 (9th Cir. Sept. 21, 2021) ..................................................................11

*Viramontes v. Pfizer, Inc.*,
   2015 WL 9319497 (E.D. Cal. Dec. 23, 2015) ..................................................................9

*In re Wald*,
   2012 WL 2564367 (Bankr. W.D. Tex. July 2, 2012) .......................................................7

*Watson v. Aurora Loan Servs. LLC*,
   2012 WL 3594233 (N.D. Tex. Aug. 21, 2012)..................................................................8

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) .........................................................................................11

*Whiting v. Bank of Am., N.A.*,
   2014 WL 5018020 (S.D. Tex. Oct. 6, 2014).....................................................................6

iii

**Statutes**

Private Securities Litigation Reform Act of 1995 .............................................................1

Securities Exchange Act of 1934 .....................................................................................1, 2

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................3, 4

Federal Rule of Evidence 201(b) ...............................................................................4, 8, 10

**INTRODUCTION**

Plaintiffs want the Court to consider their claims in a vacuum, devoid of necessary and relevant context the Court must consider in adjudicating the Amended Complaint ("AC"). Yet, Plaintiffs' Motion to Strike (ECF 75; "Mot.") concedes, as it must, that on a motion to dismiss, the Court may consider both (1) "documents that are referred to in the complaint and are central to the plaintiff's claims," and (2) "matters of public record . . . . that are relevant to the claim[s]." Mot. at 3. Here, each of the four exhibits Plaintiffs seek to strike from the record falls into one or both categories and may appropriately be considered on a motion to dismiss.

Moreover, consideration of these documents is particularly important—and required, under Supreme Court and Fifth Circuit precedent—in securities class actions. Congress enacted the Private Securities Litigation Reform Act of 1995 ("Reform Act") "[a]s a check against abusive [securities] litigation" because it was concerned by "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 320 (2007) (quotation marks and citations omitted). To prevent meritless securities class actions, the Reform Act amended the Securities Exchange Act of 1934 ("Exchange Act") to impose heightened requirements for pleading that a challenged statement was false or misleading, and that it was made with intent to defraud (scienter). *Id.* at 320-21; 15 U.S.C. § 78u-4(b)(1)-(2). Congress specifically directed that the district court "shall . . . dismiss the complaint" on a motion to dismiss if it does not meet the Reform Act's heightened pleading standards. 15 U.S.C. § 78u-4(b)(3)(A).

Consistent with this intent, two important Supreme Court cases have construed the relevant federal securities statutes—the Securities Act (and by extension, the Exchange Act), and the Reform Act—as requiring courts to consider the *full factual context* in evaluating allegations of falsity and scienter. In *Tellabs*, the Supreme Court considered what it means for a plaintiff to plead

1

a "strong inference" of scienter and concluded that this inquiry is "inherently comparative" and requires courts to consider not only the complaint but also documents incorporated by reference and matters of which courts may take judicial notice. 551 U.S. at 323-24. The Court also held that this analysis requires courts to "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff"—a significant departure from the usual rule that courts draw all reasonable inferences in favor of the plaintiff at the pleading stage. *Id.* at 324.

In *Omnicare Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015), the Court reached a similar conclusion with respect to the element of falsity, holding that courts must consider not only the full statement being challenged and context in which it was made, but also other statements made by the company and publicly available information, including the customs and practices of the industry. *Id.* at 190 (whether statement is false or misleading "always depends on context" and requires consideration of "all its surrounding text, including hedges, disclaimers, and apparently conflicting information" as well as "the customs and practices of the relevant industry"); *see also In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 615, 616 n.6, 633-35 (S.D. Tex. 2018) (explaining that *Omnicare* applies to Exchange Act claims, and considering challenged statements in context of industry and investor understanding).

Together, these Supreme Court decisions, and the federal securities statutes on which they rest, compel courts to consider the full range of publicly available, judicially noticeable, and incorporated documents and information as context when evaluating the sufficiency of securities claims.

Plaintiffs' Motion to Strike fails to address any of this binding precedent. Instead, Plaintiffs merely attack Defendants' submission of these documents as an "improper attempt to introduce

their own set of factual allegations and competing theories against the [AC] at the pleadings stage" and "inject their own counter-narrative of the facts." Mot. at 2. Not so. Defendants are simply asking the Court to objectively contextualize Plaintiffs' falsity allegations and evaluate their scienter allegations in light of the competing inferences to be drawn from materials incorporated by reference and/or subject to judicial notice. Plaintiffs are not entitled to have their falsity and scienter allegations evaluated in a vacuum, nor are they entitled to have all inferences concerning scienter drawn in their favor. *See, e.g., In re Concho Res. Inc., Sec. Litig.*, 2023 WL 4146278, at *2 (S.D. Tex. June 23, 2023) ("The Supreme Court has counseled lower courts that [scienter] decisions should not be made in a vacuum. A court must consider plausible non-culpable explanations as well as inferences favoring the plaintiff.") (citing *Tellabs*, 551 U.S. at 323-34); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F.Supp.3d at 635 (statements alleged to be misleading "in a vacuum" may not be misleading when "considered . . . in a broader frame") (citing *Omnicare*, 575 U.S. at 190).

