IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:21-cv-00751-DAE |
| | | CLASS ACTION |
| This Document Relates to: | | |
| ALL ACTIONS | | |
| | § § | |
| CARLOS PÉREZ-COTAPOS UGARTE, MARIA ISABEL URETA BAZÁN, CARLOS PÉREZ-COTAPOS SUBERCASEAUX, INVERSIONES ANE MIREN LIMITADA, SHERYL GROVE, and HOORIEH ALAGHEMAND, Individually and on Behalf of All Others Similarly Situated, | § § § § § § § § § | Case No. 1:24-cv-01525-DAE |
| | | CLASS ACTION |
| Plaintiffs, | § § § | |
| v. | § § | |
| CASSAVA SCIENCES, INC., REMI BARBIER, RICHARD JON BARRY, LINDSAY BURNS, JAMES W. KUPIEC, and ERIC SCHOEN, | § § § § § | |
| Defendants. | § § § | |

**DEFENDANTS' OBJECTION TO THE MAGISTRATE JUDGE'S
ORDER DENYING CONSOLIDATION UNDER FED. R. CIV. P. 72(a)**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

BACKGROUND ...........................................................................................................4

    A. Pomerantz's Failed Efforts to Become Lead Counsel and Avoid the
        Consolidation Order. ...............................................................................4

    B. The Post-Certification Transformation of Ugarte. ..........................................5

    C. The Certification of the Class and the Settlement of the Consolidated Action...............7

    D. The June 29 Order. .......................................................................................8

LEGAL STANDARD....................................................................................................8

ARGUMENT .................................................................................................................9

    A. The Magistrate Judge Failed to Decide the Threshold Question of Whether the
        PSLRA and Consolidation Order Dictate that Ugarte Be Consolidated
        Because It Arises Out of The Same Facts and Claims as the Consolidated
        Action....................................................................................................10

    1. The standing order commands consolidation. ..............................................10

    2. The Order's own findings establish that Ugarte must be consolidated. .........10

    3. Consolidation enforces the PSLRA and the Consolidation Order; denial rewards
        gamesmanship......................................................................................11

    B. In Addition to Failing to Apply the Consolidation Order, the June 29 Order
        Misapplies the Discretionary Factors It Purports to Apply. ..................12

    1. Distinct class periods do not defeat consolidation; consecutive class periods
        confirm the same alleged fraud...............................................................12

    2. The procedural-postures factor measures efficiency, and the settlement posture
        makes consolidation the efficient course. ..............................................14

    3. Consolidation causes no cognizable prejudice to the Consolidated Action
        plaintiffs, whose own settlement papers anticipate it. ...........................18

CONCLUSION.............................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006 (5th
Cir. 1977) ..................................................................................................................9

*Am. Home Assurance Co. v. Transoceanic Shipping Co.*, No. 94-3605, 1995 WL
495906 (E.D. La. Aug. 18, 1995) ............................................................................17

*Baker v. Cassava Scis., Inc.*, No. 1:24-cv-00590-DAE (W.D. Tex.)....................4, 5, 13

*Benchmark Towing Sys., LLC v. Chacon Bus. Grp., Inc.*, No. SA-23-CV-598,
2024 WL 4428983 (W.D. Tex. Oct. 4, 2024)......................................................15, 16

*In re Cendant Corp. Litig.*, 182 F.R.D. 476 (D.N.J. 1998)...............................................11

*Chun v. Fluor Corp.*, No. 3:18-cv-01338-X, 2020 WL 2745527 (N.D. Tex. May
26, 2020) ....................................................................................................................14

*Doe v. FriendFinder Networks, Inc.*, 741 F. Supp. 3d 626 (W.D. Tex. 2024) ................8

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002)................................9, 13

*Frazier v. Garrison I.S.D.*, 980 F.2d 1514 (5th Cir. 1993)............................................14

*Gentry v. Smith*, 487 F.2d 571 (5th Cir. 1973) ...............................................................9

*Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184 (S.D.N.Y. 2006).........9

*Kaplan v. Gelfond*, 240 F.R.D. 88 (S.D.N.Y. 2007)......................................................13

*Mills v. Beech Aircraft Corp.*, 886 F.2d 758 (5th Cir. 1989)........................................15

*Moller-Maersk v. Safewater Lines*, No. H-13-1726, 2017 WL 416296 (S.D. Tex.
Jan. 31, 2017)..................................................................................................16, 17, 18

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 3:17-cv-558
(SRU), 2020 WL 1181366 (D. Conn. Mar. 10, 2020).............................................13

*Pedigo v. Austin Rumba, Inc.*, No. A-08-CA-803-JRN, 2010 WL 2730463 (W.D.
Tex. June 24, 2010)....................................................................................................15

*Robison v. Digital Turbine, Inc.*, No. 1:22-cv-00550-DAE, 2022 WL 17881476
(W.D. Tex. Dec. 19, 2022).........................................................................................13

*St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d
978 (5th Cir. 1983)......................................................................................................15

*Teroganesian v. Sw. Airlines Co.*, 2023 WL 4565464 (S.D. Tex. July 15, 2023)..........9

*In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233 (D.N.M. 2009)..........11

*Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646 (S.D. Tex. 2003) ...........................17

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................9, 11

Defendants respectfully object, under Federal Rule of Civil Procedure 72(a) and Rule 4(a) of Appendix C to the Local Rules, to the Magistrate Judge's June 29, 2026 order denying Defendants' motion to consolidate the *Ugarte* action into this Consolidated Action. *See* Consolidated Action, ECF 384 & *Ugarte*, ECF 92 (the "June 29 Order").[1]

## INTRODUCTION

Congress passed the Private Securities Litigation Reform Act ("PSLRA") to ensure securities litigation proceeds in an orderly, efficient, and fair manner by ensuring that overlapping claims arising from the same alleged fraud are litigated once, by one Lead Plaintiff, in one consolidated proceeding. Consistent with that mandate, at the outset of this case, this Court appointed a Lead Plaintiff and Lead Counsel, and declared that *any* later-filed action in this District "that arise[s] out of the same facts and claims" as this litigation "*shall be consolidated* into the Consolidated Action for all purposes once the Court is informed" of it. Consolidated Action, ECF 58 ¶ 5 (the "Consolidation Order") (emphasis added).

