# Exhibit C

IN THE UNITED STATES DISTRICT COURT
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

Pierre Brazeau, Reza )
Blourchian, Thibault )
Magnin, John Barsa, Warren)
Choi, Kevin Otto, Ken Van )
Ho, Thi Huyen Vu, Qing )
Yang, Ronald L. Selman, )
Vinod K. Thukral, Mohammad)
Bozorgis, Stephen Branch, )
Steve Burmeister, Ken )
Calderone, Cassandra )
Baker, Manohar, Rao, )
Shamsher Ahluwalia, Wanda )
Newell, Katlyn Rein, )
)Case Number 1:21-CV-00751-DAE
       Plaintiffs, )
)
vs. )Austin, Texas
)
Cassava Sciences, Inc., )
Remi Barbier, Eric J. )
Schoen, James W. Kupiec, )
Nadav Friedmann, Michael )
Marsman, Lindsay Burns, )
John Barsa, Manohar Rao, )
Warren Choi, Kevin Otto, )
Ken Van Ho, Thi Huyen Vu, )
Qing Yang, Ronald L. )
Selman, Vinod K. Thukral, )
Mohammad, Bozorgis, )
Stephen Branch, Fraitekh )
Amjad, John Kreilich, )
)
       Defendants. )June 24, 2026
_____

and

Stephen Crocker, Hoorieh )
Alaghemand, Carlos )
Perez-Cotapos Ugarte, )
Maria Isable Ureta Bazan, )
Carlos Perez-Cotapos )
Subercaseaux, Inversiones )
Ane Miren Limitada, Sheryl)
Grove, Mohammad Bozorgi, )
Ken Calderone, Manohar Rao)
                           )Case Number 1:24-cv-01525-DAE
        Plaintiffs, )
                           )
vs.                        )Austin, Texas
                           )
Cassava Sciences, Inc., )
Remi Barbier, Eric J. )
Schoen, James W. Kupiec, )
Nadav Friedmann, Michael )
Marsman, Lindsay Burns, )
John Barsa, Manohar Rao, )
Warren Choi, Kevin Otto, )
Ken Van Ho, Thi Huyen Vu, )
Qing Yang, Ronald L. )
Selman, Vinod K. Thukral, )
Mohammad, Bozorgis, )
Stephen Branch, Fraitekh )
Amjad, John Kreilich, )
                           )
        Defendants. )June 24, 2026

*******************************

**MOTIONS HEARING**

Volume 1 of 1 Volume

BEFORE THE HONORABLE MAGISTRATE JUDGE SUSAN HIGHTOWER

*******************************

APRIL C. BALCOMBE, CERTIFIED REALTIME REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

APPEARANCES

For Plaintiffs:        Mr. Daniel S. Drosman
                       Mr. Kevin A. Lavelle
                       Ms. Ellen Gusikoff Stewart
                       Robbins Geller Rudman & Dowd LLP
                       655 West Broadway, Suite 1900
                       San Diego, CA 92101
                       klavelle@rgrdlaw.com
                       dand@rgrdlaw.com
                       elleng@rgrdlaw.com
and
                       Mr. Joe Kendall
                       Kendall Law Group
                       3811 Turtle Creek Blvd
                       Suite 825
                       Dallas, TX 75219
                       jkendall@kendalllawgroup.com


For Defendants:        Ms. Monica K. Loseman
Cassava Sciences       Mr. Michael Scott Campbell
                       Mr. Gregg Jeffrey Costa
                       Gibson, Dunn & Crutcher LLP
                       1900 Lawrence Street Suit 3000
                       Denver, CO 80202
                       scampbell@gibsondunn.com
                       gcosta@gibsondunn.com
                       mloseman@gibsondunn.com



APPEARANCES (*UGARTE* CASE)

For Plaintiffs:        Mr. Luc W. M. Mitchell
                       Pomerantz LLP
                       600 Third Avenue, Suite 20th Floor
                       New York City, NY 10016
                       lmitchell@pomlaw.com.com
and
                       Mr. Peretz Bronstein
                       Bronstein Gerwitz & Grossman
                       60 East 42nd Street, 46th Floor
                       New York, NY 10165
                       peretz@bgandg.com

APPEARANCES CONTINUED

For Defendants:      Ms. Monica K. Loseman
Cassava Sciences     Mr. Michael Scott Campbell
                     Mr. Gregg Jeffrey Costa
                     Gibson, Dunn & Crutcher LLP
                     1900 Lawrence Street Suit 3000
                     Denver, CO 80202
                     scampbell@gibsondunn.com
                     gcosta@gibsondunn.com
                     mloseman@gibsondunn.com

and

For Defendants:      Mr. Douglas W. Greene
Barbier and          Baker & Hostetler LLP
Burns                999 Third Avenue Ste 3600
                     Seattle, WA 98104-4040
                     dgreene@bakerlaw.com


Transcriber:         Ms. April Balcombe, CSR, CRR, CRC
                     501 West 5th Street, Suite 4150
                     Austin, Texas 78701
                     (512) 391-8795
                     April_Balcombe@txwd.uscourts.gov

Proceedings reported by digital sound recording, transcript produced by computer-aided transcription.

P-R-O-C-E-E-D-I-N-G-S

DEPUTY CLERK:  For a motions hearing, the Court calls Case 1:21-CV-751, *In Re Cassava Sciences Incorporated Securities Litigation*, and 1:24-CV-1525, *Carlos Perez-Cotapos Ugarte, et al., v. Cassava Sciences Incorporated, et al.*

THE COURT:  Thank you.  And I'll go ahead and please ask counsel to make their announcements, starting with counsel for the Plaintiffs in the consolidated class action.

MR. DROSMAN:  Good morning, Your Honor. Daniel Drosman on behalf of Plaintiffs in the In Re Cassava Sciences Securities Litigation case from Robbins Geller Rudman & Dowd.  I'm here with two colleagues, Ellen Gusikoff and Kevin Lavelle.

THE COURT:  Good afternoon -- good morning, everyone.  Thank you.

And are you the only Plaintiffs' counsel for the consolidated class action?

MR. DROSMAN:  Correct, Your Honor.

THE COURT:  Okay.  Thank you.  And for the Defense --

MR. DROSMAN:  I'm sorry, I also have our local counsel, Joe Kendall.

THE COURT:  Good morning Mr. Kendall.

And for Defense, I assume that you'll be appearing for both cases. Would you please make your announcements.

MS. LOSEMAN: Yes, Your Honor. Monica Loseman with Gibson, Dunn & Crutcher on behalf of Defendants Cassava Sciences and Eric Schoen, and I'm joined by my colleagues here today, Gregg Costa and Scott Campbell. And I should note that our client representative, Chris Cook, the chief legal officer, is also present today.

THE COURT: Good morning.

MR. GREENE: Good morning, Your Honor. Douglas Greene from Baker Hostetler for Defendants, Barbier and Burns.

THE COURT: Thank you, sir. Good morning to you as well.

And then so we need to have appearances from Plaintiffs in the *Ugarte* case.

MR. MITCHELL: Good morning, Your Honor. Luc Mitchell with Pomerantz for the *Ugarte* Plaintiffs.

THE COURT: Thank you, sir. And I just wanted to express my condolences on the loss of your law partner.

MR. MITCHELL: Thank you, Your Honor.

THE COURT: Thank you.

MR. BRONSTEIN: Good morning, Your Honor.

Peretz Bronstein with Bronstein Gewirtz & Grossman, cocounsel for Plaintiffs.

THE COURT:  Good morning to you as well.

So thank you so much for everyone being here so punctually.  When we can start on time and even a bit early, it's always a good sign for me, and then there are some familiar faces and some newcomers.  But, of course, all are welcome.