Accordingly, in evaluating Barbier's and Burns's Motion to Dismiss (ECF 69; "MTD"), it is both appropriate and necessary for the Court to consider and/or take judicial notice of the report from Cassava's 2022 audit of Dr. Wang's lab (ECF 68-3; "Audit Report"), the Order Granting Motion to Dismiss Indictment (ECF 68-5; "Dismissal Order"), the May 30, 2025 letter from City University of New York (ECF 69-2; "Final CUNY Report"), and Barbier's Forms 4 filed with the SEC (ECF 69-3).

## LEGAL STANDARD

"The Fifth Circuit recognizes the incorporation-by-reference doctrine." *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 2003 WL 23316646, at *5 (S.D. Tex. Mar. 27, 2003); *Nazimuddin v. Wells Fargo Bank, N.A.*, 2025 WL 33471, at *2 (5th Cir. Jan. 6, 2025) (when evaluating motions to dismiss under Rule 12(b)(6), courts "consider all 'documents incorporated

3

into the complaint by reference, and matters of which a court may take judicial notice'") (quoting *Tellabs*, 551 U.S. at 322). And "in suits under the federal securities laws, courts may also routinely consider in a Rule 12(b)(6) review not only documents named in Plaintiffs' complaint, but even documents that, if not named, are 'pertinent,' 'central' or 'integral to [Plaintiffs'] claim.'" *Enron*, 2003 WL 23316646, at *5. "[D]istrict courts cannot fulfill their gatekeeping role if plaintiffs are free to quote selectively or out of context from documents that they rely upon, and avoid further examination of the documents by not attaching them to the complaint." *Id.*

Similarly, a court ruling on a motion to dismiss may also properly consider documents subject to judicial notice under Federal Rule of Evidence 201(b). *Nazimuddin*, 2025 WL 33471, at *2. A fact is judicially noticeable if it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[M]atters of which the district court can take judicial notice" are "not considered matters outside the pleadings." *In re Katrina Canal Breaches Consol. Litig.*, 533 F.Supp.2d 615, 631 (E.D. La. 2008).

## ARGUMENT

### I. The Court Should Consider the Audit Report Because It is Incorporated by Reference into the AC.

The Court should consider the Audit Report because it is indisputably incorporated by reference into the AC and central to Plaintiffs' claims. Indeed, the Audit Report is referenced fifteen times in the AC (¶¶12, 78, 84, 89, 124, 128, 131, 133, 136, 148, 154, 202, 203, 204, 205) and is central to each of Plaintiffs' theories of falsity and scienter. *Id.*; Opp. to MTD (ECF 74), at 2, 5, 7-8.

Plaintiffs' motion to strike the Audit Report effectively asks the Court to bury its head in the sand and accept the AC's characterizations of, and inferences drawn from, the Audit Report without actually looking at it. This is the exact gamesmanship that the incorporation-by-reference doctrine is designed to prevent: "[A plaintiff] may not cherry-pick helpful aspects of a document 'and at the same time prevent the court from considering [the document's] actual terms.' . . . To combat such gamesmanship, a document cited by a plaintiff is appropriately incorporated by reference into their complaint." *See Martinez v. Greater New Orleans Expressway Comm'n*, 2021 WL 1023054, at *1 n.1 (E.D. La. Mar. 17, 2021).

Incorporation of the Audit Report is particularly important and necessary here, because the AC selectively quotes portions of only two sentences in the 23-page Audit Report: that Dr. Wang's lab "lack[ed] experiment logbooks/notebooks for all study/research for work being performed" and that the lab was "unacceptable and temporarily not qualified to provide biomarker analysis and research for any future Cassava studies." ¶203. From this, Plaintiffs infer that: Cassava's audit "related to [Dr. Wang's] work" during the Phase 2b Study and thus the challenged statements "tout[ing] the Phase 2b Study results" and describing the leaked CUNY Report, government investigations, and Orrick investigation, were false and misleading when made; and that "Defendants [] knew, or should have known absent severe recklessness, that there was some legitimacy to the accusations of research misconduct because . . . they were privy to the Company's 2022 audit of Dr. Wang's laboratory related to his work on the Phase 2b Study." ¶¶84, 85, 202; Opp. to MTD at 8.