The June 29 Order contradicts the PSLRA's mandate and this Court's Consolidation Order. It permits the *Ugarte* plaintiffs to copy the Consolidated Action's alleged misstatements, alleged corrective disclosures, and alleged theory of fraud, circumvent the PSLRA's Lead Plaintiff process, and litigate a *second* class action arising out of the same facts and claims. This is neither efficient nor fair. Instead of permitting Cassava to resolve the claims against it with the Lead Plaintiff and Lead Counsel appointed by this Court, the June 29 Order would force Cassava to settle with one plaintiff, only to have to start over and litigate duplicative allegations with a second plaintiff and second counsel. Where Cassava had, consistent with the PSLRA and this Court's Consolidation Order, negotiated and paid a high price for global peace for claims arising out of

---

[1] This brief refers to case number No. 1:21-cv-00751-DAE as the "Consolidated Action" and case number 1:24-cv-01525-DAE as "*Ugarte*."

1

the same facts and circumstances, it will instead receive little to no benefit from its bargain.

Worse, the June 29 Order rewards the exact gamesmanship by securities plaintiffs and plaintiffs' counsel the PSLRA was designed to eliminate. This is the Pomerantz law firm's *third* attempt to become Lead Counsel in this case. First, this Court rejected its bid to become Lead Counsel at the outset of this case. *See* Consolidated Action, ECF 59. Next, Pomerantz sought to circumvent this Court's Consolidation Order by filing a copycat case, with a class period beginning just after the class period in this case, in the Northern District of Illinois. That court also rejected its bid, transferring the case here for consolidation. Then, after seeking appointment for a *third* time, after this Court certified a class and the Cassava Defendants signed a binding term sheet resolving the Consolidated Action, Pomerantz filed the operative Amended *Ugarte* Complaint, again adopting the Consolidated Action's theory and resetting its class period to begin on October 13, 2023, the day after the certified period closes.

Pomerantz cannot deny the *Ugarte* claims arise out of the same facts and circumstances: when confronted with the corrective disclosures pleaded in both actions, the only difference counsel for the *Ugarte* plaintiffs could identify was that in *Ugarte* they "apply to the investors who bought after October 12th, 2023," and (are alleged as misstatements. *See* June 24, 2026 Tr. 52:19–53:12. Pomerantz simply represents different shareholders that purchased the stock at a later point in time. If that distinction defeats consolidation, as the June 29 Order holds it does, then every class settlement in this District invites a parasitic complaint by opportunistic plaintiffs' firms.

Further, the current distinction between the *Ugarte* and Consolidated Action class periods may not even hold. The Fifth Circuit has scheduled oral argument on the Rule 23(f) appeal of the class-certification order for August 3, 2026. No. 25-50855 (5th Cir.). The certified class rests on Lead Plaintiff's unusual theory that a class period may close before the corrective disclosures said

2

to reveal the fraud: the period ends on October 12, 2023, while the operative complaint alleges corrective disclosures in June, July, and September 2024. *See infra* Background B (chart), Background C; Consolidated Action, ECF 332. If the Fifth Circuit disturbs certification on that ground, the Consolidated Action plaintiffs may well seek to certify a broader class running through the later disclosures, a class that would overlap the *Ugarte* period outright. Absent consolidation, this Court would then face two freestanding actions litigating not merely the same facts, but overlapping classes, in parallel.

Against that record, the June 29 Order cannot stand, for multiple reasons. As a preliminary matter, the June 29 Order is contrary to law. Magistrate Judge Hightower's decision failed to address the critical (and determinative) threshold question made operative by the PSLRA's dictates and made mandatory by this Court's Consolidation Order: whether *Ugarte* "arise[s] out of the same facts and claims" as the Consolidated Action and therefore "*shall be consolidated*." Consolidated Action, ECF 58 ¶ 5 (emphasis added).

Then, in addition to side-stepping the determinative question, the June 29 Order misapplies the discretionary factors it does opt to consider. First, the mere fact that the *Ugarte* Lead Plaintiff intentionally pleaded a class starting the day after the certified class does not defeat consolidation. Rather, it highlights the *Ugarte* plaintiffs' opportunism. Second, the procedural-postures factor exists to measure efficiency, and the settlement posture makes consolidation the efficient course. The Rule 23(e) approval process is the forum in which counsel for the *Ugarte* claims can be heard, through notice, objection, and the fairness hearing. One proceeding that hears every stakeholder is efficient; a second, parallel class action relitigating the same alleged fraud from the start is not. Third, there is no cognizable prejudice to Plaintiffs in the Consolidated Action. The settlement between the Lead Plaintiffs and the Cassava Defendants expressly anticipates any consolidation

ordered by the Court. Accordingly, the Court should set the June 29 Order aside and enforce the Consolidation Order it entered four years ago.