So we have a few motions to get through today in our hearing.  We have the only one, the *Ugarte* case, is the motion to consolidate, but then we have three, I believe, additional motions that are related in the consolidated class action.

So I thought it would probably make sense to start with those and go not quite in the order that they were filed, as the motion to consolidate is the oldest pending motion, but I think it makes sense to start with Plaintiffs' motion for leave to file notice of supplemental authority, which is Docket Numbers 360, which is redacted, and 368, sealed in the consolidated class action.

And then we can move on to Defendants' Motion to Strike, Plaintiffs' opposition to Defendants' motion to consolidate, and Plaintiffs' approved motion for leave to lodge the mediator's ruling which are

somewhat related, I think.

So if we want to start with the Plaintiffs' motion for leave to file notice of supplemental authority.

And that will be you, Mr. Drosman?

MR. DROSMAN:  It will, Your Honor.

So basically, this motion asks a simple thing, asks the Court to look at what documents were filed after the briefing on the motion to strike and the motion to consolidation concluded.

And one of the documents we're asking the Court to review, which is supplemental authority, is the ADR notice that was filed on -- it's now in the public docket as Your Honor is aware.  The other is Cassava's press release announcing a complete settlement for $31.25 million, and those were both filed in the later part of December 2025.

There have been developments, obviously. It's not a second round of argument.  We're not seeking to reraise issues or take a second bite at the briefing apple.

The Court also has wide discretion to accept a short notice of new developments while a motion is pending, and we conferred with Defendants and asked for leave before filing.

There is also a new development which the Court should not overlook.  It actually occurred last Thursday.  And that's a signed stipulation of settlement which was filed -- I'm not sure if Your Honor had a chance to review that.

THE COURT:  I have not reviewed it in its entirety.  I am aware that it has been filed and that it has not been referred to me, so not at this time.

MR. DROSMAN:  Okay.  So while the other side tells the Court that the case is unsettled while a binding settlement exists, Counsel cannot stay silent.  We want the Court to review the ADR notice which says the exact opposite.  It is ordered by the mediator to be filed.

It's the result of the ADR and it says the binding settlement was reached.  It's an enforceable settlement, the ADR notice says.  It also says that the parties are -- are bound by that settlement after they accepted a mediator's proposal in the case back in early August of 2025.  And that resulted in a signed term sheet which is a binding settlement.  So that's what the ADR notice says.

The press release is Cassava Sciences' own press release.  It says they now have a binding settlement with Plaintiffs and it is for 31.25 million.

And so it really puts to rest these two documents, put to rest any notion that the case -- the Defendants' word is unquestionably active.

Of course, the case is not over.  We're waiting for approval from the District Court, but the case is no longer in a litigation mode.  It's in settlement mode.  And we've now sought approval for the settlement -- preliminary approval.

Once the Court grants that, we will seek final approval and it's on the road to being extinguished once and for all, and that's what these two documents unambiguously demonstrate.  The Court should take judicial notice of these documents and accept them as additional authority.

THE COURT:  Thank you, sir.

And I think that's going to be a recurring theme today.  Some of the briefing is much more recent, but some of the briefing pertains to events that happened that have been overtaken by more recent events, so a bit of a moving target today.  So I think if I have your argument on Plaintiffs' motion for leave, I can hear from the Defense.

MS. LOSEMAN:  Yes.  Thank you, Your Honor.  And I will be brief because, as you've noted, there have been developments; and I think that has essentially

resolved or otherwise mooted those three pending motions.

So there is no dispute we have an agreement. As my colleague noted, it was filed earlier this week. There is a stipulation of settlement. That stipulation makes clear that despite the fact that two of the individual Defendants here did not sign the term sheet, they are still subject to the witnesses that will be provided if the settlement is approved by this Court.

The stipulation says that that's an important point. It also says that the motion to consolidate must still be resolved by the Court, so those are two critical points in resolving the motions to consolidate.

And, as we understand it, the mediation communications were submitted by Robbins Geller in order to prove the existence of an agreement. Assuming that is the case, there is no dispute on that point now. We all agree there is an agreement.

There can be no other proper purpose to consider those mediation communications and so we don't think the Court should. It would be a violation of the local rule.

Now, to be clear, if the Court, for some reason, wants to see the text of the mediator's

determination, we do not object to that.  If the Court would find it helpful in resolving the issues, we have no concern with that.

THE COURT:  And that pertains to the motion for in-camera review?

MS. LOSEMAN:  Yes, it does, Your Honor.

THE COURT:  So it is your argument that your -- the Defendants' motion to strike as well as Plaintiffs' motions for leave and for in-camera review are all moot at this point?

MS. LOSEMAN:  That's correct, Your Honor.

THE COURT:  Okay.  And you are no longer opposing -- I mean, you would -- if they're moot, you don't have to actually withdraw your motion or go ahead in seizing your opposition to Plaintiffs' motions for leave, but you believe that they're all moot?

MS. LOSEMAN:  We believe they're all moot.  I mean, we do believe they're still technically, arguably a violation of the local rule, but we do believe they're moot, and that's the most important consideration.

THE COURT:  I understand.  And that will certainly streamline our hearing today and I'll come back to the Plaintiffs to see if they agree.

But I did mention one or two housekeeping matters, that you're welcome to continue using your

tabletop lecterns.  If, at any time, the other side or any counsel would prefer to come to the center, that's available to you as well.

People do seem to love the tabletop lecterns we put in during COVID and we don't break away from them.  And I don't think I'll necessarily be ruling from the bench today on the motions but will be issuing a written order promptly.

So with those little housekeeping matters out of the way, Mr. Drosman, do you agree with Ms. Loseman, that the motions -- all of these three related motions are moot?

MR. DROSMAN:  Well, I do think that the motion for supplemental authority doesn't bear on consolidation.  So I do think that, to the extent that consolidation is a wide motion, the Court should continue to take into account the ADR notice and Defendant Cassava's press release.

THE COURT:  Thank you.  And what about the -- so if Defendants, I believe their motion to strike is moot and your motion for in-camera review would similarly be moot?

MR. DROSMAN:  That bears on that very issue, Your Honor, so that would be moot, yes.

THE COURT:  Okay.  Great.  Well, thank you

very much.

So I think with this brief argument on the discovery motions, we can move on to the motion to consolidate which is the Defendants' motion.

MS. LOSEMAN:  Thank you, Your Honor.  I will take you up on your offer --

THE COURT:  Sure.

MS. LOSEMAN:  -- to use the central podium. Thank you.

THE COURT:  Sure.

MS. LOSEMAN:  And your Honor, if I may, we've prepared just a very short, two-page demonstrative, if I may approach.

THE COURT:  You may hand it to the Courtroom Deputy.

MS. LOSEMAN:  Okay.

*(Ms. Loseman hands documents to Courtroom Deputy.)*

THE COURT:  Thank you.

MS. LOSEMAN:  Thank you, Your Honor.

THE COURT:  I'm actually not hearing you.  Is the green light on your mic?

MS. LOSEMAN:  It is on, but I also do not hear.

THE COURT:  Maybe can you point it up towards you a little more?

MS. LOSEMAN:  Is that any better?

THE COURT:  Is the audio picking -- recording? Since we don't have a court reporter, we need to make sure it's recording.  I do hear you, but I need to make making sure it's recording.

Okay.  Thank you.

MS. LOSEMAN:  Excellent.  Thank you, Your Honor.

Now, Your Honor, as we noted, there is no dispute that the Cassava Defendants, my client, Cassava, and Eric Schoen and the Plaintiffs in the consolidated action have agreed to settle the consolidated action. Those papers were filed just earlier this week.