But a review of the Audit Report itself shows that Plaintiffs' characterizations of the Audit Report are incorrect, and the inferences they draw from the Report are unwarranted. Nowhere in the Audit Report does it suggest that any Defendant was involved in or knew about the audit, or

5

that any Defendant received or reviewed the Audit Report. And the Audit Report makes clear that its findings regarding certain recordkeeping and procedural deficiencies observed in Dr. Wang's lab were as of *September 2022*. *See* Audit Report at 5 ("[CUNY] was found to not have all the required processes in place *at this time* . . . . As a result, [CUNY] is considered unacceptable and temporarily not qualified to provide biomarker analysis and research services for any *future* Cassava studies) (emphasis added). Accordingly, Plaintiffs' allegations that the Audit Report somehow shows that the underlying Phase 2b Study results were compromised, and that Defendants knew that to be the case when they made the challenged statements, is contradicted by the Audit Report itself. Indeed, because the AC's Audit Report allegations are contradicted by the Audit Report, the Court need not accept those allegations as true. *United States ex rel. Jamison v. Career Opportunities, Inc.*, 2020 WL 520590, at *6 (N.D. Tex. Jan. 31, 2020) ("If allegations in a complaint are contradicted by documents incorporated into the complaint, the Court need not consider those allegations as true for the purposes of a motion to dismiss.") (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Whiting v. Bank of Am., N.A.*, 2014 WL 5018020, at *2 (S.D. Tex. Oct. 6, 2014) (similar).

## II.    The Dismissal Order is Judicially Noticeable and Provides Necessary Context for Plaintiffs' Claims.

Plaintiffs do not challenge that the Court may take judicial notice of the Dismissal Order. Nor could they, as it is well-established that court documents "are matters of public record and may be considered in connection with a motion to dismiss." *Gresham v. Wells Fargo Bank, N.A.*, 642 F.App'x 355, 358 n.4 (5th Cir. 2016) (court documents "are matters of public record and may be considered in connection with a motion to dismiss") (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)); *Kinnie Ma Individual Ret. Acct. v. Ascendant Cap., LLC*, 2023 WL 5417142, at *2 n.2 (W.D. Tex. Aug. 21, 2023) (taking judicial notice of docket in separate criminal

6

proceeding); *In re Wald*, 2012 WL 2564367, at *5 (Bankr. W.D. Tex. July 2, 2012) ("The pleadings filed and decisions issued in the New York case are matters of public record of which the court may (and hereby does) take judicial notice."). Instead, Plaintiffs only argue that the Court should not consider the Dismissal Order because it is "irrelevant," on the theory that "whether Dr. Wang actually manipulated data during the Phase 2b Study, or was convicted of doing so, is inconsequential to Plaintiffs' claims." Mot. at 5. This is disingenuous at best.

The AC references Dr. Wang's indictment nineteen times in support of Plaintiffs' theories that Dr. Wang actually manipulated data in connection with "grant applications made to the NIH," and that disclosure of the indictment served as a corrective disclosure for purposes of loss causation because it revealed "the truth about the research misconduct during the Phase 2b Study." *See* AC ¶¶6, 15, 86, 137, 138, 140, 149, 150, 151, 198, 239, 242. In essence, Plaintiffs ask the Court to accept the indictment's *allegations* of research misconduct in connection with NIH grants (not the Phase 2b Study) as true and sufficient to show both that Dr. Wang manipulated data and that disclosure of these allegations revealed some truth previously concealed by Barbier's and Burns's challenged statements. MTD at 17. It is therefore entirely relevant that the allegations against Dr. Wang were voluntarily dismissed by the government (Mot. at 6) and that the court dismissed all charges against Dr. Wang, in evaluating whether mere disclosure of the indictment revealed the "truth" for purposes of loss causation. MTD at 17. As explained in *Genesee County Employees' Retirement System v. FirstCash Holdings Inc.*, 667 F.Supp.3d 295, 330 (N.D. Tex. 2023), a government complaint "devoid of anything but allegations" is "not a final finding or ruling that defendants have violated the law" and "is not a corrective disclosure." That reasoning is particularly strong here where the DOJ indictment was against Dr. Wang (a third party) and not against either Barbier or Burns, and where the indictment was dismissed. There is no reason for

the Court to put on blinders and ignore the fact that Dr. Wang's indictment was dismissed when evaluating the parties' arguments on a motion to dismiss.