## BACKGROUND

### A. Pomerantz's Failed Efforts to Become Lead Counsel and Avoid the Consolidation Order.

Beginning in 2021, Cassava investors filed a series of securities class actions in this District, each alleging that Cassava misrepresented the integrity and results of research supporting simufilam. On June 30, 2022, following the PSLRA, the Court appointed a lead plaintiff and lead counsel, consolidated the related actions, and ordered:

> Any other actions now pending or hereafter filed in this District that arise out of the same facts and claims as alleged in the above-listed related actions shall be consolidated into the Consolidated Action for all purposes once the Court is informed of them.

*See* Consolidated Action, ECF 58 ¶ 5; *see also* ECF 59. Specifically, the Court rejected the Pomerantz firm's lead-counsel application and appointed Robbins Geller. *See* Consolidated Action, ECF 59. Undeterred, Pomerantz sought to litigate the same alleged fraud outside this Court's jurisdiction. In February 2024, Pomerantz filed a copycat class action (the "*Baker*" action) in the Northern District of Illinois. *Baker v. Cassava Scis., Inc.*, No. 1:24-cv-00590-DAE, ECF 1. Just like *Ugarte*, *Baker*'s class period opened just after the then-operative consolidated period closed, and *Baker* asserted the same claims, the same theory of fraud, and the same corrective disclosures as the Consolidated Action. Despite the attempt to plead a distinct class period, the Northern District of Illinois saw through Pomerantz's attempt to circumvent the PSLRA and transferred the case here. This Court then enforced its Consolidation Order and consolidated *Baker* into the Consolidated Action.[2]

---

[2] It was the Consolidated Action plaintiffs' own counsel who urged the consolidation of *Baker* under the Consolidation Order, on the same basis Defendants urge the consolidation of *Ugarte* here. *See Baker v. Cassava Scis., Inc.*, No. 1:24-

### B. The Post-Certification Transformation of *Ugarte*.

Having lost the lead-counsel bid and then seen *Baker* consolidated, Pomerantz tried a different tack. The action now styled *Ugarte* was initially filed in December 2024, by a separate law firm, on behalf of Stephen Crocker and was a different case: it proposed a limited class period of February 7, 2024, to November 24, 2024 and limited its allegations to supposed "misstatements" about the likelihood of a positive outcome in simufilam's Phase 3 trials. *Ugarte*, ECF 1. It alleged a single corrective disclosure, the Phase 3 trial results, which had no overlap with the Consolidated Action. Accordingly, as pleaded, the case did not arise from the same facts and claims as the Consolidated Action and Defendants did not seek consolidation of the *Crocker* action.

But those circumstances soon changed. Having been appointed lead counsel in the then-unrelated *Crocker* action Pomerantz amended the complaint. *Ugarte*, ECF 49. Pomerantz's amendment converted *Crocker*'s narrow Phase 3 case into a copy of the Consolidated Action: *Ugarte* now pleads the same simufilam research-integrity allegations, the same alleged misconduct by Dr. Wang, the same alleged problems with the Phase 2b study, and many of the same corrective disclosures, on the same dates, in the same language, against the same Defendants, as the chart below illustrates. *Compare Ugarte* Am. Compl., ECF 49 ¶¶ 4–17, 57–91, 129–157, *with* Consolidated Action 2d Supp. Compl., ECF 319 ¶¶ 89–152, Supp. ¶¶ 1–27.

| **Consolidated Action 2d Supp. Compl.** | ***Ugarte* Am. Compl.** |
| --- | --- |
| **Theory of Fraud** | |
| Misrepresentations concerning the integrity and results of the simufilam research, including alleged misconduct by Dr. Wang and alleged problems with the Phase 2b study. 2d Supp. Compl. ¶¶ 89–152. | Same. Am. Compl. ¶¶ 4–17, 57–91. |
| **Class Period** | |

---

cv-59000590-DAE, ECF 13. Having invoked the Consolidation Order to bring *Baker* inside this proceeding, the consolidated plaintiffs cannot now disclaim the Order's application to *Ugarte*.

| **Consolidated Action 2d Supp. Compl.** | ***Ugarte* Am. Compl.** |
|---|---|
| September 14, 2020–October 12, 2023. 2d Supp. Compl. ¶ 46. | October 13, 2023–March 25, 2025. Am. Compl. ¶ 258. |
| **Defendants** | |
| The two actions "involve the same defendants." June 29 Order at 7; *see also* 2d Supp. Compl. ¶¶ 55-70. | Cassava, Barry, and Kupiec, plus Barbier, Schoen, and Burns, added by the amendment. Am. Compl. ¶¶ 42–48. |
| **Alleged Misstatements** | |
| **October 13, 2023** press release responding to the CUNY Report: CUNY had "no legitimate basis on which to make accusations against the Company or its employees." 2d Supp. Compl. ¶ 4. | Same response rejecting the CUNY Report: "the university has no legitimate basis to make accusations against the Company or its employees." Am. Compl. ¶ 80. |
| **February 28, 2024** press release: internal investigation "found no evidence to substantiate allegations that the Company or its employees engaged in or were aware of research misconduct." 2d Supp. Compl. ¶ 26. | Same release, same language: investigation "found no evidence to substantiate allegations that the Company or its employees engaged in or were aware of research misconduct." Am. Compl. ¶¶ 129-130. |
| **July 17, 2024** press release announcing Barbier's and Burns's departures; Barry quoted on the Board's "steadfast commitment" to "transparency, accountability, and highest ethical business practices." 2d Supp. Compl. ¶ 18. | Same release, same quotation: "the Board has a steadfast commitment to doing so with transparency, accountability, and highest ethical business practices." Am. Compl. ¶¶ 144–147. |
| **Alleged Corrective Disclosures** | |
| **June 28, 2024**: federal grand jury indicts Dr. Wang; stock falls from $18.95 to $12.35, a 34.8% decline. 2d Supp. Compl. ¶¶ 8–16. | Same indictment, same stock-drop allegation: $18.95 to $12.35, "a decline of about 34.83%." Am. Compl. ¶¶ 137–139. |
| **July 1, 2024** Form 8-K disclosing DOJ and SEC investigations and the email attachment sent to Dr. Wang "before the bioanalysis could have been used to unblind him." 2d Supp. Compl. ¶ 17. | Same Form 8-K, same investigations, same unblinding email, quoted in the same language. Am. Compl. ¶¶ 140–143. |
| **September 26, 2024**: SEC charges against Cassava, Barbier, and Burns over the Phase 2b results; penalties of $40 million, $175,000, and $85,000; stock falls from $31.87 to $28.49, a 10.6% decline. 2d Supp. Compl. ¶¶ 20–27. | Same charges, same penalties, same stock-drop allegation: $31.87 to $28.49, "a roughly 10.61% decline." Am. Compl. ¶¶ 153–157. |