Now, there were disputes over the term sheet and the scope of that agreement, but as we just noted, those have all been resolved.  And relevant to the motion to consolidate, everyone agrees consolidation must be resolved by this Court, not the mediators, not the parties; by this Court.

And that -- the motion for approval of the settlement does not address consolidation.  We think the answer, though, to that question, Your Honor, is very straightforward and is rooted in the Court's order from June of 2022, the consolidation order long ago put in place by Judge Ezra.

It focuses on the -- whether the claims asserted in the Ugarte case or any other subsequently-filed case arise from the same set of operative facts. And there can be no question that the answer to that query, whether the facts are the same, is a yes.

Now, it is clear in the Circuit that District Courts have the authority to consolidate cases and the Fifth Circuit even urges District Courts to consolidate cases, and that's what Judge Ezra did with his order.

And the language of his order, if you look at the operative language at the top of the first page of the demonstrative, could not be clearer: Any other actions that arise out of the same facts and claims shall be consolidated. It's not a "may" or a "could be." It is: "Shall be consolidated."

So let's look at the alleged claims and facts. There is no dispute that the claims are the same. These are Securities Exchange Act claims, Section 10(b) claims, and Section 20 claims. And the facts, there is no real doubt that the facts alleged in both complaints are the same.

And we put a few of the alleged misstatements and alleged corrective disclosures on this

demonstrative just to illustrate the point.

The Ugarte amended complaint is built on the same alleged facts as in the consolidated complaint.  It alleges a fraud about the drug under development at Cassava that the August 2021 citizens petitioned and its allegations about the integrity of the simufilam research -- alleged research misconduct by Dr. Wang, alleged problems with the Phase 2B study, alleged misstatements about the drug's efficacy, its mechanism of action, supporting research, and government investigations, inquiries around all of that, and the company's responses to those issues.

Now, Ugarte uses those very same facts.  You can see the language is the same and we picked just a few of the alleged misstatements in the complaints to make the point.  They use these same alleged misstatements, not as background, but as the foundation for the same alleged fraud or theory of fraud in that case.

It's the same assertions of falsity.  It's the same assertions of misstatements just repeated on separate dates.  It's the same assertions of scienter or motive.  It's even similar loss causation allegations, that the truths emerged over a period of time.

If you look at the second page of the

demonstrative, it helps underscore the point.  The Ugarte complaint -- the amended complaint pleads many of the same exact same corrective disclosures as is pled in the consolidated action, the same dates, the same language, the same releases.

Now, Ugarte's amended complaint, the only real addition is to allege or plead that later statements continued the alleged same scheme or underlying thought.

That is a continuation of the same purported fraud.  That is not a new fraud.  It's not claims arising from a different set of facts.  It's not a different case, and that's why it should be consolidated.

Now, the Ugarte amended complaint, Your Honor, is even the same class for all intents and purposes.  It is classes of people who bought Cassava stock on the open market.  The only difference is the cutoff date in the class period.

Now, for the consolidated action, the period cuts off at October 12th.  For Ugarte, it begins the very next day on October 13 --

THE COURT:  And that is something -- I mean, like you said, I'm sure you're going to address.  How should the Court evaluate that?

MS. LOSEMAN:  Well, I think in this way.  I think it underscores our point, Your Honor.  It is not alleged and it could not be the case that a brand new fraud occurred on October 13th, particularly where you have the same misstatements and same corrective disclosures alleged in both complaints.

That one-day difference, Your Honor, we submit, concedes the point, but these claims arise from the same set of operative facts.

Now, this is not -- it is very typical for Courts to consolidate claims -- shareholder claims, even where the class periods -- the alleged class periods are different.  It's certainly been done in this Court before.  And, in fact, it has already happened in this case.

This is the Pomerantz's firm third try at getting involved in this consolidated case now.  Now, they applied to be the lead Plaintiff.  That application was rejected.  But then they went to the Northern District of Illinois and they filed the *Baker* case and they did the same thing there that they are trying to do here with the Ugarte amended complaint.

They allege the same claims, the same facts, but they started the class period almost immediately following the end of the operative class period that

existed at the time they filed the *Baker* complaint.

So at the time they filed the *Baker* complaint, the consolidated class ended in July -- on July 26 of 2022.  The *Baker* class picked up just a couple of weeks later in August of 2022.

And what the Northern District of Illinois did is transfer this case, rightfully, down to this court, and that case was rightfully consolidated pursuant to the June 2022 order because it had the same facts.  It is the same claims, same alleged theory of fraud, same corrective disclosures, and consolidation was ordered, and was, in fact, entirely appropriate.

Now, in the case of *Baker*, it was the consolidated Plaintiffs' counsel urging consolidation.  And I don't know why they urged consolidation then.  Perhaps it suited them.  Perhaps consolidation of Ugarte does not suit them now, but it really doesn't matter, Your Honor, because it comes back to Judge Ezra's June 2022 order, which says:  Any claims arising from the same facts must be consolidated, regardless of who is moving to consolidate them.

So now, let me address now, Your Honor, the objections from counsel for the consolidated class from Robbins Geller.  They appear to oppose consolidation on a single ground, that the case is already settled.

That's not quite right, Your Honor.  The parties have reached an agreement.  We have filed a stipulation of settlement with the Court, but that is not -- that does not magically end the case.  There is process that must play out.

And that process that must play out is the well-worn track of Rule 23.  Rule 23 is designed to capture precisely this issue, to capture the objection of stockholders who might have the same claims that arise from the same set of facts, and then consider them at the fairness hearing.

The consolidation order is the procedural protection that is put in place for parties for clients like mine, for parties and shareholder class actions, so that we can settle shareholder class actions, so we can achieve global peace.

The fairness of that settlement of claims based on the same facts that is to be played out according to Rule 23, not in a separately litigated, brand new class action alleging the same theory of fraud, including the same operative facts.

So if the Ugarte action is consolidated, I think it helps to think through the process and down the line, what happens to the Ugarte claims?

We think it's pretty straightforward.  The

case is consolidated for all purposes.  Counsel for the Ugarte Plaintiffs would have an opportunity to object.

There will be deadlines set once the preliminary approval is entered by the Court, and they then have an opportunity to brief their concerns.

They can object and raise whatever concerns they have, the idea of a subclass, why a subclass may be warranted in their view, and that objection can play out in the course of considering the fairness of the overall settlement.

That would be heard in the same proceeding at the same time as any other objections are lodged in assessing the overall fairness in the settlement of the consolidated proceedings.

So the answer is that the consolidation order preserves an orderly process for the parties and for this Court.  Objections notice is provided. Objections can be heard.  Rather than relitigating issues like adequacy and protection in two separate proceedings, they're done in one.

THE COURT:  Well, and I think, Ms. Loseman, this part of the argument really goes to what I think is the heart of the issue before us today which is -- obviously we have Judge Ezra's order that shall be consolidated, but a closing fact that's well established

in the Fifth Circuit, have a wide discretion when deciding whether to consolidate, and I think the last factor among the ones to consider is the stage of the proceedings.

And so, to me, I think what you're -- that's what you're addressing now, and a very important point here, is that we've got a case that is -- well, you say it's not settled.  You know, it's at the stage -- it is -- as opposed to the *Ugarte* case, which is much earlier in the proceeding.

And, so your argument -- if I'm summarizing correctly -- is that:  We think the Plaintiffs will get a fair hearing, will get all of the process perhaps that they're due as part of the District Court's consideration of the settlement?

MS. LOSEMAN:  That's exactly right, Your Honor.

Now, we took a close look at the case law that the Pomerantz firm cited in their opposition to our motion to consolidate.  And you're absolutely correct. District Courts have wide discretion on consolidation, but they are also are urged to consolidate cases where appropriate.  That is Fifth Circuit precedent.  The few cases where something has not been consolidated involve completely different procedural standings.