### III.    The Final CUNY Report is Judicially Noticeable and Provides Necessary Context for Plaintiffs' Claims.

Plaintiffs argue that the Final CUNY Report should be stricken because: (1) Barbier and Burns allegedly use it "to improperly prove the truth of its contents, which cannot be judicially noticed because they are subject to reasonable dispute"; (2) it is not referenced in the AC; and (3) it is "irrelevant". Mot. at 4. These arguments fail.

Again, Plaintiffs do not dispute that under Fed. R. Evid. 201(b), a court may take judicial notice of documents publicly filed on other court dockets, as they are matters of public record. *Supra* at 6. Rather, they argue that Barbier and Burns improperly submit the Final CUNY Report to "prove the truth its contents," and that the Court cannot take judicial notice of those contents because they are subject to "reasonable dispute." Mot. at 4. Plaintiffs are wrong on both fronts. Barbier and Burns do not ask the Court to accept the truth of the Final CUNY Report's contents; they submit the Final CUNY Report as context for the Court in evaluating Plaintiffs' claims, as explained further below.

Nor are the Final CUNY Report's contents in "dispute." *Id.*[1] The document exists and says what it says—none of which Plaintiffs dispute—and the Court may take judicial notice of it without having to determine whether the contents are true. *See Pinder v. Skero*, 2017 WL 11612501, at *3 (S.D. Tex. Sept. 6, 2017) (taking judicial notice of court judgment and lab results because they were "not subject to reasonable dispute"); *see also Edwards v. Cofield*, 2025 WL

---

[1] Disputed facts in other court filings typically include party assertions in pleadings, motions, affidavits, and depositions, as well as "findings of fact from another court." *Pinder*, 2017 WL 11612501, at *3; *Watson v. Aurora Loan Servs. LLC*, 2012 WL 3594233, at *2 n.4 (N.D. Tex. Aug. 21, 2012).

511065, at *6 (M.D. Ala. Feb. 14, 2025) (taking judicial notice of bail order filed in other court because it "exists," "it says what it says," and "[n]either its existence nor the face of the language used in it is subject to reasonable dispute"); *Denney v. Amphenol Corp.*, 2024 WL 3293590, at *9 (S.D. Ind. July 3, 2024) (denying motion to strike, and taking "judicial notice of the indisputable fact that the consent order exists, it says what it says, and it has legal consequences"); *Viramontes v. Pfizer, Inc.*, 2015 WL 9319497, at *3 (E.D. Cal. Dec. 23, 2015) (similar).

Second, while the Final CUNY Report is not referenced in the AC,[2] a leaked draft version of CUNY's findings is central to Plaintiffs' claims. Plaintiffs allege that the challenged statements concerning (1) the leaked draft CUNY Report, government investigations, and Orrick investigation, and (2) the Phase 2b and Phase 2 open-label results, were false or misleading (and made with scienter), because Defendants "knew or should have known" that there "was evidence highly suggestive of deliberate misconduct by Dr. Wang" and that "Burns bore some responsibility," based in part on language in the leaked CUNY draft report. ¶¶124, 128, 131, 133, 136, 200, 201. However, in determining whether the AC pleads a strong inference that Barbier and Burns made the challenged statements with scienter, the Court must consider whether they had a good faith basis to question the interim-conclusions in the leaked CUNY draft report (which concerned alleged misconduct in connection with certain research papers, *not* the Phase 2b or open-label studies). As explained in the Motion to Dismiss and Reply, Barbier and Burns had such a good faith basis, and it is corroborated by the fact that the Final CUNY Report "determined that research misconduct did *not* occur." Final CUNY Report, at 2 (emphasis added); MTD at 1; Reply at 1-2, 8. It is plainly not—as Plaintiffs would have it—"inconsequential" that CUNY ultimately

---

[2] The Final CUNY Report only surfaced in October 2025—two months after the AC—when it was filed on the docket in Dr. Wang's criminal trial. *See U.S. v. Wang*, No. 8:24-cr-00211 (D. Md., Oct. 14, 2025), ECF 118-2.

made determinations that contradict Plaintiffs' allegations; this is entirely relevant to and provides necessary context for evaluating the falsity and scienter elements of Plaintiffs' claims. Mot. at 4. It would be fundamentally unfair for the Court to rely solely on allegations derived from the interim and (illegally) leaked CUNY draft report, and to ignore the fact that CUNY later finalized its report in a way that undermines Plaintiffs' claims.