Not coincidentally, Pomerantz redefined the proposed class period to begin on October 13, 2023, the day after the Consolidated Action's class period ends. *Ugarte*, ECF 49 ¶ 258. Indeed, Pomerantz's expansion of *Crocker* to *Ugarte* occurred on August 25, 2025—two weeks *after* this

Court had certified the Consolidated Action's class and three weeks *after* the parties to the Consolidated Action had signed a settlement term sheet. *See infra* Background C. Because the amended *Ugarte* action arose out of the same facts as the Consolidated Action, Defendants promptly moved to consolidate. Consolidated Action, ECF 338; *Ugarte*, ECF 53.

In short, after failing to win the lead-counsel bid, and failing to become lead counsel by avoiding this Court's jurisdiction by pleading a new case in the Northern District of Illinois, Pomerantz now seeks lead counsel for a *third* time in this case through the *Ugarte* Complaint.

### C. The Certification of the Class and the Settlement of the Consolidated Action.

On August 12, 2025, the Court certified a class of purchasers of Cassava securities between September 14, 2020 and October 12, 2023. Consolidated Action, ECF 332. The certification order is on appeal. No. 25-50855 (5th Cir.).

On August 5, 2025, the parties to the Consolidated Action accepted a mediator's proposal, and the Cassava Defendants and the consolidated plaintiffs subsequently executed a binding term sheet under which Cassava will pay $31,250,000 in exchange for releases defined by the certified class period. Consolidated Action, ECF 381-1 (Stipulation of Settlement or "Stip.") at 5; *see also* Consolidated Action, ECF 360-3 at 2. The parties' agreed settlement papers anticipate the possibility of consolidation: the executed Stipulation carves out from the settlement stay "the Settling Parties' ongoing litigation in the District Court concerning consolidation of the *Ugarte* action." Stip. § 9.16. Thus, the settlement proceeds on its own track no matter how consolidation is resolved. *See also* Consolidated Action, ECF 359 (mediator's ADR Notice: "the Settlement is complete and enforceable as signed" and consolidation "is a matter solely for the Court to decide"). Plaintiffs moved for preliminary approval on June 18, 2026. Consolidated Action, ECF 380. That motion remains pending. Nothing in these objections asks the Court to delay or deny it.

When it settled, the Consolidated Action was still in the early stages of discovery. Disputes over the proper scope of discovery were pending and unresolved, and no current or former Cassava employee, officer, or director, or individual Defendant, had been deposed. Tr. 24:15–25:2. And because the certification order remains under Fifth Circuit review, with argument scheduled for August 3, 2026, even class certification is not final. *See* No. 25-50855 (5th Cir.); Stip. § 9.16 (excepting the Rule 23(f) appeal from the settlement stay).

### D.  The June 29 Order.

On June 29, 2026, Magistrate Judge Hightower denied consolidation, citing three factors: the class periods are distinct in *Ugarte* and the Consolidated Action; the cases are at different procedural stages because "the parties in the Consolidated Action have agreed to a settlement"; and consolidation "would prejudice Plaintiffs in the Consolidated Action by jeopardizing the settlement and delaying resolution of the case." June 29 Order at 7–8. The June 29 Order acknowledged that the two actions "are both pending before Judge Ezra and involve the same defendants and causes of action." *Id.* at 7. The June 29 Order did not expressly determine whether *Ugarte* "arises out of the same facts and claims" as the Consolidated Action, nor did it address the PSLRA or whether the express language of the Consolidation Order applies to *Ugarte*.

### LEGAL STANDARD

When a party objects to a magistrate judge's order on a nondispositive matter, the district judge "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Under this Court's local rules, the district judge "may also reconsider *sua sponte* any matter" determined by the magistrate judge. W.D. Tex. Loc. R. App'x C, R. 4(a). A decision is "contrary to law" when it misapplies or fails to apply the governing legal framework, *see Great W. Casualty Co. v. Deepwell Energy Servs., LLC*, 2024 WL 4103369, at *2 (W.D. Tex. May 14, 2024); a finding is "clearly erroneous" when the record leaves the reviewing court with

the definite and firm conviction that a mistake has been made, *see Doe v. FriendFinder Networks, Inc.*, 741 F. Supp. 3d 626, 629 (W.D. Tex. 2024).