So matters where a case was ready for trial, a trial date had been set, or the Court had already resolved a motion for summary judgment and had referred the parties to mediate the issue of damages, or where the plaintiffs were aware of the facts and circumstances of a claim and waited until the end of discovery in a motion for summary judgment briefing to allege new theories of recovery and then try to consolidate those, those are very different circumstances than what we have here.

To be clear, the proceeding -- consolidated proceeding was not all that far along, considering the only thing that the Pomerantz team has missed out on is perhaps document production. That's about it.

We were in the middle of discovery disputes about the scope of appropriate discovery and what facts were operative and appropriate to provide discovery in this case. Those remain unresolved. We paused those disputes with Magistrate Bemporad when we were going through them.

We, of course, have a couple of depositions. We deposed the Plaintiffs and class-related experts, but no depositions of any company personnel, not a single former or current employee or director or officer or any of the individual Defendants have been deposed.

So we were still in very early stages of discovery.  The only thing that the Pomerantz team arguably missed out on was the motion to certify a class, but, of course, we would be relitigating those issues if the *Ugarte* proceeding is permitted to go forward on a separate track.

We will be relitigating market efficiency.  We will be relitigating price impact.  We will be relitigating the Comcast issues, whether damages are capable of class-wide proof, and it would essentially be a redo of everything that is now before the Fifth Circuit for review.

That's not the right result.  That's why cases like these are consolidated.  And even when a motion for approval of a settlement has been submitted, there is still that procedural safeguard.  There is a way for the Ugarte Plaintiffs to be heard.

Let me address just briefly the delay point.  So I believe I've addressed the Robbins Geller objection as well as the point made in the Pomerantz brief regarding the asserted sort of procedural difference -- or procedural stage differences between the cases.

And they make a point that there was some sort of delay.  I want to just remind the Court of the context --

THE COURT: Let me -- I'm not keyed into that argument right now. Delay in what sense?

MS. LOSEMAN: Delay in the sense --

THE COURT: And don't make your opposing counsel's argument for them.

MS. LOSEMAN: Absolutely.

As I understand it, Your Honor, the argument is that we delayed in moving to consolidate the -- what was then the *Crocker* matter into this proceeding --

THE COURT: Thank you.

MS. LOSEMAN: -- for eight months. When the Levi & Korsinsky firm -- different firm -- filed the *Crocker* complaint, that was the original complaint in the *Ugarte* proceeding, it was a very different complaint.

It was about the Phase 3 trials. It was only about supposed statements regarding the likelihood of approval or a positive outcome of the Phase 3 trials.

At that point, we believed we had many, many solid grounds to move to dismiss that complaint, but we did not believe we had grounds to move to consolidate that complaint because it was different facts, a different theory of fraud.

Now, at the time that *the Crocker* complaint was filed, the Court had not even authorized the

consolidated Plaintiffs to supplement their complaint to add additional corrective disclosure allegations. That didn't happen until May.

And then in August -- it wasn't until August that the *Ugarte* Plaintiffs filed their amended complaint. That amended complaint was a shock. It was totally different compared to the original *Crocker* complaint.

It went back -- not only did it start and pick up this theory of fraud the very next day on October 13th, but it repeated the same misrepresentations, the same alleged corrective disclosures. That was when we knew we had grounds; this needed to be consolidated, and we moved promptly just a couple of weeks later.

Your Honor, I believe I've addressed all of the objections by the Robbins Geller and the Pomerantz firms to consolidation, but I do want to address, just in closing, which party really faces prejudice if the *Ugarte* complaint is not consolidated into a consolidated proceeding. That's Cassava.

If we are forced to litigate duplicate claims in two proceedings, one being settled, which apparently did not achieve true global peace -- as these settlements are intended to do -- we're not only going

to have to incur fees on, for example, briefing duplicative motions to dismiss, we will have to re-litigate class certification; we will have to relitigate the same discovery disputes we were litigating, all to resolve a case that includes shareholders who will have either released their claims, if the Court approves the settlement, or bought shares in the wake of knowing what the alleged truth was, that the fraud had been revealed according to the allegations of these Plaintiffs' firms.

Denying consolidation on these facts sets a dangerous precedent in this Court and in this Circuit. It would be an open invitation for other Plaintiffs' firms to allege the same theory of fraud and just pick up a new class period ending the day after lead Plaintiff determines the class should end in the consolidated period.

That is a result that's not consistent with Judge Ezra's order.  It is not consistent with Fifth Circuit precedent, and the Rule 23 process is the answer to any concerns the *Ugarte* Plaintiffs may have.

THE COURT:  Well, I think the *Ugarte* Plaintiffs' response to that is likely to be that this was a result that could have been bargained for by the Defendants in their settlement process, that they could

have settled with the subsequent *Ugarte* class that's alleged.

What's your response to that?

MS. LOSEMAN:  Yes.  For whatever reason, the counsel for the consolidated Plaintiffs determined that the class period needed to end on October 12th of 2023.

I don't know if that has to do with arguments that are being briefed in front of the Fifth Circuit now in terms of when the class period needed to end, what length the class period would bear in terms of the market efficiency arguments we were making, or the price impact arguments that we might make.

But the whole point of consolidation and the lead Plaintiff process is to appoint a single lead counsel to make those strategic considerations for a class asserting claims that arise out of the same facts.

That is the answer:  This lead counsel, for whatever reason, determined that was the appropriate class period.

Now, I would argue that if they had a claim that was different -- that was factually different, yes, that should proceed on a separate track.  That should be separate -- subject to a separate lead Plaintiff appointment process, and then we would negotiate

resolution of that very different factual claim.  But that's not what's happened here.

THE COURT:  Thank you.

MS. LOSEMAN:  Thank you, Your Honor.

THE COURT:  So I think we get to hear -- I assume we'll get to hear arguments from counsel for the consolidated class action and then from the *Ugarte*, correct?  Okay.

Thank you, Mr. Drosman.

MR. DROSMAN:  So really three points, Your Honor.  First, the case is settled as Defendants now admit and now pending approval.  So there is nothing left to consolidate.

Second, this motion is really an attempt to grab a release they could not obtain during settlement negotiations.  And, finally, even if the Court treats this case as active, Defendants' own cases, especially the Fifth Circuit case in *Frazier*, make very clear that consolidation is not appropriate.

Rule 42 lets a Court combine cases that share common questions.  Why?  So that they can be tried or managed together efficiently.  That is the only reason for consolidation.  Efficient management.  Okay?

There are no common questions to litigate here.  None.  The claims are resolved in the

consolidated case, in the *In Re Cassava Securities Litigation* case.

THE COURT:  Well, since you're starting out with efficiency, would you like to address Defense counsel's argument that not consolidating -- not consolidating will result in re-litigation of significant aspects of the same claims?

MR. DROSMAN:  Sure.  Your Honor, first of all, they make a due process argument that I honestly do not understand.  Notice -- at the time that we provide notice to the class after preliminary approval may not be provided to the *Ugarte* Plaintiffs.  They can't receive that notice.

Why?  Because they're not members of this particular class.  Membership in this class is determined on the date that a person purchased or otherwise acquired the Cassava securities.

Those people in our class purchased or acquired securities on distinct dates that do not overlap with the *Ugarte* Plaintiffs.  There are no due-process issues whatsoever because notice can't be provided to the *Ugarte* Plaintiffs.

Now, obviously to the extent that a person purchased Cassava stock in 2021 and they did in 2024, they may be a member in both cases, and that's fine.

It's easy to administer that.