**IV.   Barbier's Forms 4 Filed with the SEC are Judicially Noticeable and Provide Necessary Context for the AC's Scienter Allegations.**

Plaintiffs argue that Barbier's Forms 4 are not judicially noticeable because: (1) they "introduce new disputed facts through judicial notice"; and (2) they are allegedly "irrelevant because Plaintiffs do not rely on suspicious stock sales to support scienter." Mot. at 6. Beyond citing no authority for either proposition, Plaintiffs' arguments are meritless.

First, courts have consistently found that SEC filings—including Forms 4—meet the requirements of Fed. R. Evid. 201(b) because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and may properly be considered at the motion to dismiss stage. *See, e.g., Saucedo v. Deutsche Bank Nat. Tr. Co.*, No. SA-12-CV-00868-DAE, 2013 WL 656240, at *1 n.3 (W.D. Tex. Feb. 20, 2013) ("The Court may take judicial notice of documents filed with the SEC, and may consider such documents in determining a motion to dismiss.") (citing Fed. R. Evid. 201(b)); *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F.Supp.3d 492, 517 n.8 (S.D. Tex. 2017) ("The court takes notice of Helix's public Form 4 filings to the SEC."); *Thornton v. Micrografx, Inc.*, 878 F.Supp.931, 933 (N.D. Tex. 1995) ("[T]he Court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC."); *Loyola v. Am. Homes for Rent Prop. II, LLC*, 2015 WL 11348310, at *5 (W.D. Tex. Aug. 12, 2015) (similar); *Martinez v. Wilmington Tr. Co.*, 2013 WL 6818251, at *7 n.11 (W.D. Tex. July 23, 2013). Plaintiffs cite no authority to the contrary (or at all).

10

Second, that the AC does not mention Barbier's stock transactions does not preclude the Court from considering them as part of its "holistic" scienter evaluation. *Supra* at 1-2. Under *Tellabs*, in determining whether a plaintiff has pleaded a "strong inference" of scienter, the court must engage in an "inherently comparative" weighing of inferences, which requires courts to consider not only the complaint but also documents incorporated by reference and matters of which courts may take judicial notice. *Supra* at 1-2; *Alaska Elec. Pension Fund v. Asar*, 768 F.App'x 175, 182 (5th Cir. 2019) ("Looking to Forms 4 [] seems congruent with the requirement that we consider plausible nonculpable explanations for the defendants' conduct."). Indeed, federal courts routinely consider a defendant's stock purchases in evaluating scienter, even where the complaint does not raise any allegations related to the defendant's stock transactions. *See, e.g., Veal v. LendingClub Corp.*, 2021 WL 4281301, at *2 (9th Cir. Sept. 21, 2021) ("It is undisputed that none of the individual Defendants sold any stock during the period of the alleged fraud, and two of them . . . purchased [] stock during the class period. We have previously held that 'a lack of stock sales can detract from a scienter finding' on a holistic inquiry, and where 'rather than selling shares, [defendants] purchased additional stock during the Class Period,' that instead 'support[s] an inference of innocence.'") (quoting *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018)); *see also Izadjoo*, 237 F.Supp.3d at 518 (stock purchases during class period "rebut[] a finding of scienter, since it is illogical that [the defendant] would have been []purchasing [] shares had it been aware of facts that would indicate the price would fall").

## CONCLUSION

In sum, all four of the exhibits Plaintiffs move to strike are incorporated by reference into the AC and/or subject to judicial notice, and each provides necessary context for evaluating Plaintiffs' falsity and scienter allegations under the securities laws. Accordingly, Barbier and Burns respectfully request that the Court deny Plaintiffs' Motion to Strike and consider and/or take

11

judicial notice of the aforementioned exhibits when deciding their Motion to Dismiss the Amended

Complaint.

Dated: January 21, 2026             BAKER & HOSTETLER LLP

C. SHAWN CLEVELAND (TX. Bar No. 24012433)
2850 North Harwood Street
Suite 1100
Dallas, TX  75201
Telephone:  214/210-1200
214/210-1200 (fax)
scleveland@bakerlaw.com

DOUGLAS W. GREENE (admitted *pro hac vice*)
ZACHARY R. TAYLOR (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, NY  75201
Telephone: 212/847-7090
dgreene@bakerlaw.com
ztaylor@bakerlaw.com

*Counsel for Defendants Remi Barbier and Lindsay Burns*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 21, 2026, a true and correct copy of the foregoing was served upon each attorney of record via the Court's CM/ECF system, which will send notice of the filing to all registered users. Parties may access the filing through the Court's CM/ECF system.

Dated: January 21, 2026

*/s/ Zachary R. Taylor*