Congress enacted the PSLRA to bring order to securities class actions. Rather than permit a race among overlapping complaints controlled by competing plaintiffs' firms, the statute directs the court to consolidate related actions and to appoint a single "most adequate plaintiff" as lead plaintiff for the consolidated proceeding. 15 U.S.C. § 78u-4(a)(3)(B). Where multiple actions assert "substantially the same claim," the statute directs the court to resolve consolidation first and only then to appoint a lead plaintiff "for the consolidated actions." *Id.* § 78u-4(a)(3)(B)(ii). The lead plaintiff, subject to the Court's approval, selects and retains lead counsel, *id.* § 78u-4(a)(3)(B)(v), and thereafter directs the litigation, including the strategic judgments about *which claims to press* and *what class to seek to certify*.[3]

Rule 42(a) authorizes consolidation of actions that "involve a common question of law or fact," and the Fifth Circuit has long urged district judges to "make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion." *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) (quoting *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973)). Consolidation is "particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Teroganesian v. Sw. Airlines Co.*, 2023 WL 4565464, at *1 (S.D. Tex. July 15, 2023) (quoting *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)). Here, the discretionary inquiry does not write on a blank slate. This Court's standing Consolidation Order frames it, converting the front-end question from whether consolidation is convenient into

---

[3] The Lead Plaintiff's authority is over actions "asserting substantially the same claim," 15 U.S.C. § 78u-4(a)(3)(A)(ii), (B)(ii), and leaves the class period to be "clearly defined" by the Lead Plaintiff in the consolidated complaint, *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 448 n.15 (S.D. Tex. 2002). The class period, in other words, is a judgment the Lead Plaintiff makes in exercising its mandate; it is not a boundary that rival counsel can plead around.

whether it is required: if a later-filed action arises out of the same facts and claims, it "shall be consolidated . . . for all purposes." Consolidated Action, ECF 58 ¶ 5.

## ARGUMENT

**A. The Magistrate Judge Failed to Decide the Threshold Question of Whether the PSLRA and Consolidation Order Dictate that *Ugarte* Be Consolidated Because It Arises Out of The Same Facts and Claims as the Consolidated Action.**

### 1. The standing order commands consolidation.

The Consolidation Order provides: "Any other actions now pending or hereafter filed in this District that arise out of the same facts and claims as alleged in the above-listed related actions *shall be consolidated* into the Consolidated Action for all purposes once the Court is informed of them." Consolidated Action, ECF 58 ¶ 5 (emphasis added). The verb is "shall," not "may." Consistent with the PSLRA, the Court's Order makes consolidation of a qualifying action mandatory when it arises out of the same facts and claims as the Consolidated Action, and the only trigger is that the Court be informed of the later action. The June 29 Order's failure to address the threshold, determinative question of whether *Ugarte* arises out of the same facts and claims as the Consolidated Action, and therefore shall be consolidated, misapplies the governing framework.

### 2. The Order's own findings establish that *Ugarte* must be consolidated.

The only question the Consolidation Order leaves open is whether the later action arises out of the same facts and claims. The June 29 Order directly answered half of that question, finding that the two actions "involve the same defendants and causes of action." June 29 Order at 7. The pleadings answer the rest. The *Ugarte* amended complaint is indisputably built on the same factual allegations as the Consolidated Action: the integrity of the simufilam research, alleged misconduct of Dr. Wang, alleged problems with a Phase 2b study, the same alleged misstatements about the drug's efficacy and the government investigations, and many of the same corrective disclosures, on the same dates, in the same language. *Compare Ugarte* Am. Compl., ECF 49 ¶¶ 4–17, 57–91,

10

129–157, *with* Consolidated Action 2d Supp. Compl., ECF 319 ¶¶ 89–152, Supp. ¶¶ 1–27; *see also supra* Background B (chart). The *Ugarte* complaint's only real addition is the allegation that later statements continued the same alleged scheme. *Ugarte*, ECF 49 ¶¶ 90–136.

But the continuation of an alleged fraud is not a new fraud, and restating the same fraud from a later vantage point does not create a new set of facts or claims. *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998) ("The dates on which the misrepresentations occurred do not change their nature."); *see also In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1242 (D.N.M. 2009) (claims that extended the class period forward followed naturally from the initial claims and concerned a continuing course of the same alleged conduct). On the June 29 Order's own findings and the face of the pleadings, *Ugarte* must be consolidated pursuant to the plain language of the Consolidation Order.

### 3.  Consolidation enforces the PSLRA and the Consolidation Order; denial rewards gamesmanship.

Settlements of shareholder class actions are possible only because the PSLRA, and orders like this Court's Consolidation Order, let defendants obtain finality. When Cassava agreed to pay $31.25 million, every feature of the legal landscape told it that the settlement would achieve finality. The then-operative *Crocker* (now *Ugarte*) complaint alleged no misstatement before October 12, 2023; *Crocker* was a Phase 3 case asserting a different theory. *Ugarte*, ECF 1 ¶ 1. The negotiated releases swept in "all claims and causes of action that have been or could be asserted by the plaintiffs," bounded only by the class period. Consolidated Action, ECF 360-3 at 2; *see also* Stip. ¶ 1.25. And that boundary was not Cassava's to draw. Under the PSLRA, the class period is Lead Plaintiff's judgment to make: the statute commits control of the class claims, including what class to seek to certify, to the court-appointed Lead Plaintiff, not to defendants. *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv), (a)(3). Critically, the Consolidation Order stood guard against precisely the

11

residual risk presented by a later-filed action arising from the same facts and claims: that action would be folded into this proceeding, where a single lead counsel, a single Rule 23 process, and a comprehensive settlement would resolve it. The Consolidation Order, in short, was the procedural protection that made settling this action possible; it is what allowed Cassava to pay once for global peace rather than paying serially for the same alleged fraud. Accordingly, Cassava structured a $31.25 million settlement around that protection. Enforcing that Order as written is a matter of holding the parties to the structure the PSLRA and this Court put in place.