They're permitted to recover in the consolidated case on their 2021 purchase.  They're not permitted to recover in the consolidated case on their 2024 purchase.

There are -- there is no efficiencies to be obtained.  What you would be doing is you would be grabbing a case that's pending approval of settlement, and you would be dragging it backwards into active litigation.  Obviously policy favors settlements.  You would be causing unnecessary costs and delay by doing that.

Precisely what the Fifth Circuit said in *Frazier* would be inappropriate.  In *Frazier*, what the Court said -- the Fifth Circuit looked at a case that was old and not set for trial.  They looked at a newer case that was in active litigation and it was headed barely towards trial.

And in that case, the Fifth Circuit said, we're not going to consolidate those cases.  It doesn't make sense, because, at the end of the day, it would not -- it would cause additional delay and additional costs.  And that's precisely what would occur here.

That's why it all boils down to the efficiency arguments, Your Honor.  There is no

efficiency to be obtained by consolidating these cases.

And I want to just sort of talk about what this case is really about, why we're really in front of Your Honor. The motion is an attempt to force a release on Plaintiffs that Defendants could not obtain through negotiations.

And as Your Honor knows, Defendants tried to obtain a broader -- a wider release during the settlement negotiations. They ultimately -- the Judge said, no, you aren't -- the consideration that Plaintiffs have to give is a release, as Your Honor is aware. The consideration the Defendants have to give is the 31.25 million.

Plaintiffs said, look, by -- by asking for a wider release, what you're doing is you're diluting the amount of money that our clients would receive because that's now spread out over two separate class periods. We're not going to do that, okay? We've bargained for 31.25 million in exchange for releasing our claims. That's what we're going to do.

Defendants ultimately decided to go ahead and sign the term sheet, despite the fact that we wouldn't provide a wider release in the *Ugarte* case. They tried. They failed, okay?

THE COURT: A couple of questions for you at

this point.  You've mentioned the *Frazier* case a few times to me.  It is probably in your briefing, but to make sure I have the right case, do you have the cite for that?

MR. DROSMAN:  I do, Your Honor.  So the *Frazier* case is 980 F.2d 1514, and it's Fifth Circuit, 1993.

THE COURT:  Thank you.

MR. DROSMAN:  Sure.

THE COURT:  And then my more substantial question is, can you respond to the Defense argument that the fact that the *Ugarte* case selected a class starting one day after the end of the class in your case undermines your position against consolidation?

MR. DROSMAN:  It doesn't undermine it at all, Your Honor.  We don't control what the *Ugarte* Plaintiffs do.  They could have chosen a class that began five days later, 50 days later, you know, a year later, a day later.

That is not something within our control, and it doesn't add efficiency to take an active case that will ultimately settle or be tried with a case that now is left to approve for settlement.

There is -- I mean, that doesn't create any efficiencies whatsoever.  It's hard to envision how

rule -- the Federal Rules would make that something that would be desirable, to take a case that is now a settled case by all accounts -- we're waiting on approval.

As you know, in these cases, it is extraordinarily rare. I have been doing this for longer than I want to admit, and I've never seen a case where we have been denied final approval -- at least none of my cases have been denied final approval. It's effectively over. The case is effectively over.

We've now asked for preliminary approval, and by all accounts, that's going to be granted. Nobody seriously believes it won't; and final approval, the same thing, Your Honor.

So it's hard to believe that any federal rule, any federal court, certainly not the Fifth Circuit, would contemplate driving a case backwards into active litigation. That's just not something -- and, you know, Defendants lean on the Court's standing order. Clearly the Court's standing order contemplated cases that were both in active litigation.

The *Baker* case, which the Defendants discussed, that was ultimately consolidated with our case. Our case was in a very different litigation posture at that point.

Our case was -- we were obtaining discovery, moving to compel.  I think a trial date had been set.  You know, we were briefing class certification.  All of these things, they're consistent with active litigation were occurring when the *Baker* case was consolidated into our case.

That's no longer the case.  The *Baker* case is not illustrative, is not at all relevant to this issue, nor is the standing order, which really contemplates -- it has to contemplate.  You know, think about it in these terms.  What if -- like I said, the only consideration we have to give is a release.

What if Defendants -- what if the shoe were on the other foot?  We said, well, now that we've settled, we've given you this release, you settled for 31.25 million, we want a little more consideration.  We've signed the term sheet, but we'd like $50 million.  We don't think 31.25 is enough.  And they said, no, we settled for 31.25.  We think we're going to stick with that number.

And then they said, well, we're just going to try a procedural maneuver to try to get additional compensation.  We are going to consolidate this case with another case because we think maybe we can raise damages, increase damages, and maybe we can get a

broader -- maybe we can get more money at settlement by doing that.

That would be anathema to the purposes of litigation and settlement, and that's exactly what's occurred here.  It's no different.  We've given the consideration; that's the release.

The Defendants' gambit is to try to broaden that release.  They've tried previously; they failed.  Now they are trying again through consolidation.  That's all this case is about, Your Honor.

You know, Defendants give a parade of horribles.  You know, in their motion, they say, God, you might not even be able to distinguish between one -- one plaintiff in the consolidated case and one plaintiff in the *Ugarte* case.  For the life of me, I don't understand that argument.

I mean, the Plaintiffs are very easily defined.  In fact, they are defined in the stipulation of settlement, is:  Those persons or entities who purchased or otherwise acquired securities during the class period -- the class period in the consolidated case which ends before the *Ugarte* class period begins.

There is no administrative difficulty in determining who the Plaintiffs are in the consolidated case and who the Plaintiffs are in the *Ugarte* case.

None at all.  So I don't understand that argument.

Your Honor, the other case the Defendants cite are also in opposite -- as the *Frazier* case actually supports -- Defendants cite that case.  It actually supports our position.

You know, I'll just give you a couple of examples.  The air-crash disaster was a fight over fees spread across roughly 150 lawsuits and its language about Rule 42 is dicta in that case.

The Court was worried about forcing a judge to sit through the same trial evidence twice.  None of these concerns exist in this case.

*Facebook* combined cases that were all at the same stage of the litigation.  *Francis* involved the same Plaintiffs -- not the case here -- the same Defendants, the same lawyers on both sides.  We don't have the same lawyers on both sides.  *Ford* involved the consolidation where the amended complaints swallowed the other cases whole.

You know, I -- look, I'm not going to say it doesn't exist, but I searched for a case that would be similar to this case.  The only case that I could find was the *Frazier* case on -- where the Court refused to consolidate.  That's the Fifth Circuit case.

So there are no cases the Defendants can

cite where they take a case barely toward settlement and drive it backwards into active litigation. It just doesn't -- I couldn't find those cases, Your Honor, if they do exist.

So for those reasons, Your Honor, we'd ask that you deny consolidation here. It's the only proper result in the case.

THE COURT: You know, I would just ask you all one point -- I think that you covered this pretty much, Mr. Drosman, but when you're saying, "drag the case back into active litigation," I think that the Defense argument is quite to the contrary, that that would essentially move your case forward into the class approval in the final settlement process?

MR. DROSMAN: Well, as far as I know, there has been no settlement with the *Frazier* Plaintiffs, but that actually goes to support our -- my argument, that what they're really trying to do is just dilute our settlement amount, the 31.25, by spreading it out over two class periods. And that's the release that I told you that we gave. It was designed for our clients and our clients only that's spread out. It highly dilutes our class members and it would severely prejudice them.

So if that's what they're intending, you can see how that's just a backdoor method to get the wider

release that they couldn't get when they -- when we were at the negotiation table.

THE COURT:  And before I let you sit down --

MR. DROSMAN:  Sure.