The sequence tells the story. The *Ugarte* plaintiffs' counsel first sought appointment as lead plaintiff in this action and were passed over. *See* Consolidated Action, ECF 59. Their original complaint attacked the Phase 3 program. *Ugarte*, ECF 1. Then, thirteen days after this Court certified a class, they abandoned the narrow *Crocker* theory and refiled this case as *Ugarte*, adopting the Consolidated Action's misstatements and corrective disclosures as its own and opening its class period on October 13, 2023, the day after the certified period closes. *Ugarte*, ECF 49 ¶ 258. Even the settling class's own counsel acknowledged that the *Ugarte* plaintiffs "could have chosen a class that began five days later, 50 days later, . . . a year later, a day later." Tr. 34:17–34:19. They chose the next day because the *Ugarte* case is the consolidated case, continued.

Endorsing that cynical maneuver sets a dangerous precedent in this Court and beyond. It is an open invitation to every plaintiff's firm passed over for lead counsel: wait out the litigation, and when the case settles, refile the same theory of fraud with a class period that begins the day after the settled one ends. Under the June 29 Order's logic, no standing consolidation order reaches that complaint, and no class settlement ever achieves peace or finality, whether for the defendants or for the judicial system. That is precisely the danger the PSLRA and this Court's Consolidation Order exist to prevent, and the June 29 Order does not engage with it at all.

12

**B. In Addition to Failing to Apply the Consolidation Order, the June 29 Order Misapplies the Discretionary Factors It Purports to Apply.**

**1. Distinct class periods do not defeat consolidation; consecutive class periods confirm the same alleged fraud.**

The June 29 Order treats the back-to-back class periods as a mark of distinctness. June 29 Order at 7. In securities litigation, the opposite is true. "[D]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 3:17-cv-558 (SRU), 2020 WL 1181366, at *4 (D. Conn. Mar. 10, 2020) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)). In *Robison v. Digital Turbine, Inc.*, this Court recognized that principle and held that "the related actions' overlapping, but slightly different, class periods do not prevent consolidation" where both actions alleged the same misstatements and corrective disclosures and relied on a "common pattern in their allegations." No. 1:22-cv-00550-DAE, 2022 WL 17881476, at *2 (W.D. Tex. Dec. 19, 2022) (Ezra, J.). The class-period differences were left for the single consolidated proceeding, under one lead plaintiff, to resolve. *Id.*; *see also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 448 n.15 (S.D. Tex. 2002) (consolidating securities class actions pleading different and overlapping class periods, and noting that the operative class period would be defined in the consolidated complaint).

A proposed class that opens the day after the certified period closes, pleading the same misstatements and the same corrective disclosures, is not a different case; it is the same alleged course of conduct wearing a new date range. No one alleges, and no one plausibly could, that a brand-new fraud began at Cassava on October 13, 2023. The one-day gap does not distinguish the two actions—it concedes their identity. This Court's own treatment of *Baker*, consolidated under

13

ECF 58 ¶ 5 despite a class period beginning weeks after the then-operative consolidated period, confirms as much. *See supra* Background A.

Below, the *Ugarte* plaintiffs leaned on *Chun v. Fluor Corp.*, No. 3:18-cv-01338-X, 2020 WL 2745527 (N.D. Tex. May 26, 2020), arguing that common questions exist only where the earlier action's amended complaint formally subsumes the later one. Tr. 49:2–49:24, 51:9–51:17. *Chun* says no such thing. There, the court granted consolidation based on a finding of common questions because the consolidated complaint "incorporates the class period, claims, and issues" of the later case, and refused to reopen the lead-plaintiff process for a separate action. *Chun*, 2020 WL 2745527, at *3. The fact that commonality was sufficient to support consolidation in *Chun* does not render that fact pattern necessary for consolidation. To the contrary, *Chun* ordered the relief Defendants seek: one consolidated proceeding with one lead counsel rather than two. The other decision on which the *Ugarte* plaintiffs relied, *Frazier v. Garrison I.S.D.*, 980 F.2d 1514 (5th Cir. 1993), is further removed. The Fifth Circuit affirmed the denial of consolidation of a teachers' testing case with a long-running desegregation case in which no triable issues remained, where the two cases challenged the acts of different branches of state government and shared no common questions. *Id.* at 1532. The June 29 Order cites *Frazier* only for the breadth of consolidation discretion. June 29 Order at 6. But breadth of discretion is no license to skip a mandatory standing order, and no measure of deference can save a prejudice finding that the record refutes.

### 2. The procedural-postures factor measures efficiency, and the settlement posture makes consolidation the efficient course.

Courts compare litigation posture as a proxy for efficiency: the question is whether consolidation streamlines the resolution of related claims or instead forces one case to mark time while another catches up. Measured by that standard, the settlement posture of the Consolidated Action is a reason to consolidate, not to refuse. Without consolidation, this Court must conduct

two proceedings about one alleged fraud: a Rule 23(e) approval process in the Consolidated Action and, running beside it, a from-scratch class action litigating the same misstatements and the same corrective disclosures.

With consolidation, the Court will oversee one proceeding with the Rule 23(e) process providing the forum in which counsel for the *Ugarte* claims may present their arguments.  That is, the *Ugarte* plaintiffs may present the full spectrum of objections to resolving the allegations of the Consolidated Class Action via a single resolution, including by challenging notice, seeking exclusion, urging a subclass, and even seeking rejection of the settlement in its entirety. All of these issues can and should be heard at the fairness hearing. *See infra* Section B.3. That is where Rule 23 places later-arriving stakeholders, and it is the efficient place to hear them.