THE COURT:  -- I have another point to make that I would just like to ask you to respond to what I'll characterize as the Defense's policy argument, that this would set a precedent for having a settlement achieved in a class securities or any kind of class action case and then have a similar occurrence of another case come along that has a class starting immediately thereafter and on, you know, claiming the same facts, the same allegations.

MR. DROSMAN:  Your Honor, I think it -- to the extent that -- first of all, we ended our class period when we alleged that the truth had been revealed to the market, okay?

So to the extent that there is nothing that would ever prevent additional Plaintiffs from filing a case alleging that -- that somehow disclosures were falsely misleading and misled investors on -- and that the truth had not been revealed, they could file that case that began a day later, like I said, ten days later, a hundred days later, two years later.  Okay?

There's nothing that prevents that.  And

certainly consolidating this case would be an inappropriate result and it would cure a form that doesn't exist, because if that is -- if it's a meritorious claim, then it should rise and fall on its own merits.  And if it's a frivolous claim, it will be dismissed by the Court at the motion to dismiss case.

Now, the Defendants in this case knew well about *Ugarte*.  They knew about it a long time ago.  That's a case -- that's not a case that was filed after we had a settlement in this case.

It was a case that was filed, I don't know, a year ago, before -- a year before our settlement, and they applied -- they knew that that amended complaint was coming down the pike, which is exactly why Barbier and Burns didn't sign the term sheet.

They should have dragged their feet and made up excuses because they knew that there was going to be an amended complaint filed and they needed to assess it before they signed the term sheet.

Here, Defendants knew it was coming -- saw the Defendants knew it was coming, and they signed the term sheet nonetheless.  That's their prerogative.  They are bound by that term sheet.  They are bound by that release period, and they should honor the contract that they formed.  Okay?

THE COURT:  Thank you, sir --

MR. DROSMAN:  Thank you.

THE COURT:  -- for your argument.

And I can hear from the *Ugarte* Plaintiffs next.

MR. MITCHELL:  Thank you, Your Honor.  The Defendants' motion seeks to combine two cases that are at opposite procedural postures, that protect separate classes of investors and that allege distinct facts and theories of liability.

The first case is a consolidated action and it is all but over.  The parties have spent the last year in settlement discussions.  And, as you know, on Thursday, they filed a stipulation of settlement.

That case protects investors who purchased stock in the three years between September 14th, 2020, and October 12th, 2023, and it concerns misstatements the Defendants made about their Phase 2B trial of their drug, simufilam, during that period.

The second case is *Ugarte*, and it concerns the misstatements that the Defendants continued to make after the complaint when the consolidated action was first filed and then amended, particularly about the Phase 2 trial that followed the Phase 2B trial.

*Ugarte* protects investors who purchased

Cassava stock between October 13th, 2023 and March 25th, 2025. And this case is in its nascency. A motion to dismiss is still pending before the Court.

Given these differences, the factors that govern the decision to consolidate cases militate against doing so. And, specifically, I'd like to talk about the procedural posture, prejudice, judicial economy, and the commonality of the facts.

Starting with the procedural posture. The postures are about as different as could be. One case is settled and one case is still pending a motion to dismiss.

This means that the consolidated action cannot be used as a vehicle to advance the claims in *Ugarte*. In particular, it provides no opportunity to assess -- to conduct discovery into the facts that are pleaded in *Ugarte*. This factor by itself is dispositive of the motion to consolidate.

If you look at the case *Pedigo*, the Court there wrote that, quote: It is undisputed that the two cases at issue involve almost identical questions of law and fact, unquote.

THE COURT: Let me just stop you there and ask you to respond. If I've got all of Defense counsel's argument, perhaps you picked it up more -- more perhaps

than what are in my notes.  But I believe that the Defense concedes that your clients would be missing out only on discovery but that there is no need to relitigate any of the issues that would be addressed or investigated through the discovery process.

What is your response to that?

MR. MITCHELL:  There are plenty of factual -- and we don't know the extent to which the discovery was conducted in the consolidated action, particularly while the settlement discussions were ongoing, but there are many factual aspects of the *Ugarte* that do not appear in the consolidated action.

The consolidated action is primarily -- alleges misstatements regarding the Phase 2B trial of simufilam.  That is the 28-day trial with a few dozen participants.

There are alleged misstatements -- new misstatements in *Ugarte* about the Phase 2B trial, but it's primarily about the misstatements that were alleged in the Phase 2.  That's the 24-month trial with several hundred participants.

So there is plenty of factual aspects in *Ugarte* that are not present in the consolidated action, and we anticipate, especially considering the longer class period, had no discovery at all.

THE COURT:  Thank you.  I think that answers my question.

MR. MITCHELL:  Thank you, Your Honor.

Let me return to *Pedigo*.

THE COURT:  Sure.

MR. MITCHELL:  In *Pedigo* there, the parties agreed the facts were the same in the two different actions, but the Court went on to say, quote: Nevertheless, the two cases have markedly different procedural postures.  The above entitled case, the first filed case is rapidly nearing judgment; whereas litigation in Grande, the later filed case, is only just beginning; therefore, consolidation is not appropriate at this time.

So the procedural postures were dispositive.

THE COURT:  What Court is that that you are you citing?

MR. MITCHELL:  I believe that's the Western District.

THE COURT:  Western District of Texas?

MR. MITCHELL:  I can provide the cite for you if you'd like, Your Honor.

THE COURT:  Thank you.  And, you know, I'm confident the cases that you are discussing are in your briefing, but at times, they are not, so I just want to

be sure.

MR. MITCHELL:  It helps make the record clear, Your Honor.

Yes, that's 2010 WL 2730463, the Western District from 2010.

THE COURT:  Thank you.

MR. MITCHELL:  And there is another case, *Benchmark*, that was talking about consolidating three cases.  And two of them were well into discovery while the third was just beginning, and, like *Ugarte*, had pending Motions to Dismiss on the docket.

And for this reason, the Court declined to consolidate.

Turning to prejudice -- and this is a very important factor -- consolidation would cause massive prejudice to the *Ugarte* claims as they -- the claims of the investors would be folded into a case that has no mechanism to prosecute them, nor would there be --

Not only would there be no way to conduct discovery into a year-and-a-half worth claims, but a year and a half of investors would be consolidated into a case where the certified class ends before they bought their stock and where the Plaintiffs have expressly disavowed a longer class period.  So the investors would have no way to pursue their claims.

And I would like to turn to something that my colleague on the other side said when she was speaking.  It was very striking.

She said that if *Ugarte* gets folded into the consolidated action, they would be able to object to the settlement.  And this is the first time we've heard the Defendant say what happens post-consolidation.

Now, it's not the class period that's expanded.  It's not redo discovery into the new claims.  It's people who bought between October 13th, 2023 and October 20- -- and March 25th, 2025, are in a class period that expressly rejects them, but they get the chance to object.

So there is no vehicle -- we've just heard admitted that, with consolidation, there will be no vehicle for a year and a half of defrauded investors to pursue their claims.

Turning to judicial economy -- we've heard this from my colleague on the same side -- that if the Court were to fold a year and a half of new claims into an action that has already settled, doing so would have the potential to throw that case and potentially that settlement into disarray.

And *Pedigo* is, again, instructive here.  Because there, the earlier case had left summary

judgment, and the only issues of damages and attorney's fees remained.  So similar, the docket haven't ended, but there were was some items and some procedural items to address.

The Court thus wrote that, quote:  Because the *Brown-Day* case, the second case, is in its infancy, to consolidate the two actions at this juncture would unnecessarily delay a final resolution in the above-entitled case and create unneeded confusion.

Exactly the same thing here, Your Honor.