The cases cited in the June 29 Order confirm that procedural posture is all about efficiency: each of the cited cases denied consolidation due to a lack of efficiency, with one action litigated nearly to judgment while another had barely begun. In *Mills*, one set of plaintiffs "was ready for trial" while the other still sought additional experts and depositions. *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989). In *St. Bernard*, one case was "ready for trial" after languishing "for over a decade" while the others remained in discovery, and even then, the Fifth Circuit remanded for reconsideration of consolidation in light of changed circumstances after the instant case was remanded for a new trial. *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989–90 (5th Cir. 1983). In *Pedigo*, the plaintiffs in the first case had already succeeded at summary judgment as to liability, leaving only damages and fees in mediation, and the court denied consolidation only "at this time." *Pedigo v. Austin Rumba, Inc.*, No. A-08-CA-803-JRN, 2010 WL 2730463, at *1–2 (W.D. Tex. June 24, 2010). In *Benchmark*, two cases had "progressed well into discovery" with dispositive-motion deadlines approaching,

15

while the third had no scheduling order and pending motions raising "matters that are simply not at issue" in the lead case. *Benchmark Towing Sys., LLC v. Chacon Bus. Grp., Inc.*, No. SA-23-CV-598, 2024 WL 4428983, at \*2 (W.D. Tex. Oct. 4, 2024). Similarly, in *Moller-Maersk*, the first action had been in active litigation and discovery for more than three years, while the defendants in the later-filed action had not yet been served. *Moller-Maersk v. Safewater Lines*, No. H-13-1726, 2017 WL 416296, at \*5 (S.D. Tex. Jan. 31, 2017). And the court denied consolidation on the further independent ground that "the facts and the law are not the same in the two suits," so consolidation "would not serve conservation of judicial resources." *Id.*

Those decisions share a single organizing feature: consolidation was denied because it would force a nearly finished case to wait for one just beginning. That inefficiency does not exist here. The settlement of the Consolidated Action will not be delayed if *Ugarte* is consolidated. Instead, the Stipulation of Settlement proceeds on its own track regardless of consolidation, Stip. § 9.16; *see infra* Section B.3, and no further merits litigation lies ahead in the Consolidated Action unless the settlement fails. Consolidation therefore delays nothing and duplicates nothing; it channels the later-filed case into the approval process already underway rather than leaving it outside as a freestanding second action.

Further distinguishing this case, the Consolidated Action is not the kind of trial-ready case contemplated in the cited decisions. When the parties settled this case, document discovery remained contested, and not a single Cassava witness had been deposed. Tr. 24:15–25:2; *see supra* Background C. This is not very different from the posture of *Ugarte.*

Denying consolidation, by contrast, creates significant inefficiencies, because the posture of the Consolidated Action is not static. The class certification order in that case is currently on appeal, with argument set for August 3, 2026. No. 25-50855 (5th Cir.). The certified class rests on

the unusual theory that a class period may close before the corrective disclosures said to reveal the fraud: the period ends on October 12, 2023, while the operative complaint alleges corrective disclosures in June, July, and September 2024. *See supra* Introduction; *supra* Background B (chart). If the Fifth Circuit disturbs certification on that ground, the class as certified does not simply vanish; the Consolidated Action plaintiffs may well respond by seeking a broader class that runs through the later disclosures, a class that would overlap the *Ugarte* period outright. At that point, the June 29 Order's hypothesized architecture would collapse. The two actions would no longer be separated by even a single day, and this Court would preside over two unconsolidated cases litigating the same alleged fraud on behalf of overlapping classes, with dueling counsel, dueling complaints, and dueling certification records. That is precisely the inefficient procedural posture that the PSLRA and this Court's Consolidation Order sought to prevent.

The settlement-mootness decisions the June 29 Order cites are farther afield still. June 29 Order at 8. None was a securities class action, none involved Rule 23, and none arose under the PSLRA. *Zermeno* was a wrongful-death and products-liability suit over an aircraft crash, *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 649 (S.D. Tex. 2003); *American Home Assurance* was an insurer's declaratory-judgment action over coverage obligations, *Am. Home Assurance Co. v. Transoceanic Shipping Co.*, No. 94-3605, 1995 WL 495906, at *1 (E.D. La. Aug. 18, 1995); and *Moller-Maersk* was an admiralty dispute over cleanup costs and unpaid freight invoices, *Moller-Maersk*, 2017 WL 416296, at *1, *5. In each, consolidation was an ordinary two-party docket-management question, and settlement mooted it because settlement genuinely ended the companion litigation: *Zermeno* disposed of the issue in a single footnote because the other case "has since settled, mooting plaintiffs' motion to consolidate," 246 F. Supp. 2d at 649 n.3; in *American Home Assurance* the companion case "was settled by the parties and closed by the

court," 1995 WL 495906, at *1; and the settlements in *Moller-Maersk* were private, bilateral deals that removed the relevant parties from the case, 2017 WL 416296, at *5.

A class settlement is different in kind. The settlement resolves nothing until this Court approves it under Rule 23(e), after notice and a fairness hearing. This process exists to protect stakeholders such as the *Ugarte* plaintiffs. The PSLRA's lead-plaintiff and consolidation framework likewise exists precisely so that claims arising from a single alleged fraud are gathered into one proceeding rather than litigated in serial actions.

Where a private settlement removes parties and closes a case, a class settlement keeps the action open and pending until the Court approves it.  That is why the Court's standing order must reach *Ugarte*. Nothing here is closed. The Consolidated Action remains open and pending until the Rule 23(e) approval process is complete.  As a result, consolidation cases decided outside the class action context (and outside a standing order to consolidate) are inapposite.