THE COURT:  And I take it that, in fact, because your claims are different in the way that you've identified, there would -- then the Court actually wouldn't be relitigating -- or the parties wouldn't be relitigating what they already litigated in the consolidated class action?  Is that -- is my understanding correct, sir?

MR. MITCHELL:  Exactly, Your Honor.  It would just be eliminating claims before there was ever any investigation into them.

And the fourth factor that I was hoping to discuss is the commonality, the facts in the two actions.  And as I've described in answer to your question, we have different set of facts -- the Phase 2B trial versus the Phase 2 trial -- and different things

that need to be explored.

And I'd actually like to point to the Defendants' own case here, *Chun*, which is cited at Page 8 of their brief, because there, the Plaintiffs in the earlier action -- there were two actions, and the Plaintiffs in the earlier action amended their complaint after the later complaint was filed. And in amending their complaints, they took over the later class period and they took over the later claims.

And the Court then wrote, that, quote: As both parties acknowledge, the scope of the lead Plaintiff's amended consolidated complaint incorporates the class period claims and issues -- in *Newman*'s complaint -- in the later complaint -- because the amended consolidated complaint incorporates *Newman*'s complaint, the Court finds Newman's claims share with this case common questions of law and fact.

So when we're assessing whether there are common questions of law and fact here, the Defendants on the case, *Chun*, says that happens when you've subsumed your earlier case, when you render it redundant, not when you eliminate the later case, when you don't incorporate the class period, when you don't incorporate the claims.

So their own case is telling us that they

don't meet the factor of common questions of law or fact.

Now, if I may, I would also like to respond to the Defendants' allegations -- to the Defendants' arguments in favor of consolidation.

THE COURT:  Sure.

MR. MITCHELL:  But before I do so, I'd like to zoom back to a slightly wider lens, because ultimately the Defendants are trying to use a consolidated action -- and you heard from my colleague -- a case which is substantively over, which is one time period, which is one set of damages and one set of facts, to wrap in a case that is just beginning with a different set of investors, a different set of damages, and different facts.

So the motion to consolidate is really just a Motion to Dismiss.  It's a second crack -- bite at the apple.

So going through the arguments individually. There is six of them if I -- by my math.  And the first one, as we heard and saw through the demonstrative, is the Court's June 30th, 2022, order.

And there are two real responses to this. The first is, that order does not divest the Defendants of their burden to meet the standard for consolidation,

and it does not divest the Court of its obligation to assess the relevant factors in deciding whether to consolidate before doing so.

And this is particularly true here with the language to which the Defendants point comes from their own stipulation. They were the ones who drafted that language. It was filed at ECF 12 and then so ordered at ECF 58.

But the second argument I'd make about this is that this case -- the two cases do not arise out of the same facts and claims, and that's what we saw with our case, *Chun*, where cases arise -- the consolidated cases arising of the same classes and facts and claims when the earlier action subsumes the later action, unlike here where we have two actions that are proceeding with different class periods and with different sets of facts.

The Defendants' second argument is to analogize *Ugarte* to *Baker*, another later-filed action with a class period beginning after that in the consolidated action, and that was then consolidated into the consolidated action.

But there is a big difference here. In *Baker*, after *Baker* was filed, the Plaintiffs in the consolidated action expanded their complaint. They

filed an amended complaint which incorporated the class period and incorporated the claims.

In doing so, they took on the responsibility of representing the claims of the *Baker* Plaintiffs.  We don't have that here.  *Ugarte* is the only action that represents the claims of the *Ugarte* plaintiffs.

Third, Defendants point to three cases where they say Courts consolidated actions with different class periods.  One of these is *Chun*, which we've talked about.  The other two are *Teva* and *Facebook*.

But these cases are the same as *Baker*.  In all three of these, these cases were at the preliminary stages, where a complaint was filed; a second complaint was filed; and then the earlier one was amended to take on the class period and the claims in the later actions.  So, again, the earlier filed action took on the responsibility of the later claims and the later plaintiffs.

Fourth, Defendants point to six corrective disclosures, we saw them in their demonstrative, from October 2023 to September 2024 that pleaded in both the consolidated action and *Ugarte*.  There's a couple of important differences here.

The first is that, in the consolidated action, these are only pleaded as corrective

disclosures.  These apply to stock that was purchased before October 13th, 2023, so they provide damages for investors in their class period.

And our action, in *Ugarte*, they apply to the investors who bought after October 12th, 2023.  They apply damages to our class of Plaintiffs.

In addition, not all of these are -- these are purely corrective disclosures in the consolidated action, but some of them -- four out of six of them are also treated as misstatements in the *Ugarte* action, so there is factual differences but also substantive differences there.

The fifth and sixth are related.  The fifth, Defendants said the two actions were in procedurally different positions.  We've just heard they're about as far apart as they possibly could be.

And finally, in the brief, the Defendants argue that, quote:  Allowing the cases to proceed in parallel -- with parallel lead counsel will upend any effort to resolve the cases via settlement.  We heard the answer to that on Thursday, Your Honor.

Thank you.  Unless you have any further questions.

THE COURT:  I do not.

Thank you very much, sir.

MR. MITCHELL:  Thank you.

MS. LOSEMAN:  Your Honor, may I respond briefly?

THE COURT:  Oh, absolutely.  As the party with the burden, you'll get the last word.

MS. LOSEMAN:  Thank you.

Your Honor, even though I have the burden, I will attempt to keep this brief and focus on just a few Of the points that my colleagues from Robbins and Geller and --

THE COURT:  I appreciate the brevity, but it is an important issue, and I'm happy to entertain whatever points you want to make, ma'am.

MS. LOSEMAN:  Thank you very much.  I appreciate that, Your Honor.

Now, Your Honor, as Mr. Drosman said, this case has settled.  But we disagree.  There is a lot left for the Court to do.  Rule 23 requires a notice objection interference hearing process, and so that work is yet to be done by this Court.

Now, Counsel also seemed to accuse counsel for Cassava of trying to resolve the consolidation question when the parties were resolving the term sheet. Now, I'm going to be very careful to not get into the communications that occurred in the course of

negotiating the term sheet or the stipulation.

But I will say this. Absolutely, we wanted certainty. This company is paying substantial money. It is a cash-strapped company paying a substantial sum of money to settle these claims, and we want global peace for all claims that are based on this same asserted theory of fraud and the same facts.

And I believe Plaintiffs wanted that certainty, too, based on some communications and additional briefing that occurred with the mediator.

The outcome, though, is clear, Your Honor. The mediator determined that it is for the Court to resolve consolidation. The parties did not agree one way or the other on consolidation. That is for the Court to interpret the June 2022 order and whether the *Ugarte* amended complaint falls within its process.

Let me address the Rule 23 point. Now, notice goes not just to members of the consolidated class. Notice is ordered much more broadly than that. Notice will go to those who purchased or sold Cassava stock during the consolidated class period.

It is also required to be published in things like the Wall Street Journal, and, of course, the lead Plaintiffs for the *Ugarte* group are, in fact, here and are very well aware that a settlement process will

occur.

The purpose of that far-reaching notice is to be certain that we are reaching any stockholder that believes they may have a claim based on the same facts and circumstances.

That is the point of the Rule 23 notice and the expense of providing that broad notice, to get everybody who has a claim based on the same facts to the table so it can be wrapped up at the same time.

Indeed, they talk about the release and the release that we negotiated. Yes, we want a broad release. That is the point of settling a shareholder class action, is to get a release from any liability related to any claim that arises from those same facts and circumstances. That is the point of a class settlement in this case.

Now, the *Frazier* decision, I do want to address that just briefly and I urge Your Honor to take a read of that Fifth Circuit 1993 decision. It is not remotely consistent with the procedural posture of the two matters here or the facts alleged in these related matters.