### 3.  Consolidation causes no cognizable prejudice to the Consolidated Action plaintiffs, whose own settlement papers anticipate it.

The June 29 Order's ruling regarding prejudice rests on assumption rather than analysis. The June 29 Order identifies no concrete harm that consolidation would inflict on the Consolidated Action plaintiffs; it simply assumes that consolidation "would prejudice Plaintiffs in the Consolidated Action by jeopardizing the settlement and delaying resolution of the case." June 29 Order at 8. But, the parties' own agreed settlement papers refute that assumption. The executed Stipulation expressly anticipates this very dispute, carving out "the Settling Parties' ongoing litigation in the District Court concerning consolidation of the *Ugarte* action" from the settlement stay. Stip. § 9.16; *see supra* Background C. A settlement drafted to proceed alongside the consolidation litigation cannot be jeopardized by that litigation's resolution, and a prejudice finding that never grapples with the parties' own agreement is clearly erroneous.

The remainder of the record is in accord. The mediator's ADR Notice states that "the Settlement is complete and enforceable as signed," and the mediator declined Cassava's request to condition the deal on consolidation precisely because the term sheet already bound the parties, leaving consolidation as "a matter solely for the Court to decide." Consolidated Action, ECF 359; June 29 Order at 4. On this point, every party agrees. Defendants acknowledged below that the parties have a binding agreement. Tr. 11:3. Plaintiffs' counsel described the settlement as binding and enforceable several times over. Tr. 9:15–9:22. The executed Stipulation of Settlement is on file, and preliminary approval is pending. Consolidated Action, ECF 380.

If the settlement binds no matter how the consolidation question is resolved, then resolving that question in Defendants' favor cannot unwind it. Consolidation "for all purposes" would not rescind the term sheet, would not reopen the mediation, and would not subtract a dollar from the class's $31.25 million recovery. The settling class would seek Rule 23(e) approval within the consolidated master file exactly as it seeks approval today, and the *Ugarte* plaintiffs' objections, if any, would be heard at the fairness hearing, which is where Rule 23 puts them. Far from dragging the settling class backward, consolidation moves it forward. The Magistrate Judge captured the point at the hearing, observing that on Defendants' view consolidation "would essentially move [the] case forward into the class approval in the final settlement process." Tr. 39:8–39:14. Defendants' view is correct, and the June 29 Order never explains otherwise.

Nor did the Magistrate Judge weigh the other side of the ledger. The prejudice analysis considers a single interest: that of the settling class. June 29 Order at 8. It nowhere accounts for the prejudice to Defendants of financing the same litigation twice, Tr. 27:19–28:10, and it nowhere confronts the systemic cost of the copycat incentive described above. A discretionary balance that counts only one side's weights is not an exercise of discretion; it is an error of method. On this

19

record, where Defendants pressed the countervailing harms at length and the June 29 Order engages none of them, the one-sided analysis independently requires setting the June 29 Order aside.

Consolidation also answers the practical question at the heart of this dispute: where do shareholders who purchased after the certified class period, but who claim injury from the same alleged fraud, belong? The Rule 23(e) process is built for them. Once *Ugarte* is consolidated, its plaintiffs and the purchasers they seek to represent will receive notice and may present their contentions, including any contention that the certified class period is drawn too narrowly, through the objection process at the fairness hearing. After hearing from them, the Court has options. It may approve the Settlement as fair, reasonable, and adequate, or it may reject it. If the Court rejects it, Lead Counsel, holding the mandate the PSLRA confers, can then determine how to address the class period for all shareholders alleging claims arising from the same facts. Defendants negotiated this Settlement and stand behind it; they do not suggest the Court should reject it. The point is that Rule 23(e) commits these questions to this Court, in this proceeding, with every stakeholder before it. The one outcome the PSLRA does not permit is the one the June 29 Order produces: the same alleged fraud, litigated in a duplicative, freestanding action. However the class-scope question is resolved, it must be resolved inside one consolidated proceeding.

## CONCLUSION

The Court should sustain these objections, set aside the Magistrate Judge's June 29 Order (Consolidated Action, ECF 384) as contrary to law and clearly erroneous, and order *Ugarte* consolidated into the Consolidated Action for all purposes pursuant to the Consolidation Order and Federal Rule of Civil Procedure 42(a). In the alternative, the Court may reconsider the matter *sua sponte* under Rule 4(a) of Appendix C to the Local Court Rules and grant the same relief.

Dated:  July 13, 2026

Respectfully submitted,

/s/ *Gregg Costa*
Gregg Costa (Tx. Bar No. 24028160)
Trey Cox (Tx. Bar No. 24003722)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002
Telephone: 346.718.6600
gcosta@gibsondunn.com
tcox@gibsondunn.com

Monica K. Loseman (admitted *pro hac vice*)
Scott Campbell (admitted *pro hac vice*)
John Turquet Bravard (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202-2642
Telephone: 303.298.5700
mloseman@gibsondunn.com
scampbell@gibsondunn.com
jturquetbravard@gibsondunn.com

Mary Beth Maloney (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
mmaloney@gibsondunn.com

*Counsel for Defendants Cassava Sciences, Inc. and Eric J. Schoen*

Douglas W. Greene
Zachary R. Taylor
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.847.7090
dgreene@bakerlaw.com

C. Shawn Cleveland
BAKER & HOSTETLER LLP
2850 N. Harwood Street, Suite 1100
Dallas, TX 75201
Telephone: 214.210.1200
scleveland@bakerlaw.com

*Counsel for Defendants Remi Barbier and Lindsay Burns*

21

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 13, 2026, a true and correct copy of the foregoing was served electronically upon each attorney of record.

/s/ *Gregg Costa*
Gregg Costa