Look at what -- why the District Court in that matter did not consolidate the case. The one case -- the earlier trial case involved allegations and

an order involving the Executive Branch of the government -- the State government.

The nonconsolidated case, the District Court determined not to consolidate a second filed case that involved claims against the Legislature. It was entirely different. Different parties.

So I urge you to read that case in full because it does not support the conclusion that these factually-related cases asserting the same claims should not be consolidated.

THE COURT: And as you run through your points, ma'am, could you also please respond to Mr. Mitchell's point that he distinguished *Baker* in that -- and some of the other cases that the Defendants cited and that he argued, that the Plaintiffs took on responsibility for the claims in that consolidated case and that that hasn't happened and won't happen here?

MS. LOSEMAN: Yes. So let me -- let me just turn to the -- I believe it is the *Chun v. Fluor Corporation* case where my colleagues in our Washington, DC office were actually counsel for that party in that matter.

Now, in that matter, first of all, Your Honor, it was consolidated. That was the result, consolidation. What appeared to be happening there is a

different group of plaintiffs were urging the Court to create two different cases, not to consolidate. And in that matter, it was the lead plaintiffs for the first filed case for the consolidated case that moved for consolidation.

The Court, in fact, rejected the second plaintiff group's argument that it was a different case because they were alleging related facts, but the different particulars or different details, and instead, permitted supplementation and amendment of the consolidated case, much like what happened here back in May when Judge Ezra granted the lead Plaintiffs' motion to supplement their operative complaint.

And the Court said: I am not going to appoint a separate lead Plaintiff group for a separate case when it can all be consolidated and dealt with in this proceeding.

That's exactly what should happen here. The fact that we are at the settlement stage where the proceedings are otherwise undeveloped. We've engaged in discovery, but we were very much at the beginning of discovery. And class certification is on appeal to the Fifth Circuit.

That mere fact that we are maybe slightly further down the road than the Plaintiffs were in that

matter does not change the fact that the *Ugarte* amended complaint asserts the same theory of fraud based on the same facts and asserts the same claims.  That's the key analysis, and it should be consolidated here.

Let me address briefly the explanation as to the supposed differing facts.  Now, a lot was said -- and forgive me if I missed some -- but I did hear Mr. Drosman say that, for example, they allege that the truth about the alleged fraud was revealed on the last day of their class period on October 12th.

THE COURT:  That's what I heard as well.

MS. LOSEMAN:  Now, of course, the *Ugarte* Plaintiffs allege that the truth continued to be revealed after that date.  But here is the tea.  It is the truth about the same theory of fraud.  And that's why this needs to be consolidated.  Those positions are inconsistent.  Either the truth emerged on October 12th and every investor knew, or it didn't.

Who gets to make that strategic decision in when to assert or argue the truth emerged?  Counsel that was appointed by this Court as lead Plaintiff in the consolidated case.

THE COURT:  But doesn't that fact -- that argument cut the other way?  If it -- doesn't it underscore *Ugarte*'s argument, that they're asserting

different violations; they're proceeding on different facts?

MS. LOSEMAN:  They're not really different facts, though, Your Honor.

And here is the key.  The theory is that they bought -- later purchasers of Cassava stock were somehow defrauded.  They believed in the science behind the simufilam drug, despite another Plaintiff claiming the truth fully came out on October 12th.

That's the inconsistency.  That's the problem.

Now, either the truth fully emerged on October 12th, as Robbins Geller claims.  In which, case there is no claim.  There can be no claim because it's the same theory of fraud.  Right?

There are not different facts.  There is not a different theory of fraud.  It is the same theory of fraud.  The only difference is when these stockholders purchased their shares.

THE COURT:  There -- shouldn't it be -- the *Ugarte* case from that standard fall on its own?  And then the motion to dismiss -- I believe we've heard today there is motion to dismiss pending and that's not before me -- so shouldn't that be considered separately on it own facts?

MS. LOSEMAN:  It shouldn't be considered separately on its own facts because it's not on its own facts.  It stands on the same facts as the consolidated case.

It all goes back to the same -- the common misrepresentations they allege about the drug, about the science, about the sufficiency of the research behind the science and the government investigations around all of that.

The fact that the statements continued to be made about the drug does not make it a different theory of fraud or different facts.  And it gets us back to the danger, the real risk here, that any time a Court settles a case or the parties file a motion for approval of a settlement, another Plaintiff's firm will sweep in and assert a new complaint with -- starting with just a different class period, not a new theory of fraud. That's the key distinction here, Your Honor, and that's the danger that the consolidation order is meant to avoid.

Now, let me -- relatedly on the discovery point, I heard counsel for the *Ugarte* class argue that, gee, there might be a bunch of material or discovery that we had that postdate the class period and the consolidated period.

This is, again, why the PSLRA appoints the Plaintiffs' counsel.  And lead Plaintiffs' counsel here aggressively pursued discovery, including discovery well after the end of their class period and into 2025.

So while *Ugarte*'s counsel may not have been involved in that process, competent counsel appointed by this Court to prosecute this claim for fraud absolutely did.  There is no missing fact or missing discovery or prejudice that would befall the class that would be settled in this case.

Now, Your Honor, maybe I'll just leave it with this.  My client's position is that it settled a fraud case, and we are seeking Court approval of the settlement we agreed to of a fraud case.

We, as any company does, seeks global peace in settling a fraud case like this.  We do not have the financial resources to litigate this case again.

That's part of the reason companies like mine settle cases like this, is to achieve an end to the cost and the drain on resources that these cases pose to companies.

It is not proper; it is not right; it's not just to allow the same case to be re-litigated, for those expenses to be incurred again by my client, just because somebody wants to pick up where the consolidated

case left off.  That's not fair.

Rule 23 is meant to address any concerns the *Ugarte* Plaintiffs have.  If this case is not consolidated, there is nothing left to address my -- the prejudice that will befall my client, the unfair position my client will be put in.  And, in fact, it will result in this Court relitigating this case for years, the same case based on the same facts.

That's not what the Fifth Circuit intended when it urged District Courts to consolidate cases.  That's not what the June 2022 order contemplates either.  The *Ugarte* case should be consolidated, and their concerns can be heard in the fairness hearing.

Thank you, Your Honor.

THE COURT:  Thank you, Ms. Loseman.

I have no further questions for you, and I would just like to thank counsel.  I have all of your arguments, and I would like to thank you in particular for the outstanding quality of arguments today, but I certainly expected no less coming into the hearing.

I will take all of the motions under advisement and issue an order as promptly as possible.

Is there anything else that you'd like the Court to address now before we adjourn, Mr. -- excuse me, Mr. Drosman?

MR. DROSMAN:  No, Your Honor.  Thank you.

THE COURT:  Mr. Mitchell?

MR. MITCHELL:  No, Your Honor.  Thank you.

THE COURT:  Ms. Loseman?

MS. LOSEMAN:  No, Your Honor.  Thank you.

THE COURT:  Thank you once again.  And we are excused.

*(Proceedings adjourned.)*

REPORTER'S CERTIFICATE


     I, APRIL C. BALCOMBE, DO HEREBY CERTIFY THAT THE

FOREGOING WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING

MADE AT THE TIME OF THE AFORESAID PROCEEDINGS AND IS A

CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM

THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT

THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE

PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE

UNITED STATES, ON THIS 30th DAY OF JUNE, 2026.



                         /S/April C. Balcombe
                         APRIL C. BALCOMBE, CSR, CRR
                         Official Court Reporter
                         United States District Court
                         Austin Division
                         501 West 5th Street, Suite 4150
                         Austin, Texas 78701
                         (512) 391-8795
                         SOT Certification No. 5752
                         Expires: 7-31-26